United States Courts
Southern District of Texas
FILED

OCT 0 9 2003

Michael N. Milby, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| PIRELLI ARMSTRONG TIRE CORPORATION RETIREE MEDICAL BENEFITS TRUST, et al., On Behalf of Themselves and All Others Similarly Situated, | § Civil Action No. H-02-0410 <br> § (Consolidated) <br> § <br> § CLASS ACTION <br> § |
| Plaintiffs, | § <br> § <br> § |
| vs. | § <br> § |
| HANOVER COMPRESSOR COMPANY, et al., | § <br> § |
| Defendants. | § <br> § <br> § |

| | |
|---|---|
| ANN ANGLEOPOULOS, on behalf of herself and all other similarly situated, | § Civil Action No. H0-03-1064 <br> § <br> § |
| Plaintiff, | § <br> § |
| vs. | § <br> § |
| HANOVER COMPRESSOR COMPANY, et al., | § <br> § |
| Defendants. | § <br> § <br> § <br> § |

| | |
|---|---|
| JOYCE FREEMAN, on behalf of herself and all others similarly situated, | § Civil Action No. H0-03-1095 <br> § <br> § |
| Plaintiff, | § <br> § |
| vs. | § <br> § |
| HANOVER COMPRESSOR COMPANY, et al., | § <br> § |
| Defendants. | § <br> § <br> § <br> § |

105

ORIGINAL

HENRY DUNCAN KIRKLEY, On Behalf of Himself, All § Civil Action No. H-03-1155
Others Similarly Situated and The Hanover         §
Companies Retirement Savings Plan,                §
                                                  §
                                    Plaintiff,    §
                                                  §
        vs.                                       §
                                                  §
HANOVER COMPRESSOR COMPANY, et al.,               §
                                                  §
                                    Defendants.   §
                                                  §
                                                  §

United States Courts
Southern District of Texas
FILED
OCT 0 9 2003
Michael N. Milby, Clerk

## AMENDED CONSOLIDATED COMPLAINT FOR BREACH OF FIDUCIARY DUTY AND VIOLATION OF ERISA DISCLOSURE REQUIREMENTS

### INTRODUCTION

1.      Plaintiffs bring this action for relief under §502(a) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1132(a), on behalf of participants and beneficiaries of The Hanover Companies Retirement Savings Plan ("Plan"), a 401(k) plan sponsored and administered by Hanover Compressor Company ("Hanover" or the "Company"), and on behalf of the Plan. Defendants are the Company and certain of the Company's current or former officers or directors who acted as fiduciaries to the Plan and its participants. From May 4, 1999 to December 23, 2002 (the "Class Period"), defendants breached multiple duties as fiduciaries, including the duty to investigate and monitor the prudence of offering Hanover stock as an investment choice suitable for a 401(k) plan; the duty to provide plaintiffs and Class members with material information known to them that indicated the imprudence of Hanover stock as a 401(k) investment choice; the duty to monitor the performance of other fiduciaries; and the duty to communicate information to other Plan fiduciaries. Defendants' breaches caused substantial harm to the Plan and to the Class.

2

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over this action pursuant to ERISA §502(e)(1), 29 U.S.C. §1132(e)(1), which grants to United States District Courts jurisdiction over claims of this type.

3.      This Court has personal jurisdiction, because at all relevant times the defendants resided or regularly transacted business in this District. Hanover is a corporation with its principal place of business in Houston, Texas. Certain of the Individual Defendants are residents and citizens of this District, including defendants McGhan and Goldberg.

4.      Venue is proper pursuant to ERISA §502(e)(2), 29 U.S.C. §1132(e)(2), because defendants administered the Plan in this District, some or all of the actionable conduct for which relief is sought occurred in this District, and one or more of the defendants resides or may be found in this District. Hanover has its headquarters, conducts business and maintains operations in this District. Defendant's wrongful conduct took place in this District.

## THE PARTIES

5.      Plaintiff Ann Angleopoulos is an individual who, at relevant times, was a participant in the Plan.

6.      Plaintiff Joyce Freeman is an individual who, at relevant times, was a participant in the Plan.

7.      Plaintiff Henry Duncan Kirkley is an individual who, at relevant times, was a participant in the Plan.

8.      Defendant Hanover is a corporation headquartered in Houston, Texas. Hanover is a provider of natural gas compression, gas handling and related services in the United States and in select international markets.

9.      The Company's common stock is traded on the New York Stock Exchange. Hanover administers the Plan in Houston, Texas.

10.    (a)    Defendant Michael J. McGhan served at times relevant hereto as President and CEO of Hanover. On information and belief, in this capacity, McGhan exercised discretionary authority or control with respect to the management of the Plan and authority or control respecting the disposition of its assets and was a fiduciary to the Plan under the terms of ERISA.

(b)    Defendant William S. Goldberg served at times relevant hereto as Executive Vice President and CFO of Hanover. Goldberg was also the managing director of GKH Partners, L.P. and the general partner of GKH Investments, L.P. Goldberg exercised discretionary authority or control with respect to the management of the Plan and authority or control respecting the disposition of its assets and was a fiduciary to the Plan under the terms of ERISA. Goldberg sold at least 4.9 million shares of Hanover stock during the Relevant Period at a price of $35.15 per share, for a total of approximately $172 million. (These sales involved shares owned by GKH, which was controlled by him.)

(c)    Defendant Michael A. O'Connor served at times relevant hereto as Chairman of the Board of Directors of Hanover. In this capacity, O'Connor exercised discretionary authority or control with respect to the management of the Plan and authority or control respecting the disposition of its assets and is a fiduciary to the Plan under the terms of ERISA. O'Connor sold at least 150,000 shares of Hanover stock during the Relevant Period at a price of $35.15 per share, for total proceeds of more than $5.2 million.

11.    The Defendants listed above in ¶10 (a) - (c) are referred to herein as the "Individual Defendants."

12.    In part because of the Individual Defendants' positions with the Company, they had access to material non-public information about Hanover's business, operations, products, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plan, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with

4

other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith.

## CLASS ACTION ALLEGATIONS

13.     Plaintiff brings this action on behalf of the Plan, and on behalf of other Plan participants or beneficiaries as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. As an ERISA breach of fiduciary duty action for plan-wide relief, this is a classic Rule 23(b)(1)(B) class action.[1] The prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

14.     The Class consists of all current and former employees who are or were participants in the Plan and all persons who are or were beneficiaries of the Plan at any time between May 4, 1999 and December 23, 2002, inclusive. Excluded from the Class are the Court, Defendants, and their immediate families and affiliates.

15.     The Class consists of thousands of persons located throughout the United States. The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

16.     Questions of law and fact common to the members of the Class that predominate over questions which may affect individual Class members include:

(a)     Whether ERISA applies to the claims at issue here;

---

[1] The case also qualifies for class treatment under the other provisions of Rule 23(b).

(b)    Whether Defendants owed fiduciary duties to the Plan and/or to the members of the Class;

(c)    The scope of the fiduciary duties Defendants owed to the Plan and/or to the members of the Class;

(d)    Whether Defendants breached their fiduciary duties under ERISA; and

(e)    The extent of loss sustained by the Class members and the appropriate measure of relief.

17.    Plaintiffs' claims are typical of those of the Class because plaintiff and the Class suffered similar harm and damages as a result of Defendants' unlawful and wrongful conduct. Absent a class action, Class members may not receive restitution or other appropriate relief, will continue to suffer losses, and these violations of law will proceed without remedy.

18.    Plaintiffs are committed to pursuing this action and have retained counsel experienced in class action litigation of this nature. Plaintiffs will fairly and adequately represent the interests of the Class as the plaintiffs' claims arise out of the same course of conduct which gives rise to all Class members' claims and plaintiffs have no interests that conflict with those of the Class.

19.    The prosecution of separate actions by members of the Class would create a risk of inconsistent or varying adjudications establishing incompatible standards of conduct for Defendants. Individual actions may, as a practical matter, be dispositive of the interests of the Class.

20.    A class action is the superior method for fair and efficient adjudication of this controversy. The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. Plaintiffs' counsel, highly experienced in class actions, sees no difficulty in the management of this case as a class action.

## FACTUAL ALLEGATIONS

21.     The Plan is an employee benefit Plan within the meaning of ERISA Sections 3(3) and

3(2)(A), 29 U.S.C. §§1002(3) and 1002(2)(A). The Plan is a "defined contribution" or "individual

account" Plan within the meaning of ERISA § 3(34), 29 U.S.C. §1002(34), in that the Plan provides

for individual accounts for each Participant and for benefits based solely upon the amount

contributed to the Participant's account, and any income, expenses, gains and losses, and any

forfeitures of accounts of other Participants which may be allocated to such Participant's accounts.

At all relevant times, plaintiffs were participants or beneficiaries of the Plan within the meaning of

ERISA §3(7) and (8), 29 U.S.C. §1002(7) and (8).

22.     At all relevant times, Hanover was the sponsor of the Plan within the meaning of

ERISA § 3(l6)(B), 29 U.S.C. § 1002(l6)(B). Hanover also acted as the administrator of the Plan

within the meaning of ERISA §3 (16)(A), 29 U.S.C. § 1002(16)(A). Hanover had and exercised

authority or control respecting the management of the Plan and/or disposition of its assets, and

thus was a fiduciary within the meaning of ERISA § 3(21)(A), 29 U.S.C. §1002(21)(A), in its own

name and acting through the Plan's Administrators. Hanover was also a party-in-interest to the

Plan within the meaning of ERISA § 3(14), 29 U.S.C. §1002(14).

23.     At all relevant times, the Individual Defendants acted as fiduciaries of the Plan, as

defined in  ERISA §3(21)(A), 29 U.S.C. §1002(21)(A).  Individual Defendants exercised

discretionary authority or control over the management or administration of the Plan or control in

the management or disposition of the Plan's assets.

24.     Hanover was a named fiduciary within the meaning of ERISA § 402(a), 29 U.S.C.

§ 1102(a), responsible for the appointment and on-going monitoring and review of the

performance of the Plan's other fiduciaries. The Individual Defendants acted on behalf of the

Company for the purpose of carrying out Hanover's responsibilities vis-a-vis the Plan and

accordingly they were de facto fiduciaries.

25.     The Plan authorized a participant to contribute up to 20% of his or her eligible base pay to the Plan in before-tax deferrals.  Once the participant enrolled in the Plan and chose how much to contribute, contributions were deducted automatically from the participant's pay.

26.     The Plan provided for the Company to make discretionary matching contributions equal to 35% of a participant's contribution up to an annual maximum of $1,000 per participant. All Company matching contributions were made in the form of Hanover common stock.  The Company prevented participants from selling, withdrawing or otherwise diversifying out of these matching contributions until the participant terminated participation in the Plan.  The Company made discretionary matching contributions in the Hanover common stock during the Relevant Period.  Hanover stock was also an investment choice offered to Plan participants during the Relevant Period.

27.     During the Class Period, Hanover stock escalated rapidly in price, then collapsed. As detailed in the Amended Complaint for Violation of the Federal Securities Laws filed in Civil Action No. H-02-0410 in this District, the run-up was a direct and proximate result of misrepresentations and omissions made by, inter alia, the Company and its top executives, including the Individual Defendants herein.  The stock collapsed as the truth began to emerge.

28.     Defendants failed to protect the interests of plaintiffs and the other Class members in connection with their Plan investments in Hanover stock, inter alia by failing to provide plaintiffs and other Plan participants with adequate information about the Company's true financial condition despite offering the Company's stock as a prudent Plan investment.  Defendants knew, yet failed to disclose to plaintiffs and Class members, that serious problems in connection with Hanover' ongoing financial situation rendered the Company's stock an imprudently risky investment during the Class Period.

29.     During the Class Period, each of the Individual Defendants was privy to material non-public information concerning the Company.  Each had knowledge of the adverse facts

specified herein. This knowledge should be imputed to Hanover. The defendants, however, concealed material non-public facts regarding Hanover from the plaintiffs and other Class members. The disclosure of such information by the defendants to the plaintiffs and other Class members would not have violated any provision of federal law or any provision of state law which is not preempted by ERISA. Accordingly, the plaintiffs and other Class members did not, with respect to any Plan investments in Hanover stock, exercise "independent control" as defined in CFR § 2550.404c-1(c)(2)(ii), and defendants are not insulated from liability under ERISA § 404(c), 29 U.S.C. § 1104(c).

30.     During the Class Period, the Individual Defendants and Hanover made false and misleading statements to the market, including to plaintiffs and other Class Members, regarding Hanover's business and prospects, primarily in terms of revenue recognition. Hanover was forced to restate its financial statements no fewer than three times as a result of these misrepresentations and/or omissions. Defendants knew, or should have known, that one result of this course of conduct was to render Hanover stock an imprudent investment for purposes of the Plan.

31.     The defendants were aware of significant risks to Hanover and its stock price as a result of several instances of improper revenue recognition, including at least the following:

(a)     Hanover's improper attempt to recognize as revenue what was in fact a refund of money paid in connection with an aborted purchase of a plant in Indonesia from an entity known as SDK.

(b)     Premature recognition of pre-closing revenue regarding the acquisition of three companies known as the "Three Amigos" – Rino, Compressor Components and K&K.

(c)     Improper revenue recognition in connection with the "Frame 6" turbine transactions.

(d)     Improper revenue recognition in connection with the "LM 6000" turbine sold to Howard L. Wagner & Associates.

9

(e)     Improper revenue recognition in connection with the "LM 6000 " Turbine Sold to JT Energy Holdings, Inc.

(f)     Premature revenue recognition with respect to a delay penalty received from Global Energy, Inc.

(g)     Improper revenue recognition regarding the Hampton Roads Project in Nigeria.

(h)     Premature recognition of revenue in connection with a non-monetary exchange with Callon Petroleum.

(i)     Premature revenue recognition on a sale of 33 compressors to Crestone/Enron.

(j)     Improper revenue recognition with respect to consignment sales to Interstate Treating, Rino and TIPSA.

(k)     Premature revenue recognition on the sale of scrap inventory to Gilstrap.

(l)     Improper valuation of the cost basis in the sale of used compression equipment by Hanover's Subsidiary, Rino.

(m)     Premature revenue recognition on a sale of four compressors to Duke Energy.

(n)     Premature revenue recognition in connection with the sale of an interest in a power plant to ETG.

(o)     Premature revenue recognition in connection with a management fee for services provided to Ouachita.

32.     The details of the transactions referred to above are explained in detail in the Amended Complaint for Violation of the Federal Securities Laws filed in Case No. H-02-0410. Many of these details have also been confirmed by the Company in press releases and SEC filings made

in connection with the three restatements referred to above, including in Form 8-K's filed on or about January 28, 2002; February 26, 2002; August 5, 2002; and October 23, 2002.

33.     As a result of the accounting manipulations that lead to the three restatements by Hanover, the Plan investments in Hanover stock became imprudent and plaintiffs and the Class were misled with regard to their investment in Company stock. Had plaintiffs and Class members been properly and adequately informed about the true financial condition of the Company and given accurate information concerning Hanover' prospects, they would not have invested their retirement savings in Hanover' common stock, and they would not have sustained the damages they ultimately suffered.

34.     Defendants' unlawful conduct and the failure to remove restrictions on the Company's matching stock resulted in substantial retirement fund losses to plaintiff and Class members. Defendants' actions (or lack thereof) deprived plaintiff and Class members of the opportunity to exercise control over the Plan's assets because they did not have the opportunity to obtain sufficient information to make informed decisions with regard to investment alternatives available under the Plan, and incidents of ownership appurtenant to such investments. Prior to the filing of these actions, defendants had done nothing to remedy the problems that their accounting manipulations created for the Plan and the Class.

## DEFENDANTS' BREACHES OF FIDUCIARY DUTY

35.     ERISA is a comprehensive statute covering virtually all aspects of employee benefit plans, including retirement savings plans, such as the Plan:

> It is hereby declared to be the policy of this Act to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.

ERISA §2(b), 29 U.S.C. §1001(b).

36.     Under ERISA, those responsible for plan management and oversight stand in a fiduciary relationship in relation to the Plan and its participants. ERISA broadly defines who a "fiduciary" is, to include all persons or entities that have or exercise discretionary authority or control over the management of a plan or its assets.

37.     ERISA requires strict fidelity and loyalty in the execution of a plan's management pursuant to 29 U.S.C. §1002(21). In addition, ERISA imposes on plan management a fiduciary duty of prudence, requiring those responsible for plan management to "discharge his [or her] duties with respect to a plan solely in the interest of the participants and their beneficiaries and ... with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. §1104(a)(1). ERISA also imposes on those responsible for plan management a duty of loyalty, requiring the fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and their beneficiaries and ... for the exclusive purpose of ... providing benefits to the participants and their beneficiaries." 29 U.S.C. §1104(a)(1).

38.     Defendants' fiduciary duties of loyalty, due care and prudence included a duty to inform the Plan and participants of any material adverse information about the Company insofar as such information materially affected the Plan's investments in Hanover stock. When a plan is composed of various investment funds, such as the Plan, this duty to inform and disclose also includes: (a) the duty to impart to the plan's participants material information which the fiduciary knows or should know is sufficient to appraise the average plan participant of the risks associated with investing in any particular investment; and (b) a duty to convey complete and accurate information material to the circumstances of the plan participants and their beneficiaries. The disclosure duties and fiduciary duties imposed on plan management by ERISA were designed to

reduce the disparity in access to company information that exists between the fiduciaries and the participants and their beneficiaries.

39.    ERISA imposes on plan fiduciaries the duty, inter alia, to adhere to the terms of the plan, including those purposes established in the plan document as, in this instance, "to provide . . . retirement security for eligible employees."

40.    Other duties imposed upon those who are fiduciaries under ERISA by virtue of their exercise of authority or control respecting the management or disposition of plan assets include but are not limited to:

(a)    The duty to investigate and evaluate the merits of decisions affecting the use and disposition of plan assets;

(b)    The duty to evaluate all investment decisions with "an eye single" to the interests of plan participants and beneficiaries;

(c)    The duty to avoid placing themselves in a position where their acts as officers, directors or employees of the corporation will prevent their functioning with the complete loyalty to participants demanded of them as trustees of a pension plan, and, if they find themselves in such a position, to seek independent, unconflicted advice;

(d)    To the extent that a party is responsible for appointing and removing named fiduciaries, the duty to monitor, and to provide complete information to, those persons who have been named;

(e)    The duty to disclose and inform of any material adverse information about the company which duty entails among other things: (i) a duty to inform plan participants about the financial condition of the company; (ii) an affirmative duty to inform plan participants about material adverse factors which were affecting the company any time the fiduciary knew or should have known, pursuant to his duty to investigate, that failing to make such a disclosure might be

harmful; and (iii) a duty to convey complete and accurate information material to the circumstances of plan participants and their beneficiaries; and

(f)     When a plan is composed of various investment funds, the duty to inform and disclose also includes the duty to impart to plan participants material information which the fiduciary knows or should know is sufficient to appraise the average plan participant of the comparative risks associated with investing in any particular investment.

41.     Defendants breached their fiduciary duties of loyalty and prudence with respect to the Plan's use of Company stock as a Plan investment for, among other reasons, the following:

(a)     The Plan's investment in Company common stock and defendants' use of Company common stock as a matching contribution carried with it an undisclosed and imprudently high degree of risk and volatility;

(b)     Defendants failed to provide plaintiffs and Class members with complete and accurate information about Hanover common stock and the risks associated with individual participants' and the Plan's substantial investment therein; and

(c)     Defendants breached their fiduciary duty and their duty to inform and disclose, by encouraging plaintiffs and Class members to continue to make and maintain substantial investments in Hanover common stock in their Plan accounts.

42.     In addition to defendants' duties of loyalty and prudence, the fiduciary duties imposed on defendants by ERISA also entailed a duty on Plan management to conduct an independent and continuing investigation into the merits of the Plan's investments to ensure that each investment was suitable for the Plan.  Defendants breached their fiduciary duties of loyalty and prudence by failing to investigate and monitor the suitability of the Company's common stock as an investment option.  Had defendants conducted a reasonable investigation into the Plan's investment in Company stock they would have known that, during the Class Period, Hanover common stock was not a suitable or prudent investment for the Plan's participants.  Realizing the

unsuitability of Company stock during the Class Period, the Individual Defendants sold over $177 million of their own Company stock.

43.     Defendants' duty of loyalty also entailed a duty to avoid conflicts of interest and to resolve them promptly should they occur.  Under ERISA, a fiduciary must always act for the sole benefit of the participants and their beneficiaries.  Defendants breached their duty of loyalty by failing to avoid conflicts of interest and to resolve such conflicts promptly when they did occur. Defendants continued to invest the participants' and beneficiaries' monies in Hanover common stock and imposed restrictions on the sale of such stock despite the unsuitability of such a risky investment.  Thus, defendants failed to act to protect plaintiffs' and Class members' interests in the administration of the Plan.

44.     Defendants deprived all participants of the opportunity to exercise control over their Plan's assets because they did not have the "opportunity to obtain sufficient information to make informed decisions with regard to investment alternatives available under the plan, and incidents of ownership appurtenant to such investments" pursuant to 29 C.F.R. §2550.404c-1(b)(2)(i)(B). Defendants also deprived all participants of the opportunity to exercise any control over the investment of their matching contribution.

45.     For the reasons set forth above, defendants are not relieved of their fiduciary duties to the extent that they might otherwise have been so under ERISA §404(c), 29 U.S.C. §1104(c).

46.     As a result of defendants' breaches of their fiduciary duties owed to plaintiff and Class members, the Plan suffered substantial losses and plaintiffs and Class members were harmed because, throughout the Relevant Period, the value of Hanover common stock substantially under-performed the market and other reasonable investment alternatives.  Since plaintiff and Class

members did not have independent control over how their assets were ultimately invested, defendants were responsible for ensuring the Plan's investments were and remained prudent.

## COUNT I:

## PROVIDING MATERIALLY MISLEADING INFORMATION

47.     Plaintiffs reallege and incorporate by reference herein the foregoing paragraphs.

48.     ERISA Section 404(a)(1)(A) imposes on a plan fiduciary a duty of loyalty − a duty to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and...for the exclusive purpose of...providing benefits to participants and its beneficiaries. . . ." 29 U.S.C. § 1104(a)(1)(A).

49.     ERISA Section 404(a)(1)(B) imposes on a plan fiduciary a duty of prudence − a duty to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man, acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. . . ." 29 U.S.C. § 1104(a)(1)(B)

50.     A plan fiduciary's duties of loyalty and prudence include a duty to disclose and inform. This duty entails: (a) a duty not to misinform; (b) an affirmative duty to inform when the fiduciary knows or should know that silence might be harmful; and (c) a duty to convey complete and accurate information material to the circumstances of participants and beneficiaries. This duty to disclose and inform recognizes the disparity that may exist, and in this case did exist, between the training and knowledge of the fiduciaries, on the one hand, and the participants and the beneficiaries, on the other. In a plan with various funds available for investment, this duty to inform and disclose also includes: (a) the duty to impart to plan participants material information of which the fiduciary has or should have knowledge that is sufficient to apprise the average plan

participant of the risks associated with investing in any particular fund; and (b) the duty not to make material representations.

51.     By no later than the commencement of the Class Period, defendants breached their fiduciary duties to disclose and inform with respect to the Plan's use of employer stock as a Plan investment. Rather than providing complete and accurate information to the Plan's participants and beneficiaries regarding the risks of investing in company stock in the Plan, defendants did the opposite. They withheld and concealed material information during the Class Period and before, and instead actively misled the participants and beneficiaries of the Plan about the appropriateness of investing in Company stock and about defendants' earnings prospects and business condition, thereby encouraging participants of the Plan to continue to make and to maintain substantial investments in Company stock in the Plan.

### COUNT II:

### BREACH OF DUTY TO MONITOR AND ELIMINATE INAPPROPRIATE INVESTMENTS AND INVESTMENT ALTERNATIVES

52.     Plaintiffs reallege and incorporate by reference herein the foregoing paragraphs.

53.     Under the terms of the Plan, the defendants had the authority to add and eliminate investment alternatives under the Plan.

54.     Defendants either knew or in the reasonable exercise of their fiduciary duties should have known facts relevant to the prudence of Plan investment in Hanover stock and the continued offering of Hanover stock as a Plan investment alternative.

55.     A fiduciary's duties of loyalty and prudence also entail a duty to conduct independent investigation into, and continually to monitor, the merits of all the investment alternatives in the Plan, including employer securities, to ensure that each investment is a suitable option for the Plan. Defendants breached this duty of investigation and monitoring with respect to Hanover stock. By no later than the beginning of the Class Period, these defendants could not have reasonably made

17

a determination that Company stock was a suitable investment for the Plan, either for a participant's discretionary account or for the match. In fact, by the beginning of the Class Period, if not before, Company stock was plainly an unsuitable investment option for the Plan because it was unduly risky and subject to external circumstances that could (and did) have a catastrophic effect on the value of Company stock.

56. Had defendants discharged their fiduciary obligations to monitor the Plan's investment in Hanover stock, they would have concluded that continued investment and offering of Hanover stock as a Plan investment alternative was imprudent and that divestment and the termination of Hanover stock as an investment alternative were necessary. The defendants' failure to make this determination in a timely fashion and act upon it appropriately, caused the Plan to lose millions of dollars, which loss is reflected in decreased account balances of Participants.

## COUNT III:

## BREACH OF DUTY TO AVOID CONFLICTS OF INTEREST

57. Plaintiffs reallege and incorporate by reference herein the foregoing paragraphs.

58. The fiduciary duty of loyalty also entails a duty to avoid conflicts of interest and to resolve them promptly when they occur. A fiduciary must always administer a plan with an "eye single" to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.

59. Defendants breached their duty to avoid conflicts of interest and to promptly resolve them when they occur by continuing to allow Company stock as a Plan investment during the Class Period, by continuing to participate in various Company compensation programs that created a substantial personal interest in certain defendants or other Company executives to maintain a high public price for Hanover stock, by failing to engage independent fiduciaries and/or advisors who could make independent judgments concerning the Plan's investment in Company stock and the information provided to participants and beneficiaries concerning it, and generally by failing to take

18

whatever steps were necessary to ensure that the Plan fiduciaries did not suffer from a conflict of interest.

## COUNT IV:

## BREACH OF CO-FIDUCIARY DUTY UNDER SECTION 405

60.     Plaintiffs reallege and incorporate by reference herein the foregoing paragraphs.

61.     Section 405(a) of ERISA, 29 U.S.C. § 1105 provides as follows:

(a)     **Circumstances Giving to Liability** – In addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:

1.     if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;

2.     If, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

3.     If he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

62.     By the conduct set forth above each of the defendants has knowingly participated in the breaches of their co-fiduciaries, failed to fulfill their own fiduciary responsibilities as set forth in Section 404 of ERISA so as to enable the breaches of their co-fiduciaries, and failed to take reasonable steps to correct the breaches of their co-fiduciaries of which they had knowledge.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment as follows:

1.     For an Order certifying that this is a proper class action under Fed. R. Civ. P. 23;

2.     For a declaration that defendants violated the duties, responsibilities, and obligations imposed upon them as fiduciaries and co-fiduciaries and violated the ERISA disclosure requirements as described above;

3.     For an award of extraordinary, equitable, and/or injunctive relief as permitted by law, equity, and the federal statutory provisions sued hereunder, pursuant to Fed. R. Civ. P. 64 and 65;

4.     For an award to plaintiffs and members of the Class of restitution and/or remedial relief;

5.     For an award of pre-judgment and post-judgment interest, as well as reasonable attorneys' fees, expert witness fees, and other costs; and

6.     For such other relief as this Court may deem just and proper.

DATED: October ___, 2003       THE BASKIN LAW FIRM
JAMES D. BASKIN

JAMES D. BASKIN

Texas Bar No. 01872050
Southern District Bar No. 27093
300 West 6th Street, Suite 1950
Austin, TX  78701
Telephone:     512-381-6300
Facsimile:       512-322-9280

Attorney for Plaintiff Henry Duncan Kirkley

## CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2003, I served a true and correct copy of the **AMENDED CONSOLIDATED COMPLAINT FOR BREACH OF FIDUCIARY DUTY AND VIOLATION OF ERISA DISCLOSURE REQUIREMENTS** on the below listed counsel of record by US Mail:

Kevin T. Abikoff
Jana M. Scharf
HUGHES HUBBARD & REED LLP
1775 I Street, NW
Washington, DC  20006
Telephone:     202-721-4600
Facsimile:     202-721-4646

Thomas W. Paterson
SUSMAN GODFREY LLP
1000 Louisiana Street, Suite 5100
Houston, TX  77002
Telephone:     713-651-9366
Facsimile:     713-654-6666

Marc L. Ackerman
BRODSKY & SMITH LLC
Two Bala Plaza, Suite 602
Bala Cynwyd, PA  19004
Telephone:     610-667-6200
Facsimile:     610- 667-9029

Evan Smith
BRODSKY & SMITH LLC
240 Mineola Boulevard
Mineola, NY  11501
Telephone:     516-741-4977
Facsimile:     610-667-9029

Richard S. Schiffrin
Robert B. Weiser
Eric L. Zagar
SCHIFFRIN & BARROWAY LLP
Three Bala Plaza East, Suite 400
Bala Cynwyd, PA  19004
Telephone:     610-667-7706
Facsimile:     610-667-7056

Darren J. Robbins
MILBERG WEISS BERSHAD HYNES &
   LERACH LLP
401 B Street, Suite 1700
San Diego, CA  92101
Telephone:     619-231-1058
Facsimile:     619-231-7423

_____
Thomas E. Bilek