UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

OCT 2 4 2003

Michael N. Milby, Clerk

| | | |
|---|---|---|
| PIRELLI ARMSTRONG TIRE CORPORATION RETIREE MEDICAL BENEFITS TRUST, *et al.*, On Behalf of Themselves and All Others Similarly Situated, | § § § § § | Civil Action No. H-02-0410 **(Consolidated)** Hon. Vanessa D. Gilmore |
| Plaintiffs, | § § | CLASS ACTION |
| vs. | § § | |
| HANOVER COMPRESSOR COMPANY, *et al.*, | § § § | |
| Defendants. | § § | |

## JOINT UNOPPOSED MOTION OF SETTLING PLAINTIFFS AND DEFENDANT HANOVER COMPRESSOR COMPANY FOR CERTIFICATION OF SETTLEMENT CLASSES, PRELIMINARY APPROVAL OF SETTLEMENT, AND APPROVAL OF THE FORM AND MANNER OF NOTICE

Lead Plaintiffs in the Consolidated Securities Action, Derivative Plaintiffs in the Consolidated Derivative Actions, and ERISA Plaintiffs in the ERISA Actions have entered into a Stipulation and Agreement dated October 23, 2003 with the Settling Defendants to settle the Actions (the "Stipulation").[1] The Stipulation sets forth the terms of the proposed settlements of the Consolidated Securities Action, the Consolidated Derivative Actions, and the ERISA Actions, provides for the certification of the Securities Plaintiff Class and ERISA Plaintiff Class and provides for Notice in connection with each of the Actions. Pursuant to Rules 23 and 23.1 of the Federal Rules of Civil Procedure, Movants seek entry by the Court of the following Orders submitted herewith:

---

[1] The Stipulation is being filed concurrently with this Motion. All capitalized terms have the meaning set forth in the Stipulation.



1.      [Proposed] Order (a) certifying the Securities Plaintiff Class, (b) preliminarily approving the Securities Settlement, and (c) approving the form and manner of notice.

2.      [Proposed] Order (a) certifying the ERISA Plaintiff Class, (b) preliminarily approving the ERISA Settlement, and (c) approving the form and manner of notice.

3.      [Proposed] Order (a) preliminarily approving the Derivative Settlement and (b) approving the form and manner of notice.

The proposed Orders are attached hereto and the Notices are attached as Exhibits to the Stipulation.

The Settling Parties propose the following schedule of events leading to a Settlement Hearing to consider: (1) final approval of the settlements and entry of judgments; (2) approval of the Plan of Allocation of settlement proceeds in the Securities Settlement and the ERISA Settlement, and (3) applications by plaintiffs' counsel for attorneys' fees and reimbursement of expenses:

| | |
|---|---|
| Mail Notice to Class Members ("Notice Date"): | 5 days after Preliminary Approval |
| Publish Summary Notices: | 7 days after Preliminary Approval |
| Last day for Class Members to opt-out of Securities Settlement or to object to approval of the Settlements, Plan of Allocation of settlement proceeds in the Securities and ERISA Settlements, or applications by Plaintiffs' counsel for attorneys' fees and reimbursement of expenses: | 40 days after the Notice Date |
| Hearing on final approval of Stipulation of Settlement, Plan of Allocation of settlement proceeds, and applications, by plaintiffs' counsel for attorneys' fees and reimbursement of expenses: | 14 days after the deadline for objecting to the Settlement |

Last day for Class Members to file Proof of Claim forms:          90 days from Notice Date

The reasons and authority for the Court to grant this motion are set forth in the accompanying Memorandum.

DATED:  October 24, 2003

Respectfully submitted,


Timothy J. Crowley
State Bar No. 05170700
Richard E. Norman
State Bar No. 00788128
CROWLEY DOUGLAS & NORMAN, LLP
1301 McKinney Street, Suite 3500
Houston, TX 77010-3034
Telephone:  713-651-1771

Lead Counsel for Plaintiffs:


Darren J. Robbins
Jeffrey D. Light
Matthew P. Montgomery
MILBERG WEISS BERSHAD
HYNES & LERACH LLP
401 B Street, Suite 1700
San Diego, CA 92101
Telephone:  619-231-1058
Facsimile:  619-231-7423

_Roger B. Greenberg_ by _paterson TWP_

Roger B. Greenberg
Federal I.D. No. 3932
State Bar No. 08390000
SCHWARTZ, JUNELL, GREENBERG
& OATHOUT, LLP
Two Houston Center
909 Fannin, Suite 2000
Houston, TX 77010
Telephone: 713-752-0017

Attorneys in Charge and
Plaintiffs' Co-Liaison Counsel

_Thomas W. Paterson_

Thomas W. Paterson
Attorney-In-Charge
State Bar No. 15571500
S.D. Texas Bar No. 07078
SUSMAN GODFREY, LLP
1000 Louisiana Street
Suite 5100
Houston, TX 77002-5096
713-653-7815

Counsel for Defendant Hanover Compressor Company

_Kevin T. Abikoff_ by _paterson TWP_

Kevin T. Abikoff
State Bar No. 24034118
S.D. Texas Bar No. 34731
HUGHES HUBBARD & REED LLP
1775 I Street, N.W.
Washington, D.C. 20006-2401
Telephone: 202-721-4600
Facsimile: 202-721-4646

Counsel for Defendant Hanover Compressor Company

DC Motion for Approval Scheduling Order (2).DOC

_Richard B. Brualdi_ by _[signature]_ TWP

Richard B. Brualdi
Kevin T. O'Brien
THE BRUALDI LAW FIRM
29 Broadway, Suite 1515
New York, NY 10006
Telephone: 212-952-0602
Facsimile: 212-785-1618

Counsel for Plaintiff Harbor Finance Partners

_Paul T. Warner_ by _[signature]_ TWP

Paul T. Warner
REICH & BINSTOCK
4265 San Felipe, Suite 1000
Houston, TX 77027
Telephone: 713-622-7271
Facsimile: 713-623-8724

Counsel for Plaintiffs Roger Koch, Henry Carranza
and William Steves

_Robert Schubert_ by _[signature]_ TWP

Robert Schubert
SCHUBERT & REED LLP
Two Embarcadero Center
Suite 1660
San Francisco, CA 94111
Telephone: 415-788-4220
Facsimile: 415-788-0161

Counsel for Plaintiff
John B. Hensley, Jr.

_John G. Emerson_ by _[signature]_ TWP

John G. Emerson
Scott E. Poynter
EMERSON POYNTER LLP
1509 Louisiana, Suites C & D
Little Rock, AR 72202-5094
Telephone: 501-907-2555
Facsimile: 501-907-2556

Counsel for Plaintiff
Coffelt Family LLC

DC Motion for Approval Scheduling Order (2).DOC

James Baskin

BASKIN LAW FIRM
300 W. 6th Street, Suite 1950
Austin, TX  78701
Telephone:  512-381-6300
Facsimile:  512-322-9280

Counsel for Plaintiff
Henry Duncan Kirkley

Thomas Bilek
HOEFFNER & BILEK, L.L.P.
440 Louisiana Ste., 720
Houston, TX  77002
Telephone:  713-227-7720
Facsimile:  713-227-9404

Counsel for Plaintiffs
Ann Angleopoulos and Joyce Freeman

## Certificate of Conference

I hereby certify that I and attorneys under my supervision discussed the foregoing motion with counsel for each of the parties in the above-captioned consolidated matter and that they consented to and did not oppose the relief sought by this motion.

Kevin T. Abikoff
State Bar No. 24034118
S.D. Texas Bar No. 34731
Hughes Hubbard & Reed LLP
1775 I Street, N.W.
Washington, D.C. 20006-2401
202-721-4770
Counsel for Defendant Hanover Compressor

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the *Joint Unopposed Motion of Settling Plaintiffs and Defendant Hanover Compressor Company for Certification of Settlement Classes, Preliminary Approval of Settlement, and Approval of the Form and Manner of Notice* and *[proposed] Orders* and *Memorandum in Support of the Joint Unopposed Motion of Settling Plaintiffs and Hanover Compressor Company for Certification of Settlement Classes, Preliminary Approval of Settlement, and Approval of the Form and Manner of Notice,* including Exhibits A (and its Exhibits A-O) - D. are being forwarded in accordance with the Federal Rules of Civil Procedure as indicated below to the following counsel of record, on October 24, 2003.

William S. Lerach, Esq.
Darren J. Robbins, Esq.
Randall Steinmeyer
Jan M. Adler, Esq.
Amber L. Eck, Esq.
Matthew P. Montgomery
Benny C. Goodman, III
**MILBERG WEISS BERSHAD**
**HYNES & LERACH LLP**
401 B. Street, Suite 1700
San Diego, California 92101

Roger B. Greenberg, Esq.
**SCHWARTZ, JUNELL, CAMPBELL &**
**OATHOUT, L.L.P.**
Two Houston Center
909 Fannin, Suite 2000
Houston, Texas 77010

Timothy J. Crowley, Esq.
Richard E. Norman, Esq.
**CROWLEY DOUGLAS & NORMAN, LLP**
1301 McKinney Street, Suite 3500
Houston, Texas 77010-3034

Eric J.R. Nichols, Esq.
**BECK REDDEN & SECREST**
One Houston Center
1221 McKinney Street, Suite 4500
Houston, Texas 77010-2010

David H. Kistenbroker, Esq.
**KATTEN MUCHIN ZAVIS ROSENMAN**
525 W. Monroe Street, Suite 1600
Chicago, Illinois 60661

Harvey G. Brown, Jr., Esq.
**THE WRIGHT LAW FIRM**
Three Riverway, Suite 1660
Houston, Texas 77057

Thomas E. Bilek, Esq
**HOEFFNER & BILEK, L.L.P.**
440 Louisiana St., Suite 720
Houston, Texas 77002

James D. Baskin, III, Esq.
**THE BASKIN LAW FIRM**
300 W. 6th Street, Suite 1950
Austin, Texas 78701

Richard B. Brualdi, Esq.
**THE BRUALDI LAW FIRM**
29 Broadway, Suite 1515
New York, New York 10006

Marc L. Ackerman, Esq.
**BRODSKY & SMITH LLC**
2 Bala Plaza, Suite 602
333 E. City Avenue
Bala Cynwyd, PA 19004-1516

Mr. Art Shingler
**SCOTT & SCOTT**
401 "B" Street
16th Floor
San Diego, CA 92101

Paul T. Warner, Esq.
**REICH & BINSTOCK**
4265 San Felipe, Suite 1000
Houston, Texas 77027

David M. Goldstein
**MARICIC & GOLDSTEIN**
10535 Foothill Blvd.
Rancho Cucamonga, California 91730

Tom Alan Cunningham, Esq.
**CUNNINGHAM, DARLOW, ZOOK & CHAPOTON LLP**
600 Travis, Suite 1700
Houston, Texas 77002

Craig Smyser, Esq.
Justin M. Waggoner, Esq.
**SMYSER KAPLAN & VESELKA, L.L.P.**
2300 Bank of America Center
700 Louisiana Street
Houston, Texas 77002

Edward B. Horahan, III, Esq.
Wallace Timmeny, Esq.
**DECHERT**
1775 Eye Street, N.W.
Washington, D.C. 20006-2401

Charles Newton, Esq.
**VINSON & ELKINS LLP**
2300 First City Tower
1001 Fannin
Houston, Texas 77002

Steven J. Rothschild, Esq.
**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899

Richard S. Schiffrin, Esq.
Andrew Barroway, Esq.
Robert B. Weiser, Esq.
Eric L. Zagar, Esq.
**SCHIFFRIN & BARROWAY, LLP**
Three Bala Plaza East
Suite 400
Bala Cynwyd, Pennsylvania 19004

Evan Smith, Esq.
**BRODSKY & SMITH, LLC**
240 Mineola Boulevard
Mineola, New York 11501

Richard A. Rosen, Esq.
**PAUL, WEISS, RIFKIN, WHARTON & GARRISON, LLP**
1285 Avenue of the Americas
New York, New York 10019-6064

Brian J. Robbins, Esq.
**ROBBINS UMEDA & FINK, LLP**
1010 Second Avenue, Suite 2360
San Diego, California 92101

David R. Scott, Esq.
**SCOTT & SCOTT, LLC**
108 Norwich Avenue
Colchester, Connecticut 06415

Robert Schubert, Esq.
**SCHUBERT & REED, LLP**
Two Embarcadero Center, Suite 1660
San Francisco, California 94111

John G. Emerson, Esq.
**EMERSON POYNTER, LLP**
440 Louisiana Street, Suite 2300
Little Rock, Arkansas 72202

_____
                    Kevin T. Abikoff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PIRELLI ARMSTRONG TIRE CORPORATION RETIREE MEDICAL BENEFITS TRUST, et al., On Behalf of Themselves and All Others Similarly Situated, | § § § § § | Civil Action No. H-02-0410 **(Consolidated)** CLASS ACTION |
| Plaintiffs, | § § | |
| vs. | § § | |
| HANOVER COMPRESSOR COMPANY, et al., | § § § § | |
| Defendants. | § § | |

**MEMORANDUM IN SUPPORT OF THE JOINT UNOPPOSED MOTION OF
SETTLING PLAINTIFFS AND DEFENDANT HANOVER COMPRESSOR COMPANY
FOR CERTIFICATION OF SETTLEMENT CLASSES, PRELIMINARY APPROVAL
OF SETTLEMENT, AND APPROVAL OF THE FORM AND MANNER OF NOTICE**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   BACKGROUND AND PROCEDURAL HISTORY OF THE ACTIONS ........................3

    A.   The Actions.................................................................................................3

        1.   The Consolidated Securities Action.............................................3

        2.   The Consolidated Derivative Actions...........................................5

        3.   The ERISA Class Actions............................................................5

    B.   The Settlement ...........................................................................................6

        1.   The Settlement Terms..................................................................7

            a.   Monetary Relief ..............................................................7

            b.   Corporate Governance Provisions ...................................8

        2.   Plaintiffs' Research, Investigation, and Analysis of the Claims.................9

        3.   Arm's-Length Negotiations Among The Parties Concerning Possible Settlement ...................................................................9

III.  THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT OF THE ACTIONS .........................................................10

    A.   The Fifth Circuit Favors Settlement and Presumes the Fairness of a Settlement Negotiated by Experienced Counsel.....................................................10

    B.   The Proposed Settlement Leaves No Doubt As to Its Fairness and Otherwise Clearly Falls Within the Range of Possible Approval..........................11

        1.   The Proposed Settlement Was Arrived at After Hard-Fought Negotiations Between Experienced Counsel and Is Therefore Not the Product of Fraud or Collusion..............................................13

        2.   The Proposed Benefits of the Settlement Are Commensurate with the Complexity, Expense and Likely Duration of Further Litigation........13

        3.   The Settling Parties Have Conducted Extensive Factual Inquiry and Are All Well Informed Despite the Early Stage of Proceedings ........14

        4.   The Potential Factual and Legal Obstacles to Plaintiffs Prevailing Support Preliminary Approval...................................................15

**Page**

5.    The Substantial Benefits Provided by the Proposed Settlement Are Commensurate with the Possible Range of Recovery ...............................15

6.    Opinion of Counsel and Other Participants ...............................................17

IV.    THE SECURITIES PLAINTIFF CLASS AND ERISA PLAINTIFF CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES ........................................18

    A.    Certification of the Securities Plaintiff Class Is Appropriate.................................18

        1.    Numerosity...................................................................................................19

        2.    Commonality................................................................................................19

        3.    Typicality ....................................................................................................20

        4.    Adequacy ....................................................................................................21

        5.    Lead Plaintiffs Satisfy the Requirements of Rule 23(b)(3) ........................23

    B.    Certification of the ERISA Plaintiff Class Is Appropriate.....................................24

        1.    Numerosity...................................................................................................25

        2.    Commonality................................................................................................26

        3.    Typicality ....................................................................................................27

        4.    Adequacy ....................................................................................................28

        5.    The ERISA Plaintiff Class Satisfies the Requirements of Rule 23(b)(1) ...................................................................................................28

V.    THE PROPOSED NOTICES TO THE SECURITIES PLAINTIFF CLASS, TO HANOVER SHAREHOLDERS AND TO THE ERISA PLAINTIFF CLASS ARE PROPER AND SHOULD BE AUTHORIZED.......................................................31

VI.    PROPOSED SCHEDULE OF EVENTS LEADING TO FINAL APPROVAL...............32

VII.    CONCLUSION.................................................................................................33

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ahearn v. Fibreboard Corp.,*
    162 F.R.D. 505 (E.D. Tex. 1995) .......................................................................17

*Amchem Prods. v. Windsor,*
    521 U.S. 591 (1997) ..........................................................................................24

*Banyai v. Mazur,*
    205 F.R.D. 160 (S.D.N.Y. 2002) ...............................................................26, 29

*Becher v. Long Island Lighting Co.,*
    164 F.R.D. 144 (E.D.N.Y. 1996) ......................................................................27

*Blackie v. Barrack,*
    524 F.2d 891, 901 n.17 (9th Cir. 1975) ............................................................18

*Brown v. Cameron-Brown Co.,*
    92 F.R.D. 32 (E.D. Va. 1981) ...........................................................................18

*Bublitz v. E.I. du Pont de Nemours & Co.,*
    202 F.R.D. 251 (S.D. Iowa 2001) .....................................................................25

*Bunnion v. Consol. Rail Corp.,*
    No. Civ. A. 97-4877, 1998 WL 372644
    (E.D. Pa. May 14, 1998) ..............................................................................29, 30

*Cotton v. Hinton,*
    559 F.2d 1326 (5th Cir. 1977) ....................................................10, 11, 14, 17

*Dura-Bilt Corp. v. Chase Manhattan Corp.,*
    89 F.R.D. 87 (S.D.N.Y. 1981) ..........................................................................24

*Durrett v. John Deere Co.,*
    150 F.R.D. 555 (N.D. Tex. 1993) ................................................................19, 21

*Feret v. Corestates Fin. Corp.,*
    No. CIV A. 97-6759, 1998 WL 512933
    (E.D. Pa. Aug. 18, 1998) ............................................................................29, 30

*Goldstein v. MCI WorldCom,*
    340 F.3d 238 (5th Cir. 2003) ............................................................................15

**Page**

*Gruby v. Brady,*
    838 F. Supp. 820 (S.D.N.Y. 1993) ...................................................................28, 29, 30

*Holley v. Kitty Hawk, Inc.,*
    200 F.R.D. 275 (N.D. Tex. 2001) .................................................................................22

*Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
    855 F. Supp. 825 (E.D.N.C. 1994)................................................................................14

*In re Enron Corp. Sec. Litig.,*
    206 F.R.D. 427 (S.D. Tex. 2002)..................................................................................22

*In re FirstPlus Financial Group, Inc. Sec. Litig.,*
    No. Civ. A.3:98-CV-2551-M,
    2002 WL 31415951 (N.D. Tex. Oct. 28, 2002)........................................................21, 23

*In re FirstPlus Financial Group Sec. Litig.,*
    No. 3:98-CV-2551-M, U.S. Dist. LEXIS 20446, at *18
    (N.D. Tex. Oct. 23, 2002) ...........................................................................................23

*In re Great Southern Life Ins. Co. Sales Practices Litig.,*
    192 F.R.D. 212 (N.D. Tex. 2000) .................................................................................21

*In re Ikon Office Solutions, Inc. Sec. Litig.,*
    191 F.R.D. 457 (E.D. Pa. 2000)........................................................................... *passim*

*In re Universal Access, Inc.,*
    209 F.R.D. 379 (E.D. Tex. 2002)..................................................................19, 20, 21, 22

*James v. City of Dallas,*
    254 F.3d 551 (5th Cir. 2001), *cert. denied*, 534 U.S. 1113 (2002)....................................20

*Kalodner v. Michaels Stores,*
    172 F.R.D. 200 (N.D. Tex. 1997) .................................................................................20

*Kane v. United Indep. Union Welfare,*
    No. 97-1505, 1998 WL 78985
    (E.D. Pa. Feb. 24, 1998)........................................................................................29, 30

*Koch v. Dwyer,*
    No. Civ. 98-5519, 2001 WL 289972
    (S.D.N.Y. Mar. 23, 2001) ................................................................................. *passim*

**Page**

*Maher v. Zapata Corp.,*
    714 F.2d 436 (5th Cir. 1983) .......................................................................10, 11, 31, 32

*Mass. Mut. Life Ins. Co. v. Russell,*
    473 U.S. 134 (1985)...........................................................................................28, 30

*McNamara v. Bre-X Minerals Ltd.,*
    214 F.R.D. 424 (E.D. Tex. 2002)............................................................... *passim*

*Miller v. Republic Nat'l Life Ins. Co.,*
    559 F.2d 426 (5th Cir. 1977) ...........................................................................10, 11, 32

*Mullane v. Central Hanover Bank & Trust Co.,*
    339 U.S. 306 (1950)...................................................................................................32

*Mullen v. Treasure Chest Casino, LLC.,*
    186 F.3d 620 (5th Cir. 1999) .......................................................................18, 19, 20, 26

*Musmeci v. Schwegmann Giant Super Mkts., Inc.,*
    332 F.3d 339 (5th Cir. 2003) ...................................................................................27

*Parker v. Anderson,*
    667 F.2d 1204 (5th Cir. 1982) ...............................................................................11, 12

*Pearson v. Ecological Science Corp.,*
    522 F.2d 171 (5th Cir. 1975) ...................................................................................10

*Pettway v. American Cast Iron Pipe Co.,*
    576 F.2d 1157 (5th Cir. 1978) .................................................................................11

*Reed v. General Motors Corp.,*
    703 F.2d 170 (5th Cir. 1983) ...................................................................................12

*Specialty Cabinets & Fixtures, Inc. v. American Equitable Life Ins. Co.,*
    140 F.R.D. 474 (S.D. Ga. 1991) ....................................................................24, 27, 29, 30

*Stewart v. Winter,*
    669 F.2d 328 (5th Cir. 1982) ...................................................................................19

*Thomas v. SmithKline Beecham Corp.,*
    201 F.R.D. 386 (E.D. Pa. 2001)................................................................... *passim*

*Thompson v. Midwest Foundation Indep. Physicians Ass'n,*
    124 F.R.D. 154 (S.D. Ohio 1988) .............................................................................17

Page

*United States v. Texas Educ. Agency,*
    679 F.2d 1104 (5th Cir. 1982) ....................................................................................11

*Van Bronkhorst v. Safeco Corp.,*
    529 F.2d 943 (9th Cir. 1976) ......................................................................................10

*Williams v. First Nat'l Bank,*
    216 U.S. 582 (1910)....................................................................................................10

*Young v. Katz,*
    447 F.2d 431 (5th Cir. 1971) ......................................................................................16


## STATUTES, RULES AND REGULATIONS

29 U.S.C.
    §1109............................................................................................................................29
    §1109(a) ......................................................................................................................27
    §1132(a)(2) ..................................................................................................................27

Federal Rules of Civil Procedure
    Rule 23 ....................................................................................................................2, 32
    Rule 23(a) .................................................................................................18, 19, 23, 25
    Rule 23(a)(1) ...............................................................................................................19
    Rule 23(a)(2) ..........................................................................................................19, 26
    Rule 23(a)(3) ...............................................................................................................20
    Rule 23(a)(4) ...............................................................................................................21
    Rule 23(b) ....................................................................................................................18
    Rule 23(b)(3) ....................................................................................................... *passim*
    Rule 23(c)(1) ...............................................................................................................18
    Rule 23(c)(2)................................................................................................................31
    Rule 42(a) .....................................................................................................................3


## SECONDARY AUTHORITIES

*Manual for Complex Litigation, Third* (3d ed. 1995)
    §23.14............................................................................................................................3
    §30.41..........................................................................................................................12

5 James Wm. Moore, *Moore's Federal Practice* (3d ed. 2000)
    ¶23.24[4] ....................................................................................................................20

## I.    INTRODUCTION

During 2002 Hanover Compressor Company ("Hanover" or the "Company") restated its financial statements which had been included in the Company's periodic reports filed with the Securities and Exchange Commission ("SEC") during the years 1999, 2000 and 2001.  The conduct underlying the restatements precipitated a formal investigation by the SEC and gave rise to related class action lawsuits arising under the federal securities laws and the Employee Retirement Income Security Act ("ERISA") as well as related shareholder derivative lawsuits.

The parties to these various lawsuits, with one exception – the Company's auditor, PricewaterhouseCoopers LLP ("PwC") – have entered into a Stipulation and Agreement of Settlement (the "Stipulation" or "Settlement") which reflects a global agreement among all the Settling Parties to resolve the Actions in a manner the parties believe to be fair, reasonable and adequate.[1]  The proposed Settlement, which, through its corporate governance reforms, has been heralded by the national media as "groundbreaking"[2] and "unprecedented"[3] and has been prominently featured and favorably commented on as part of the cover story in the September 2003 edition of the American Bar Association Journal,[4] will enable the various class members and

-------------------------------------------------

[1]     The Stipulation is attached as Exhibit A.  The definitions set forth in the Stipulation are incorporated by reference herein.  Definitions included in this Memorandum are set out to assist the Court where the meaning of a defined term may not be obvious or where its inclusion might be helpful but are not intended to supersede the definitions in the Stipulation.

[2]     *See Shareholders Win in Hanover Settlement; They Get Sweeping Powers in "Groundbreaking" Deal*; USA Today (May 14, 2003) attached as Exhibit B.

[3]     *See This Settlement Raises the Governance Bar; Hanover Compressor's Landmark Agreement with Shareholders to Embrace Major Corporate Reforms Could Have Profound Repercussions*; Business Week Online (May 5, 2003) attached as Exhibit C.

Hanover shareholders to obtain the substantial monetary consideration and corporate governance relief provided for in the Stipulation. In addition, resolution of the Actions will allow Hanover to fully and finally resolve these proceedings so as to remove their inherent burdens and distractions and otherwise allow Company management to focus on the overall best interests of the Company and its shareholders. Accordingly, movants now ask the Court pursuant to Rules 23 and 23.1 of the Federal Rules of Civil Procedure for preliminary approval of the proposed settlements.

Movants seek orders of the Court: (a) granting preliminary approval of the proposed settlements; (b) certifying the Securities Settlement Class and ERISA Settlement Class; (c) approving the proposed forms and methods of giving notice; and (d) directing that notice be given to members of the Securities Plaintiff Class, to Hanover Shareholders and to members of the ERISA Plaintiff Class. Movants also request that the Court schedule a hearing for the Court to consider: (a) final approval of the settlement and entry of judgment in each case; (b) approval of the Plan of Allocation of settlement proceeds in the Securities Settlement and the ERISA Settlement; and (c) plaintiffs' counsel's application for award(s) of attorneys' fees and reimbursement of expenses.

In determining whether preliminary approval is warranted, the issue before the Court is whether the proposed settlements are within a range of what might be found to be fair, reasonable and adequate, such that notice of the proposed settlements should be provided to class members and shareholders, and that a hearing be scheduled to consider final settlement approval. The Court is not required at this point to make a determination as to whether the settlements should be finally approved.

---

[4] *See* John Gibeaut, *Stock Responses*; ABA Journal (Sept. 2003) attached as Exhibit D.

As stated in the *Manual for Complex Litigation, Third*, §23.14, at 171 (3d ed. 1995), "[f]irst, the court reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing." The preliminary approval criteria are as follows:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

*Id.*, §30.41, at 237. The proposed settlements unquestionably meet the foregoing criteria for notice as they are eminently fair, reasonable and adequate and should be preliminarily approved by the Court.

## II.  BACKGROUND AND PROCEDURAL HISTORY OF THE ACTIONS

### A.  The Actions

#### 1.  The Consolidated Securities Action

Beginning on and after February 4, 2002, more than a dozen putative securities class actions were filed in this Court on behalf of purchasers of Hanover Securities (collectively, the "Securities Actions").[5] By Order dated March 28, 2002, the Court consolidated the Securities Actions, pursuant to Rule 42(a), into the *Pirelli* action (the "Consolidated Securities Action"). Subsequently filed

---

[5]  The Securities Actions were captioned as follows: *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust, et al. v. Hanover Compressor Co., et al.*, Case No. H-02-0410, *McBride v. Hanover Compressor Co.*, Case No. H-02-0431, *Koch v. Hanover Compressor Co.*, Case No. H-02-0441, *Schneider v. Hanover Compressor Co.*, Case No. H-02-0491, *Goldstein v. Hanover Compressor Co.*, Case No. H-02-0526, *Noyes v. Hanover Compressor Co.*, No. H-02-0574, *Rocha v. Hanover Compressor Co.*, Case No. 02-0594, *Peck v. Hanover Compressor Co.*, Case No. H-02-0627, *Mueller v. Hanover Compressor Co.*, Case No. H-02-0652, *Langhoff v. Hanover Compressor Co.*, Case No. H-02-0764, *Fox v. Hanover Compressor Co.*, Case No. H-02-0815, *Rosen v. Goldberg*, Case No. H-02-0959, *Detectives Endowment v. Hanover Compressor Co.*, Case No. H-02-1016, *Montag v. Hanover Compressor Co.*, Case No. H-02-1030 and *Anderson v. Hanover Compressor Co.*, Case No. H-02-2306.

actions also were consolidated into the Consolidated Securities Action, by Order dated December 31, 2002.

By Order dated January 6, 2003, the Court appointed Pirelli Armstrong Tire Corp., Retiree Medical Benefits Trust, Plumbers & Steamfitters, Local 137 Pension Fund, O. Bryant Lewis, 720 Capital Management, LLC and Specialists DPM as lead plaintiffs (the "Lead Plaintiffs") and appointed Milberg Weiss Bershad Hynes & Lerach LLP ("Milberg Weiss") as lead counsel (the "Lead Counsel") in the Consolidated Securities Action.

On September 5, 2003, Lead Plaintiffs filed a consolidated amended complaint (the "Consolidated Federal Securities Complaint") on behalf of themselves and a class of persons (the "Securities Plaintiff Class") who purchased Hanover Securities between May 4, 1999 and December 23, 2002 (the "Class Period").[6] The Consolidated Federal Securities Complaint named as defendants Hanover, certain individuals (collectively, the "Settling Securities Defendants"), as well as Hanover's auditor, PwC.

In the Consolidated Federal Securities Complaint, Lead Plaintiffs allege that Hanover and the other Settling Securities Defendants artificially inflated the price of Hanover stock during the Class Period by issuing financial statements on behalf of Hanover for 1999, 2000, and 2001 that were false, misleading, and in violation of generally accepted accounting principles ("GAAP"). They further allege that Hanover ultimately restated its financial results in 2002, eliminating more than $77 million in revenue in 1999, 2000, and 2001. The Settling Securities Defendants generally have denied liability and assert that any losses by members of the Securities Plaintiff Class cannot be attributed to their conduct.

---

[6]   For the purposes of the settlement, Hanover Securities are defined as Hanover common stock and any other Hanover equity or debt security or options related thereto.

### 2. The Consolidated Derivative Actions

On or after April 10, 2002, five derivative actions were filed in or removed to this Court and a derivative action was filed in the Delaware Chancery Court on February 15, 2002.[7] On August 19, 2002 and August 26, 2002, the Federal Derivative Actions were consolidated into *Harbor Finance Partners v. McGhan, et al,* Case No. H-02-0761. The Derivative Actions allege that certain directors and officers of Hanover breached their fiduciary duties owed to Hanover by causing and/or allowing the Company: (1) to improperly recognize revenue which led to the restatement of the Company's financial results; and (2) to sell (issue) shares of Hanover stock at artificially inflated prices prior to the disclosure of the true state of Hanover's business and operations. The defendants in the Derivative Actions (collectively, the "Settling Derivative Defendants") generally deny liability and deny that their conduct resulted in the damages alleged.

By Order dated October 2, 2003, the Consolidated Derivative Actions were consolidated into the Consolidated Securities Action.

### 3. The ERISA Class Actions

On or after March 26, 2003, three class actions alleging ERISA violations were filed in this Court on behalf of participants and beneficiaries of the Hanover Companies Retirement Savings Plan (the "Plan") and on behalf of the Plan itself (the "ERISA Plaintiffs").[8] By Order dated August 1,

---

[7]    The derivative actions filed in this Court are: *Koch v. O'Connor, et al.*, Case No. H-02-1332, *Carranza v. O'Connor, et al.*, Case No. H-02-1430, *Steves v. O'Connor, et al.*, Case No. H-02-1527, *Hensley v. McGann, et al.*, Case No. H-02-2994 and *Harbor Finance Partners v. McGhan, et al.*, Case No. H-02-0761, (the "Federal Derivative Actions"). The derivative action filed in the Delaware Chancery Court is *Coffelt Family, LLC v. O'Connor, et al.*, No. CA 19410 (the "State Derivative Action") (collectively, the "Derivative Actions" and the plaintiffs in the Derivative Actions are the "Settling Derivative Plaintiffs").

2003, the Court consolidated the ERISA Actions into the Consolidated Securities Action for purposes of settlement. On October 9, 2003, the ERISA Plaintiffs filed an Amended Consolidated Complaint for Breach of Fiduciary Duty and Violation of ERISA Disclosure Requirements.

In the Consolidated ERISA Complaint, the ERISA Plaintiffs claim that from May 4, 1999 to December 23, 2002 (the Class Period), Hanover and certain named individuals (the "Settling ERISA Defendants") breached duties as ERISA fiduciaries, including; (i) the duty to investigate and monitor the prudence of offering Hanover stock as an investment choice suitable for a 401(k) plan; (ii) the duty to provide ERISA Plaintiffs and the class they represent (the "ERISA Plaintiff Class") with material information known to the Settling ERISA Defendants that indicated the imprudence of Hanover stock as a 401(k) investment choice; (iii) the duty to monitor the performance of other fiduciaries; (iv) and the duty to communicate information to other Plan fiduciaries. The Settling ERISA Defendants generally deny liability and deny that their conduct resulted in the damages alleged.

**B.    The Settlement**

The plaintiffs in the Consolidated Securities Action, Consolidated Derivative Actions, and the ERISA Actions (collectively, the "Actions") have reached an agreement with the defendants in each of these Actions (collectively, the "Settling Defendants"), except PwC, to settle the Actions. The global settlement is the culmination of work that began in February 2002 and involved more than nine months of intensive research, investigation, and hard-fought negotiations. Indeed, the process extended through the negotiation and execution of three Memoranda of Understanding (entered into effective May 12, 2003, July 18, 2003 and October 13, 2003) in order to achieve the

---

[8]     The ERISA class actions are as follows: *Kirkley v. Hanover Co., et al.*, Case No. H-03-1155, *Angleopoulos v. Hanover Compressor Co., et al.*, Case No. H-03-1064 and *Freeman v. Hanover Compressor Co., et al.*, Case No. H-03-1095 (collectively, the "ERISA Actions").

global resolution presented by the Stipulation.  The global settlement includes a total recovery of more than $80 million in cash and securities, in addition to significant and highly acclaimed corporate governance reforms.

### 1.    The Settlement Terms

The Stipulation provides for significant monetary and corporate governance relief which will benefit the class members in the Consolidated Securities Action, the ERISA Actions as well as Hanover Shareholders.

### a.    Monetary Relief

Payment of Cash:  The Stipulation provides for the payment of $30.2 million in cash, the vast majority of which ($29.5 million) has been deposited in an escrow account and is earning interest for the benefit of class members (the  "Securities Settlement Cash Fund").  The Securities Settlement Cash Fund will be used, in part, to provide relief to members of the Settling Securities Plaintiff Class as well to members of the Settling ERISA Plaintiff Class who, through their shareholdings in the Plan, are also members of the Settling Securities Plaintiff Class.  In addition, $1.775 million in cash will be paid from the Securities Settlement Cash Fund and will be allocated to the ERISA Settlement ("ERISA Settlement Fund").

In addition, Hanover will deposit an additional $3 million in cash in the event of a Change of Control of Hanover (as Change of Control is broadly defined in the Stipulation) if such Change of Control occurs within one year of the Court's final approval of the Settlement.

Payment of Hanover Common Stock:  The Stipulation provides for the payment of 5 million shares of Hanover common stock to be paid in equal amounts by Hanover and GKH (based on the October 10, 2003 closing price of $10.35, the stock had a value of $51.75 million).  Like the cash, the stock will be used to provide benefits to both the Settling Securities Plaintiff Class and the Settling ERISA Plaintiff Class.

Note:  The Stipulation provides that Hanover will issue a Note in the principal sum of $6.65 million bearing interest at a rate of 5% from the date of final approval of the Settlement with a maturity date of March 31, 2007.  The Note is extinguished prior to the Maturity Date if the average closing price of Hanover's Common Stock is at or above $12.25 for a period of 15 consecutive days.[9]  If such were to occur, however, it would indicate that the value of the 5 million shares would be more than $61 million.

### b.    Corporate Governance Provisions

The Securities Parties also negotiated substantial corporate governance changes set forth in the Governance Term Sheet attached as Exhibit A to the Stipulation, for the benefit of the Settling Securities Plaintiff Class and Hanover Shareholders.  These provisions include:

- Hanover shareholders who hold more than 1% of Hanover common stock are entitled to nominate two independent directors to the Company's Board of Directors.

- Two-thirds of the members of Hanover's board will be required to be independent.

- Hanover's audit committee and other key committees will be filled with only independent directors.

- Insider trading controls will be implemented, including a prohibition which precludes Hanover insiders from selling personal stock at any time the Company is using corporate funds to buy back Hanover stock.

- Hanover's outside auditing firm will be subject to mandatory rotation.

With respect to the ERISA Settlement, additional governance relief has been agreed such that each beneficiary under the Plan shall have the right to direct the investment of his or her employer

---

[9]     If a Change of Control occurs prior to the Maturity Date and the Change of Control Price is (a) $12.25 or more, the Note shall be immediately extinguished and cancelled, and shall no longer evidence an obligation of the Company, or (b) less than $12.25, the entire outstanding principal amount of this Note and all accrued but unpaid interest hereunder shall be due and payable thirty (30) days following the Change of Control.

contributions to the Plan, upon the vesting thereof, in the same manner and among the same investment alternatives as are available for the investment of employee contributions to the Plan.

### 2. Plaintiffs' Research, Investigation, and Analysis of the Claims

The proposed settlement is the culmination of a comprehensive investigation into the merits of the claims and the various issues associated with prosecuting the Actions to judgment. Settling Plaintiffs, through their respective counsel, conducted and completed extensive research, discovery and investigation during the litigation. Settling Plaintiffs' Counsel had access to a fully searchable database containing tens of thousands of pages of documents, including all non-privileged documents produced by the Company to the SEC. Settling Plaintiffs' Counsel reviewed these documents as well as the Company's public filings, press releases and other public statements. Further, Settling Plaintiffs' Counsel interviewed current and former Company officers and employees with knowledge about the matters in question, including all Company employees and officers who were questioned by the SEC. Moreover, the Settling Plaintiffs and the Settling Defendants, through their respective counsel, engaged in extensive consultation with damage, accounting and economic experts. As a result of this comprehensive investigation and analysis, counsel for the Settling Parties believe that the terms and conditions contained in the proposed settlements are fair, reasonable and adequate.

### 3. Arm's-Length Negotiations Among The Parties Concerning Possible Settlement

Beginning in January 2003, the Settling Parties engaged in vigorous good faith, arm's-length negotiations in an effort to resolve all claims that have been or could be asserted in the Consolidated Securities Action, ERISA Actions, and the Derivative Actions. Certain of the Settling Parties, including the Lead Plaintiffs, entered into a memorandum of understanding dated May 12, 2003, which was amended on July 18, 2003 to include certain additional Settling Parties, and again on October 13, 2003 to include the remaining Settling Parties. Throughout this nine-month process, the

- 9 -

Settling Parties have conducted numerous meetings and telephone conferences where the terms of the Settlement were extensively debated and negotiated.

Settling Plaintiffs, through their respective counsel, have carefully considered and evaluated, *inter alia*, the relevant legal authorities and evidence to support the claims asserted against the Settling Defendants, the likelihood of prevailing on those claims, the Settling Defendants' respective abilities to pay any judgment obtained in light of their current financial condition, and the likely appeals and subsequent proceedings necessary if the Settling Plaintiffs did prevail against the Settling Defendants, and have concluded that the proposed Settlement is in the best interests of the Securities Plaintiff Class, the ERISA Plaintiff Class, and Hanover Shareholders.

## III.   THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT OF THE ACTIONS

### A.   The Fifth Circuit Favors Settlement and Presumes the Fairness of a Settlement Negotiated by Experienced Counsel

"Compromises of disputed claims are favored by the courts." *Williams v. First Nat'l Bank,* 216 U.S. 582, 595 (1910). The Fifth Circuit has repeatedly held that, as a result of their highly favored status, settlements "'will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits.'" *Miller v. Republic Nat'l Life Ins. Co.,* 559 F.2d 426, 428 (5th Cir. 1977) (quoting *Pearson v. Ecological Science Corp.*, 522 F.2d 171, 176 (5th Cir. 1975)).

Settlements of class actions and shareholder litigation are "particularly favored" and are not to be lightly rejected by the courts. *Maher v. Zapata Corp.,* 714 F.2d 436, 455 (5th Cir. 1983) (shareholder litigation); *see also Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977). In the case of class actions, the Fifth Circuit has held that "there is an *overriding* public interest in favor of settlement," because such suits "have a well deserved reputation as being most complex." *Cotton,* 559 F.2d at 1331 (emphasis added); *accord Van Bronkhorst v. Safeco Corp.,* 529 F.2d 943, 950 (9th Cir. 1976).

The proposed settlements of a class action and of a shareholder derivative action should be approved where such settlements are fair, adequate and reasonable. *See Cotton*, 559 F.2d at 1330 (cardinal rule is that class action settlement must be fair, adequate and reasonable and not the product of collusion); *Maher*, 714 F.2d at 455 (settlement of shareholders' derivative action must be fair, adequate and reasonable and without fraud or collusion); *Parker v. Anderson*, 667 F.2d 1204, 1208-09 (5th Cir. 1982) (same). Significantly, when determining the fairness, adequacy and reasonableness of a proposed settlement, "the trial court is entitled to rely upon the judgment of experienced counsel for the parties." *Cotton*, 559 F.2d at 1330. Indeed, absent fraud or collusion, the court should be hesitant to substitute its judgment for that of counsel. *See id.; United States v. Texas Educ. Agency*, 679 F.2d 1104, 1108 (5th Cir. 1982) (where experienced counsel have negotiated a settlement at arm's-length, a strong presumption is created that the compromise is fair and reasonable); *Pettway v. American Cast Iron Pipe Co.*, 576 F.2d 1157, 1216 (5th Cir. 1978) (if experienced counsel determine that the settlement is fair and in the best interest of the class, "the attorney's views must be accorded great weight"). Settlement is particularly favored where, as here, it is the culmination of extensive fact-finding and arm's-length negotiations in complex securities, ERISA and shareholder derivative cases. *See Maher*, 714 F.2d at 455 (settlements of shareholder derivative actions are particularly favored because such litigation is "'notoriously difficult and unpredictable'") (citation omitted); *Miller*, 559 F.2d at 428 ("Settlement agreements are 'highly favored in the law and will be upheld wherever possible because they are a means of amicably resolving doubts and preventing lawsuits.'") (citation omitted); *see also Cotton*, 559 F.2d at 1331 ("Particularly in class action suits, there is an overriding public interest in favor of settlement.").

**B.     The Proposed Settlement Leaves No Doubt As to Its Fairness and Otherwise Clearly Falls Within the Range of Possible Approval**

The procedure for preliminary approval of a class action settlement is well established:

Approval of a class action settlement involves a two-step process. First, the Court makes a preliminary fairness evaluation of the proposed terms of settlement submitted by counsel.

\*        \*        \*

"If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies ... and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement."

*McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 426, 430 (E.D. Tex. 2002) (quoting *Manual*

*for Complex Litigation, supra*, §30.41). Accordingly, to meet the test for preliminary approval

the parties need only show that the Settlement (a) does not disclose grounds to doubt its fairness

or contain other obvious deficiencies, and (b) falls within the range of possible approval. *Id.*

Here, the substantial monetary and non-monetary benefits provided to the Securities Plaintiff

Class, the ERISA Plaintiff Class, and Hanover Shareholders by the proposed Settlement, arrived at

after hard-fought, arm's-length negotiations among experienced counsel, raise no ground for this

Court to doubt the fairness of the Settlement and demonstrate no obvious (or not so obvious)

deficiency.

The Court's inquiry, therefore, devolves to whether, based on its preliminary evaluation, the

proposed Settlement falls within the range of possible approval when measured against the

established criteria for final approval:

(1) whether the settlement was a product of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the factual and legal obstacles [to] prevailing on the merits; (5) the possible range of recovery and the certainty of damages; and (6) the respective opinions of the participants, including class counsel, class representative, and the absent class members.

*Parker,* 667 F.2d at 1209; *see also Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir.

1983) (same). Although the Court need only make a preliminary evaluation of these factors at

- 12 -

this stage of the proceeding, applying this criteria to the Settlement demonstrates that the Court should grant the motion for preliminary approval.

### 1. The Proposed Settlement Was Arrived at After Hard-Fought Negotiations Between Experienced Counsel and Is Therefore Not the Product of Fraud or Collusion

The Settling Parties, through their respective highly experienced counsel, have engaged in vigorous good faith, arm's-length bargaining to resolve all claims that have been or could be asserted in the Consolidated Securities Action, ERISA Actions, and Derivative Actions. For nine months, the Settling Parties' counsel have conducted numerous meetings and telephone discussions where the terms of the Settlement described above were extensively debated and negotiated. During the course of the negotiations, the amount and type of relief changed in material ways with the resulting relief being the product of compromise by all parties. Accordingly, there is no reason here to question the fairness of the proposed Settlement, or to otherwise question the good faith of the parties to the Settlement. In sum, the Settlement was the result of extensive arm's length negotiations between experience counsel knowledgeable about the strengths and weaknesses of the claims made and the potential defenses to them.

### 2. The Proposed Benefits of the Settlement Are Commensurate with the Complexity, Expense and Likely Duration of Further Litigation

There is no dispute that the prosecution of the Consolidated Securities Action, Derivative Actions, and ERISA Actions is and would continue to be complex, expensive, and lengthy. Additional fact and expert discovery would involve considerable expenditures of time and money. Extensive briefing of complex securities, ERISA and fiduciary duty standards, including motions, for summary judgment and at trial would be inevitable. The proposed Settlement recognizes the inherent risks, costs and potential for delay associated with extremely complex litigation involving sophisticated commercial transactions and related accounting issues. Because success at trial is

never certain, and because the Company undoubtedly has the resources to mount an aggressive and protracted defense with respect to complicated litigation and liability issues such as scienter, loss causation, damages, fiduciary duties and other relevant legal and factual issues, the proposed Settlement eliminates significant risks to the Securities Plaintiff Class, the ERISA Plaintiff Class and to Hanover Shareholders as well as the potential for lengthy and costly appeals. The proposed Settlement will also expedite the payment of substantial monetary compensation in a timely and cost-effective manner in addition to providing significant timely non-monetary benefits.

### 3. The Settling Parties Have Conducted Extensive Factual Inquiry and Are All Well Informed Despite the Early Stage of Proceedings

This proposed Settlement comes at a relatively early stage in the litigation, foreclosing the extraordinary expense of protracted discovery and trial preparation, the incalculable cost of time and attention diverted from the day-to-day business operations of the Company, and of course the burden to the Court of protracted and complex litigation. Notwithstanding the relatively early stage in the proceedings, however, the Settling Parties are well informed. Settling Plaintiffs' Counsel have reviewed tens of thousands of pages of documents as well as the Company's public filings, press releases and other public statements, and conducted in-person interviews with 13 current and former Company officers and employees. Further, the Settling Plaintiffs and Settling Defendants, through their respective counsel, engaged in extensive consultation with damages, accounting and/or economics experts. Having completed sufficient investigation and discovery to properly evaluate these cases, Settling Plaintiffs' Counsel have settled the Actions on a highly favorable basis to the Securities Plaintiff Class, the ERISA Settlement Class and Hanover Shareholders without the substantial expense risk and uncertainty of continued litigation. Accordingly, on this factor, too, preliminary approval of the Settlement is unquestionably warranted. *See Cotton*, 559 F.2d at 1332; *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 829 (E.D.N.C. 1994).

### 4. The Potential Factual and Legal Obstacles to Plaintiffs Prevailing Support Preliminary Approval

Settling Plaintiffs, through their respective counsel, have carefully considered and evaluated, *inter alia*, the Settling Defendants' respective abilities to pay any judgment obtained in light of their current financial condition and the likely appeals and subsequent proceedings necessary if the Settling Plaintiffs did prevail against the Settling Defendants. In evaluating this issue, the Settling Plaintiffs took into account the amount of directors and officers insurance coverage, particularly that the vast majority of the insurance coverage was utilized to satisfy the cash portion of the Settlement. The Settlement recognizes the inherent risks of extremely complex litigation involving a panoply of difficult legal and factual issues in each Action. Plaintiffs in each Action would have to overcome numerous difficult and unresolved issues of law if they were to be successful. For example, Lead Plaintiffs in the Consolidated Securities Action would have to overcome the heightened pleading standards of the Private Securities Litigation Reform Act of 1995 ("PSLRA"). While Lead Plaintiffs are confident that the Consolidated Federal Securities Complaint would survive a motion to dismiss, in the post-PSLRA environment, the risk of dismissal is real. *See, e.g., Goldstein v. MCI WorldCom*, 340 F.3d 238 (5th Cir. 2003) (affirming dismissal with prejudice of securities fraud class action complaint alleging major securities fraud involving $685 million write-off of accounts receivable). Because success at the motion to dismiss or summary judgment stage or trial is never certain, and because Hanover and the other defendants would have mounted an aggressive and protracted defense, the Settlement eliminates the significant risks to the Settling Parties and the potential for lengthy, costly and uncertain litigation and appeals.

### 5. The Substantial Benefits Provided by the Proposed Settlement Are Commensurate with the Possible Range of Recovery

Settling Plaintiffs, through their respective counsel, have carefully considered and evaluated, *inter alia*, the relevant legal authorities and evidence to support the claims asserted against the

- 15 -

Settling Defendants as well as the likelihood of prevailing on those claims, and have concluded that the proposed Settlement is in the best interests of the Securities Plaintiff Class, the ERISA Plaintiff Class and Hanover Shareholders. The proposed Settlement provides for a cash fund in the amount of $30,200,000 (of which $29,500,000 is already deposited in an escrow account and earning interest), including $1,775,000 that is allocated to settle the ERISA Actions. In addition, the Settlement provides for payment of 5,000,000 shares of Hanover Common Stock, which had a closing market price of $10.35 per share on October 10, 2003, the Company's contribution of a note in the amount of $6,650,000, the Company's adoption of significant corporate governance enhancements, and significant changes to the operation of the Plan. In sum, the proposed Settlement provides more than $80 million in cash and stock as well as Hanover's adoption of beneficial corporate governance procedures that the national media has described as "groundbreaking" and "unprecedented," while providing the Company with an opportunity for an early resolution of the litigation.[11] Clearly, the monetary and non-monetary relief afforded by the proposed Settlement falls "within the range of possible approval" for purposes of giving notice to the Securities Plaintiff Class, the ERISA Plaintiff Class, and Hanover Shareholders and holding a final approval hearing.

The Settling Plaintiffs and their counsel, based on their substantial experience, have also evaluated the proposed Settlement against comparable cases and settlements and the possible range of recovery discounted by the likelihood of success. Overall, the substantial monetary and non-monetary benefits of the Settlement is commensurate with the possible range of recovery, and thus preliminary approval is merited with respect to this factor. *See Young v. Katz*, 447 F.2d 431, 433 (5th Cir. 1971) ("In weighing the benefits held forth by the agreement of settlement against benefits

---

[11]     *See* Exhibits B and C attached hereto.

dependent on the likelihood of recovery upon the plaintiffs' cause of action, the courts cannot be expected to balance the scales with the nicety of an apothecary. The very object of a compromise 'is to avoid the determination of sharply contested and dubious issues.'") (internal quotations omitted).

In short, the Settling Parties and their counsel have carefully considered and evaluated the relevant legal authorities as well as the evidence adducted to date to support the claims asserted, the likelihood of prevailing on those claims, and the likely appeals and subsequent proceedings necessary after trial and have concluded that the Settlement is in the best interests of all of the Settling Parties.

### 6.    Opinion of Counsel and Other Participants

When evaluating the fairness, adequacy and reasonableness of a proposed settlement, "the trial court is entitled to rely upon the judgment of experienced counsel for the parties," and, "absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Cotton*, 559 F.2d at 1330; *see also Ahearn v. Fibreboard Corp.*, 162 F.R.D. 505, 528 (E.D. Tex. 1995) (It is appropriate for the Court to "'rely upon the judgment of experienced counsel for the parties'" in approving a class action settlement) (quoting *Cotton*, 559 F.2d at 1330); *Thompson v. Midwest Foundation Indep. Physicians Ass'n,* 124 F.R.D. 154, 159 (S.D. Ohio 1988) (because "Plaintiffs' counsel is extraordinarily experienced in class action matters, as well as ... securities ... and corporate finance and governance issues," the court deferred to "the opinion of Plaintiffs' counsel that the proposed settlement agreement is fair, adequate and reasonable"). Here, as discussed above, there is no reason to suspect fraud or collusion, and counsel for both the Settling Defendants and Settling Plaintiffs believe that the proposed Settlement is fair, reasonable and adequate and easily falls within the range of the possible approval for purposes of granting the motion for preliminary approval.

## IV.   THE SECURITIES PLAINTIFF CLASS AND ERISA PLAINTIFF CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

A case should be certified for class action treatment when the proponents satisfy all four subsections of Fed. R. Civ. P. 23(a), and at least one subsection of Fed. R. Civ. P. 23(b). *See Mullen v. Treasure Chest Casino, LLC.*, 186 F.3d 620, 623 (5th Cir. 1999).

Rule 23(c)(1) explicitly provides that an order certifying a class "may be conditional, and may be altered or amended" at any time prior to judgment. It is appropriate to conditionally certify a settlement class at the preliminary approval stage. *See McNamara*, 214 F.R.D. at 428 (conditionally certifying class so that preliminary approval of settlement may be granted). Here the Securities Plaintiff Class and the ERISA Plaintiff Class both satisfy the requirements of Rule 23(a) and Rule 23(b)(3) and 23(b)(1)(B), respectively, and accordingly the Court should grant the motion for approval of the classes for settlement purposes.[13]

### A.   Certification of the Securities Plaintiff Class Is Appropriate

Lead Counsel proposes a "Securities Plaintiff Class" comprised of:

All Persons who purchased Hanover Securities during the Class Period (including participants in the Plan who, during the Class Period, purchased Hanover Securities in their accounts in the Plan or acquired Hanover Securities through employer matching contributions) other than (a) those individuals who were officers and/or directors of Hanover during the Class Period, and (i) their affiliates and (ii) members of their immediate families, (b) officers and/or directors of Hanover at the Effective Date and (i) their affiliates and (ii) members of their immediate families, (c) the Settling Securities Defendants and (i) their affiliates and (ii) members of their immediate families, (d) Schlumberger and its subsidiaries, (e) GKH and its subsidiaries and affiliates, and (f) the Plan.

---

[13]    For the purposes of a class certification motion, the Court should accept as true the substantive allegations of the complaint. *See, e.g., Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975); *Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. 386, 393 (E.D. Pa. 2001); *Brown v. Cameron-Brown Co.*, 92 F.R.D. 32, 37 (E.D. Va. 1981).

As demonstrated below, this class is appropriately certified for settlement purposes under Rules 23(a) and 23(b)(3).

### 1.   Numerosity

The proposed securities "class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Hanover Common Stock is nationally traded on the New York Stock Exchange (under the symbol "HC"). As of November 1, 2001, Hanover had approximately 79 million shares outstanding. (Consol. Sec. Compl. ¶106). Members of the proposed Securities Plaintiff Class are scattered throughout the United States. *Id.* Joinder of all the proposed Securities Plaintiff Class members thus is impracticable, and the numerosity requirement is satisfied. *See Mullen*, 186 F.3d at 624-25 (suggesting that any class consisting of more than forty members "'should raise a presumption that joinder is impracticable,'" and finding numerosity satisfied by class of between 100 and 150 members who were geographically dispersed) (citation omitted); *see also In re Universal Access, Inc.*, 209 F.R.D. 379, 385 (E.D. Tex. 2002) ("the numerosity prerequisite 'is generally assumed to have been met in class action suits involving nationally traded securities'") (quoting *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1039 (5th Cir. 1981)).

### 2.   Commonality

The commonality element requires a determination that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Rule 23(a)(2) does not require complete identity of legal claims among the class members, but only that there be "'at least one issue whose resolution will affect all or a significant number of the putative class members.'" *Durrett v. John Deere Co.*, 150 F.R.D. 555, 557-58 (N.D. Tex. 1993) (quoting *Stewart v. Winter,* 669 F.2d 328, 335 (5th Cir. 1982)). The Lead Plaintiffs allege that defendants made uniform misrepresentations to the investing public in, *inter alia*, Hanover's filings with the SEC and in press releases. The Consolidated Federal

Securities Complaint alleges (at ¶106) numerous "questions of law or fact common to the class," including:

- "Whether defendants actions, as alleged herein, violated the federal securities laws";

- "Whether defendants participated in and pursued a common course of conduct";

- "Whether documents, SEC filings, press releases, and other statements disseminated to the investing public and Hanover's common stockholders during the Class Period misrepresented material facts about the operations, financial condition and earnings of Hanover";

- "Whether the market prices of Hanover publicly traded securities during the Class Period were artificially inflated due to material misrepresentations and the failure to correct the material misrepresentations"; and

- "To what extent the members of the Class have sustained damages and the appropriate measure of damages."

These common questions of law and fact provide a sufficient basis for certification of the Securities Plaintiff Class for settlement purposes. *See Mullen*, 186 F.3d at 625 (test for commonality is not demanding and existence of single question common to the proposed class is sufficient for certification); *see also Universal Access.*, 209 F.R.D. at 385 (same).

### 3. Typicality

The typicality requirement of Rule 23(a)(3) is satisfied where "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). There is no requirement that the circumstances of the named plaintiffs and the potential class be identical. *See James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001), *cert. denied*, 534 U.S. 1113 (2002) ("'[T]he critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality.'") (quoting 5 James Wm. Moore, *Moore's Federal Practice* ¶23.24[4] (3d ed. 2000)); *Kalodner v. Michaels Stores*, 172 F.R.D. 200, 204 (N.D. Tex. 1997) ("claims need not be identical"). "Like commonality, the test for typicality is not demanding." *Mullen*, 186 F.3d at 625.

The Consolidated Federal Securities Complaint alleges (at ¶106(c)) that Lead Plaintiffs' claims are typical and that they have no interests adverse or antagonistic to the other members of the Class. Lead Plaintiffs contend that they stand in precisely the same position as the other class members, since they purchased Hanover Securities during the Class Period at what are alleged to be artificially inflated prices, and claim injuries as a result of defendants' alleged material misrepresentations and omissions in publicly disseminated information. Lead Plaintiffs claim, like other members of the Securities Plaintiff Class, to have purchased Hanover Securities at inflated prices without knowledge of material facts concerning the true financial and operating condition of Hanover. The claims thus "arise out of the same event or course of conduct as the class members' claims and are based on the same legal theory ...." *Durrett*, 150 F.R.D. at 558; *see also Universal Access*, 209 F.R.D. at 385-86 (noting that it is the generalized nature of the claims asserted which determines whether the class representatives are typical, and finding sufficient identity of interests among class members who allegedly purchased defendant's securities during class period in reliance on purportedly false and misleading statements and suffered damages thereby). Lead Plaintiffs' claims provide a sufficient basis for the Court to find the typicality requirement satisfied to allow the Securities Plaintiff Class to be certified for settlement purposes.

### 4.   Adequacy

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This standard is met by the absence of a potential conflict between the Lead Plaintiffs and the Securities Plaintiff Class members; the willingness and ability of Lead Plaintiffs to take an active role in controlling the litigation and protecting absentee Securities Plaintiff Class members; and the Lead Plaintiffs' choice of Lead Counsel who are qualified, experienced and able to vigorously conduct the proposed litigation. *See In re Great Southern Life Ins. Co. Sales Practices Litig.,* 192 F.R.D. 212, 216 (N.D. Tex. 2000); *In re FirstPlus*

*Financial Group, Inc. Sec. Litig.*, No. Civ. A.3:98-CV-2551-M, 2002 WL 31415951, at *6 (N.D. Tex. Oct. 28, 2002); *see also Universal Access.*, 209 F.R.D. at 386.

Here, Lead Plaintiffs have no interests that are adverse or antagonistic to the interests of the members of the proposed Securities Plaintiff Class. The class definition expressly excludes Settling Defendants, affiliates, and others who might have conflicting interests. The interests of the Lead Plaintiffs and the members of the proposed Securities Plaintiff Class are aligned because they suffered from the same alleged artificial inflation of the Company's stock price and would benefit from the same relief. *See id.* As detailed in their motion to be appointed Lead Plaintiff (Docket No. 17), Lead Plaintiffs encompass both institutional and individual investors who purchased millions of dollars worth of Hanover Securities during the Class Period, and allege that their collective losses amounted to well over $1,000,000. The magnitude of the Lead Plaintiffs' holdings and purported collective losses together with their vigorous prosecution of the case confirms that their interest in this litigation is substantial, and that they had every incentive and did in fact, zealously seek to vindicate the rights of the Securities Plaintiff Class. Moreover, Lead Plaintiffs have demonstrated their commitment to protect the interest of the class by initiating the action and publishing and/or responding to the notice mandated by the PSLRA, retaining competent and experienced Lead Counsel to prosecute the claims, and agreeing to take an active role in the litigation. Lead Plaintiffs also demonstrated their knowledge of this litigation through their detailed Consolidated Securities Complaint. *See Universal Access.*, 209 F.R.D. at 386.

Lead Counsel possess extensive experience litigating securities class actions and have prosecuted many securities class actions on behalf of injured investors. *See In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 459 (S.D. Tex. 2002) (finding that "submissions of Milberg Weiss Bershad Hynes and Lerach LLP stand out in the breadth and depth of [their] research and insight" and that Milberg Weiss is "fully capable of representing Lead Plaintiff and the class"); *Holley v. Kitty Hawk,*

*Inc.*, 200 F.R.D. 275, 282 (N.D. Tex. 2001) (noting "the frequency with which the law firm of Milberg Weiss appears in the cases discussed in the Court's opinion, which in conjunction with their resume suggests their great experience in the securities class action realm"). Lead Counsel thus has the "zeal and competence to represent the class." *See In re FirstPlus Financial Group Sec. Litig.*, No. 3:98-CV-2551-M, U.S. Dist. LEXIS 20446, at *18 (N.D. Tex. Oct. 23, 2002) (appointing Milberg Weiss co-lead counsel for class).

In its Order dated January 6, 2003 (Docket No. 70), approving the appointment of Lead Plaintiffs and Lead Counsel under the PSLRA, this Court recognized the adequacy of Lead Plaintiffs' representation and of the quality and experience of Lead Counsel. The Court should continue to find that Lead Plaintiffs and Lead Counsel to satisfy the "adequacy" requirement and certify the Securities Plaintiff Class for settlement purposes.

### 5. Lead Plaintiffs Satisfy the Requirements of Rule 23(b)(3)

To certify the Securities Plaintiff Class, the Court need only find that the Consolidated Securities Action, in addition to meeting the prerequisites of Rule 23(a), satisfies at least one of the three conditions of Rule 23(b). Rule 23(b) provides, in relevant part:

> (b)    An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
>
> *        *        *
>
> (3)    the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Here, both the predominance and superiority requirements of Rule 23(b)(3) are satisfied to allow the Securities Plaintiff Class to be certified for settlement purposes.

The Securities Plaintiff Class members have common issues regarding Settling Defendants' liability that predominate over any potential individual issues as to damages and reliance. *See McNamara*, 214 F.R.D. at 429 (predominance requirement is "'readily met in certain cases alleging

- 23 -