... securities fraud'" ) (quoting *Amchem Prods. v. Windsor,* 521 U.S. 591, 625 (1997)).  Courts generally focus on the issue of liability in deciding whether the predominance requirements is met, and if the liability issue is common to the class, common questions are generally held to predominate over individual questions.  *See Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 93 (S.D.N.Y. 1981).  In this action Settling Defendants' liability turns upon issues which are common to the Securities Plaintiff Class; that is, did Settling Defendants make materially false and misleading statements through a uniform course of conduct to the detriment of all Securities Plaintiff Class members.  In such circumstances, a class action is appropriate under Rule 23(b)(3).

The second prong of Rule 23(b)(3) is essentially satisfied by the Settlement itself.  As explained in *Amchem*: "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620; *accord McNamara* , 214 F.R.D. at 429.  Thus, any manageability problems that may have existed here – and Securities Plaintiffs' Counsel know of none – are obviated by the Settlement.

As the foregoing demonstrates, the Consolidated Securities Action is well suited for class action treatment, particularly in light of the extraordinary settlement achieved on behalf of the Securities Plaintiff Class.

### B.    Certification of the ERISA Plaintiff Class Is Appropriate

The Settling ERISA Plaintiffs' Counsel propose an ERISA Plaintiff Class comprised of "each and every Person who was a participant in the Plan and who, at any time during the Class Period, purchased and/or held Hanover Securities in their accounts in the Plan, and all Persons who hold or held Securities in the Plan as beneficiaries of any such participants."

Class certification for settlement purposes has been granted in many other ERISA breach of fiduciary duty class actions. *See Specialty Cabinets & Fixtures, Inc. v. American Equitable Life Ins.*

*Co.*, 140 F.R.D. 474, 479 (S.D. Ga. 1991) (certifying class for settlement purposes in ERISA class action); *see also, Koch v. Dwyer*, No. Civ. 98-5519, 2001 WL 289972, at *5 (S.D.N.Y. Mar. 23, 2001) (certification under Rule 23(b)(1)(B)); *Bublitz v. E.I. du Pont de Nemours & Co.*, 202 F.R.D. 251, 259 (S.D. Iowa 2001) (granting class certification under subsection (b)(2) in ERISA action involving alleged breach of fiduciary duties); *SmithKline Beecham*, 201 F.R.D. at 397-98 (granting class certification of ERISA breach of fiduciary claims under subsections (b)(1) and (b)(2)); *In re Ikon Office Solutions, Inc. Sec. Litig.*, 191 F.R.D. 457, 466 (E.D. Pa. 2000) (granting class certification under subsection (b)(1); "[G]iven the nature of an ERISA claim which authorizes plan-wide relief, there is a risk that failure to certify the class would leave future plaintiffs without relief. . . . There is also risk of inconsistent dispositions that would prejudice the defendants.") (citations omitted).

Applying the criteria of Rule 23(a) and Rule 23(b)(1) of the Federal Rules of Civil Procedure to the ERISA Actions demonstrates that certification of the ERISA Plaintiff Class should be granted for purposes of settlement.

### 1.     Numerosity

The Consolidated ERISA Complaint alleges (at ¶¶14-15):

> The Class consists of all current and former employees who are or were participants in the Plan and all persons who are or were beneficiaries of the Plan at any time between May 4, 1999 and December 23, 2002, inclusive.

> The Class consists of thousands of persons located throughout the United States. The members of the Class are so numerous that joinder of all members is impracticable.

These allegations suffice to establish numerosity for purposes of certifying the ERISA Plaintiff Class for settlement purposes. *See Ikon,* 191 F.R.D. at 462 (finding numerosity in ERISA fiduciary breach case; based on "common sense assumptions" when there are "thousands of participants in the plan in any given year"); *Koch,* 2001 WL 289972, at *3 (class of approximately 3,400 ERISA plan participants was sufficiently numerous).

- 25 -

### 2.    Commonality

ERISA breach of fiduciary duty actions generally present common questions.  *See, e.g.,* *Banyai v. Mazur*, 205 F.R.D. 160, 163 (S.D.N.Y. 2002) (In general, "the question of defendants' liability for ERISA violations is common to all class members because a breach of a fiduciary duty affects all participants and beneficiaries"); *Koch*, 2001 WL 289972, at *3 (common questions of law were established where plaintiff, a member of 401(k) Plan and ESOP, alleged that fiduciaries made imprudent investments in company stock, and breached their duties under ERISA); *Ikon,* 191 F.R.D. at 465 (commonality met in ERISA breach of fiduciary duty case involving company stock in 401(k) plan).

The ERISA Plaintiffs allege that Settling ERISA Defendants' violations of ERISA arise from a common nucleus of operative facts and that the putative class has been victimized by the same breaches of fiduciary duty.  Common issues of fact and law alleged in the Consolidated ERISA Complaint (at ¶16) include:

- "Whether ERISA applies to the claims at issue here";

- "Whether Defendants owed fiduciary duties to the Plan and/or to the members of the Class;"

- "The scope of the fiduciary duties Defendants owed to the Plan and/or to the members of the Class";

- "Whether Defendants breached their fiduciary duties under ERISA"; and

- "The extent of loss sustained by the Class members and the appropriate measure of relief."

Given these common issues, Rule 23(a)(2) is satisfied for the purposes of certifying the ERISA Plaintiff Class for settlement purposes. *See Mullen*, 186 F.3d at 625 (test for commonality is not demanding and existence of single question common to the proposed class is sufficient for certification).

### 3. **Typicality**

The claims of the proposed class representatives here – Ann Angleopoulos, Joyce Freeman, and Henry Kirkley are typical of those of the proposed ERISA Plaintiff Class in that they allege similar harm and damages to the other members of the ERISA Plaintiff Class arising from the same allegedly unlawful and wrongful conduct. *See Becher v. Long Island Lighting Co.*, 164 F.R.D. 144, 151 (E.D.N.Y. 1996) (holding, in ERISA breach of fiduciary duty class action, that "[w]hen the same unlawful conduct was directed at both the named plaintiff and the class he seeks to represent, the typicality requirement is usually met 'irrespective of minor variations in the fact patterns underlying individual claims'") (citations omitted); *Koch*, 2001 WL 289972, at *3 (finding typicality of claims where the named plaintiff was an ERISA plan participant during the class period and the plan's fiduciaries treated all participants alike); *Ikon*, 191 F.R.D. at 465 (finding typicality of claims where "the named plaintiffs and the putative class would necessarily allege a similar course of conduct that [defendants] failed to provide accurate information in violation of ERISA obligations); *Specialty Cabinets*, 140 F.R.D. at 476 ("Plaintiffs have brought this action in part to remedy a breach of fiduciary duty, and any recovery on this claim belongs to the ERISA fund. These claims of the Plaintiffs are identical to those of other class members.").

Furthermore, because of ERISA's unique standing and remedial provisions, each proposed ERISA Plaintiff Class member seeks plan-wide relief. ERISA §409(a), 29 U.S.C. §1109(a) (liability for breach of fiduciary duty is "to the plan"); ERISA §502(a)(2), 29 U.S.C. §1132(a)(2) (authorizing plan beneficiaries to sue for breach of fiduciary duty under §409(a)); *Musmeci v. Schwegmann Giant Super Mkts., Inc.*, 332 F.3d 339, 352 (5th Cir. 2003). With each proposed ERISA Plaintiff Class member stating the same claim, concerning the same conduct, and seeking the same relief the claims asserted are sufficiently typical for purposes of certification for settlement purposes.

### 4.    Adequacy

The plan-wide nature of the relief sought by the ERISA Plaintiffs unites their interests with those of absent class members and demonstrates that they would be adequate class representatives. *See Gruby v. Brady*, 838 F. Supp. 820, 827 (S.D.N.Y. 1993) ("[A]s any recovery under §502(a)(2), 29 U.S.C. §1132(a)(2), goes to the Fund as a whole, and as Fund participants may bring an action only in a representative capacity on behalf of the entire Fund, the proposed class must include all Fund participants." (citing *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985)); *SmithKline Beecham*, 201 F.R.D. at 396 ("[B]ecause the named plaintiffs are challenging the same unlawful conduct and seeking the same relief as the rest of the class ... the interests of the named plaintiffs are sufficiently aligned with those of the class members to satisfy the first prong of the adequacy of representation requirement."). The ERISA Plaintiffs also demonstrated their knowledge of this litigation through their initial and consolidated complaints.

Further, Settling ERISA Plaintiffs' Counsel have extensive experience in representing plaintiffs in ERISA class action litigation, and in prosecuting class action litigation generally. (Credentials of the Counsel were submitted as exhibits in their Motion to Consolidate Hanover Compressor Company ERISA Cases) *See SmithKline Beecham*, 201 F.R.D. at 396 (finding class counsel adequate based on the plaintiffs' attorneys' "extensive experience litigating class actions and ERISA actions").

Accordingly, the "adequacy" prong is sufficiently satisfied to allow the ERISA Plaintiff Class to be certified for settlement purposes.

### 5.    The ERISA Plaintiff Class Satisfies the Requirements of Rule 23(b)(1)

In light of the substantive law of ERISA, and the other factors discussed herein, the proposed ERISA Plaintiff Class is appropriate for certification as a non-opt-out class under Rule 23(b)(1).

Under Rule 23(b)(1), a class may be certified if:

(1)      prosecution of separate actions by or against individual members of the class would create a risk of

(A)      inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B)      adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests ....

Thus, "Rule 23(b)(1)(A) considers possible prejudice to the defendants, while Fed. R. Civ. P. 23(b)(1)(B) looks to possible prejudice to the putative class members." *Ikon*, 191 F.R.D. at 466.

In considering ERISA breach of fiduciary duty claims, most courts have concluded that subsection (b)(1)(B) provides the most natural and appropriate basis for class certification. *See, e.g.*, *Banyai*, 205 F.R.D. at 165 (granting class certification under subsection (b)(1)(B) and invoking the Advisory Committee Notes).[15]  Indeed, the Advisory Committee supports this view. *See Advisory Comm. Notes to 1966 Amendment of Fed. R. Civ. P. 23(b)(1)(B)* (stating that certification under 23(b)(1)(B) is appropriate in cases charging breach of trust by a fiduciary to a large class of beneficiaries).

The ERISA Plaintiffs' claims are well suited for Rule 23(b)(1) certification by virtue of the substantive law of ERISA.  As one court explained:

Under 29 U.S.C. § 1132(a)(2), participants or beneficiaries of an ERISA plan have standing to sue for appropriate relief under 29 U.S.C. § 1109 (1988), imposing liability for breaches of fiduciary duty.  An action to enforce fiduciary duties is "brought in a representative capacity on behalf of the plan as a whole."

---

[15]      ERISA breach of fiduciary duty cases granting class certification under subsection (b)(1)(B) include: *Koch*, 2001 WL 289972; *SmithKline Beecham*, 201 F.R.D. at 397; *Ikon*, 191 F.R.D. 457; *Bunnion v. Consol. Rail Corp.*, No. Civ. A. 97-4877, 1998 WL 372644 (E.D. Pa. May 14, 1998); *Kane v. United Indep. Union Welfare*, No. 97-1505, 1998 WL 78985 (E.D. Pa. Feb. 24, 1998); *Feret v. Corestates Fin. Corp.*, No. CIV A. 97-6759, 1998 WL 512933 (E.D. Pa. Aug. 18, 1998); *Gruby*, 838 F. Supp. 820; *Specialty Cabinets*, 140 F.R.D. 474.

> *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985). Any relief granted by a court to remedy a breach of fiduciary duty "inures to the benefit of the plan as a whole" rather than to the individual plaintiffs. *Id.* at 140. "Because a plan participant or beneficiary may bring an action to remedy breaches of fiduciary duty only in a representative capacity, such an action affects all participants and beneficiaries, albeit indirectly." *Specialty Cabinets & Fixtures, Inc. v. Am. Equitable Life Ins. Co.,* 140 F.R.D. 474, 478 (S.D. Ga. 1991). Since Counts X and XI are brought by [beneficiaries] in their representative capacity, the Court finds that class certification for these claims is proper under Rule 23(b)(1)(B).

*Kane*, 1998 WL 78985, at *9; *see also Ikon*, 191 F.R.D. at 466 (same). Because of ERISA's distinctive "representative capacity" and remedial provisions, adjudications with respect to individual members of the proposed ERISA Plaintiff Class would be dispositive of the interests of the other members not parties to the adjudications or would substantially impair or impede their ability to protect their interests. Thus, the proposed ERISA Plaintiff Class is an appropriate case for class treatment under Rule 23(b)(1)(B).[17]

---

[17]  While it is unnecessary to consider the other potentially applicable subsections of Rule 23(b), *see, e.g., Koch*, 2001 WL 289972, at *5 n.2; *Gruby*, 838 F. Supp. at 828 n.9.  A finding in the alternative under Rule 23(b)(1)(A) could also be made. *See SmithKline Beecham*, 201 F.R.D. at 397; *Ikon*, 191 F.R.D. at 466; *Bunnion*, 1998 WL 372644, at *13; *Feret*, 1998 WL 512933, at *13-14. If it were deemed appropriate, the Court could make such a finding with respect to the ERISA Plaintiff Class. *See Bunnion*, 1998 WL 372644, at *13; *see also SmithKline Beecham*, 201 F.R.D. at 397 (granting class certification under subsection (b)(1)(A) because "the plaintiffs seek broad declaratory and injunctive relief related to defendants' conduct and the terms of the plan.  If this relief were granted in some actions but denied in others, the conflicting declaratory and injunctive relief could make compliance impossible for defendants"); *Ikon*, 191 F.R.D. at 466 (granting certification under (b)(1)(A) because "[t]here is ... risk of inconsistent dispositions that would prejudice the defendants: contradictory rulings as to whether Ikon had itself acted as a fiduciary, whether the individual defendants had, in this context, acted as fiduciaries, or whether the alleged misrepresentations were material would create difficulties in implementing such decisions"); *Feret*, 1998 WL 512933, at *13 (granting certification under (b)(1)(A), and noting the risk that differing outcomes would make it nearly impossible for the defendants to implement any one result).

- 30 -

## V. THE PROPOSED NOTICES TO THE SECURITIES PLAINTIFF CLASS, TO HANOVER SHAREHOLDERS AND TO THE ERISA PLAINTIFF CLASS ARE PROPER AND SHOULD BE AUTHORIZED

Members of a proffered class must receive the "best notice practicable under the circumstances." Fed. R. Civ. P. 23(c)(2). The notice must "'contain an adequate description of the proceedings written in objective, neutral terms that, insofar as possible, may be understood by the average absentee class member.'" *McNamara*, 214 F.R.D. at 432 (citation omitted). In addition, for the proposed Rule 23(b)(3) Securities Plaintiff Class, the notice must include "'information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class and be bound by the final judgment.'"[19] *Id.* (citation omitted). Similarly, for derivative actions, notice to shareholders must "'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them...'" and provide "shareholders with sufficient information to make a 'rational decision whether they should intervene in the settlement approval procedure.'" *Maher*, 714 F.2d at 451 (citations omitted).

Here, the Stipulation and proposed Orders provide that: (a) each member of the Securities Plaintiff Class who can be identified by reasonable effort will be provided individual notice by mail of the pendency of the Consolidated Securities Action and the proposed Securities Settlement and Proof of Claim; (b) each member of the ERISA Plaintiff Class who can be identified by reasonable effort will be provided individual notice by mail of the pendency of the ERISA Actions and proposed ERISA Settlement; and (c) each Hanover Shareholder who can be identified by reasonable

---

[19] Under the PSLRA, the notice must include: a statement of plaintiff's recovery in the aggregate and on an average per share basis; a statement of potential outcome of the case; and a statement of attorneys' fees or costs sought. *See McNamara*, 214 F.R.D. at 432 (citing 15 U.S.C. §78u-4(a)(7)).

effort will be provided individual notice by mail of the pendency and settlement of the Derivative Actions. The Settling Parties also propose publication of Summary Notices in the *Investor's Business Daily*. The respective Notices and Summary Notices define the Securities Plaintiff Class, the ERISA Plaintiff Class and Hanover Shareholders, advise members of the respective classes and Hanover Shareholders of the essential terms of the Stipulation, set forth the procedures for submitting claims, opting out of the Securities Plaintiff Class, filing objections with respect to the Settlement of each of the Actions, set forth the potential outcome of the litigation, set forth the amount of attorneys' fees and expenses for which plaintiffs' counsel will apply, identify sources of additional information, and provide specifics on the date, time and place of the Settlement Hearing.

Accordingly, the respective Notices and Summary Notices and the attendant notice procedures satisfy the requirements of Rule 23 and due process because they are "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also Miller*, 559 F.2d at 429 (approving notice that "present[ed] a fair recital of the subject matter and of the proposed terms [of settlement] and [gave] the class an opportunity to be heard"); *Maher*, 714 F.2d at 451 (approving notice to shareholders that "'fairly apprise[d] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them'") (citation omitted).

## VI. PROPOSED SCHEDULE OF EVENTS LEADING TO FINAL APPROVAL

The Settling Parties propose the following schedule of events leading to a Settlement Hearing:

Mail Notice to Class Members ("Notice Date"):     5 days after Preliminary Approval

Publish Summary Notice:     7 days after Preliminary Approval

- 32 -

| | |
|---|---|
| Last day for Class Members to opt-out of securities Settlement, object to approval of the Settlement, Plan of Allocation of settlement proceeds in the Securities and ERISA Settlements, or plaintiffs' counsel's application for attorneys' fees and reimbursement of expenses: | 40 days after the Notice Date |
| Hearing on final approval of Stipulation of Settlement, Plan of Allocation of settlement proceeds, and plaintiffs' counsel's application for attorneys' fees and reimbursement of expenses: | 14 days after last day to object to Settlement |
| Last day for Class Members to file Proof of Claim Form: | 90 days from Notice Date |

This schedule is typical of those repeatedly used in the settlement of class actions, and the parties respectfully request that the Court enter an Order utilizing this schedule.

## VII.   CONCLUSION

For all the foregoing reasons, Movants respectfully request that the Court grant their motion and enter the following orders:

1.      The accompanying proposed Preliminary Securities Order (a) certifying the Securities Plaintiff Class for settlement purposes, (b) preliminarily approving the Securities Settlement, and (c) approving the form and manner of notice to the Securities Plaintiff Class.

2.      The accompanying proposed Preliminary ERISA Order (a) certifying the ERISA Plaintiff Class for settlement purposes, (b) preliminarily approving the ERISA Settlement, and (c) approving the form and manner of notice to the ERISA Plaintiff Class.

3.      The accompanying proposed Preliminary Derivative Order (a) preliminarily approving the Derivative Settlement and (b) approving the form and manner of Notice to the Hanover Shareholders.

- 33 -

4.     Setting the date for the Settlement Hearing to determine whether the proposed settlement of the Actions as set forth in the Stipulation, should be finally approved, and whether the Final Order and Judgment approving the Settlement should be entered.

DATED:  October 24, 2003

Respectfully submitted,

CROWLEY DOUGLAS & NORMAN, LLP
TIMOTHY J. CROWLEY
State Bar No. 05170700
RICHARD E. NORMAN
State Bar No. 00788128

_____
TIMOTHY J. CROWLEY

1301 McKinney Street, Suite 3500
Houston, TX  77010-3034
Telephone:  713/651-1771
SCHWARTZ, JUNELL, GREENBERG
   & OATHOUT, LLP
ROGER B. GREENBERG

_____
ROGER B. GREENBERG

Federal I.D. No. 3932
State Bar No. 08390000
Two Houston Center
909 Fannin, Suite 2000
Houston, TX  77010
Telephone:  713/752-0017

**Attorneys in Charge and
Plaintiffs' Co-Liaison Counsel**

- 34 -

**Lead Counsel for Plaintiffs:**

MILBERG WEISS BERSHAD
   HYNES & LERACH LLP
DARREN J. ROBBINS
JEFFREY D. LIGHT
MATTHEW P. MONTGOMERY

_____
    DARREN J. ROBBINS

401 B Street, Suite 1700
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

**Counsel for Plaintiff Harbor Finance Partners**

THE BRUALDI LAW FIRM
RICHARD D. BRUALDI
KEVIN T. O'BRIEN


_____
    RICHARD D. BRUALDI

29 Broadway, Suite 1515
New York, NY 10006
212/952-0602

**Counsel for Plaintiffs Roger Koch,**
**Henry Carranza and William Steves**

REICH & BINSTOCK
PAUL T. WARNER


_____
    PAUL T. WARNER

4265 San Felipe, Suite 1000
Houston, TX  77027
713/622-7271

**Counsel for Plaintiff John B. Hensley, Jr.**

SCHUBERT & REED LLP
ROBERT SCHUBERT


_____
ROBERT SCHUBERT

Two Embarcadero Center
Suite 1660
San Francisco, CA  94111
415/788-4220

**Counsel for Plaintiff Coffelt Family LLC**

EMERSON POYNTER LLP
JOHN G. EMERSON
SCOTT E. POYNTER


_____
JOHN G. EMERSON

1509 Louisiana , Suites C & D
Little Rock, AR  72202-5094
501/907-2555

**Counsel for Plaintiff Henry Duncan Kirkley**

BASKIN LAW FIRM
JAMES BASKIN


_____
JAMES BASKIN

300 W. 6th Street, Suite 1950
Austin, TX  78701
512/381-6300

**Counsel for Plaintiffs Ann
Angeopoulos and Joyce Freeman**

HOEFFNER & BILEK, LLP
THOMAS BILEK


THOMAS BILEK

440 Louisiana, Suite 720
Houston, TX  77002
713/227-7720

- 37 -

**Attorneys for Defendants Hanover**
**Compressor Company:**

SUSMAN GODFREY, LLP


_Thomas W. Paterson_
_____
        THOMAS W. PATERSON

Attorney-In-Charge
State Bar No. 15571500
S.D. Texas Bar No. 07078
1000 Louisiana Street
Suite 5100
Houston, TX  77002-5076
713/653-7815

HUGHES HUBBARD & REED LLP
KEVIN T. ABIKOFF


_Kevin T. Abikoff by permission TWP_
_____
        KEVIN T. ABIKOFF

State Bar No. 24034118
S.D. Texas Bar No. 34731
1775 I Street, N.W.
Washington, D.C.  20006-2401
Telephone:  202/721-4600
202/721-4646 (fax)


C:\DOCUME~1\change\LOCALS~1\Temp\MetaSave\Hanover-Brief.doc

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PIRELLI ARMSTRONG TIRE CORPORATION RETIREE MEDICAL BENEFITS TRUST, et al., On Behalf of Themselves and All Others Similarly Situated, | § § § § § | Civil Action No. H-02-0410 (Consolidated) Hon. Vanessa D. Gilmore |
| Plaintiffs, | § § | CLASS ACTION |
| vs. | § § | |
| HANOVER COMPRESSOR COMPANY, et al. | § § § | |
| Defendants. | § § | |

## STIPULATION AND AGREEMENT OF SETTLEMENT

This Stipulation and Agreement of Settlement dated as of _____, 2003 (this "Stipulation") is made and entered into by and among the Settling Parties, by and through their counsel of record in the Settling Actions. This Stipulation is intended by the Settling Parties to fully, finally and forever resolve, discharge and settle the Released Claims on and subject to the terms and conditions set forth herein. All capitalized terms shall have the meanings given to such terms in Section 1 below.

## RECITALS

WHEREAS, on or after February 4, 2002, putative securities class action lawsuits were filed by the plaintiffs named below on behalf of themselves and all others similarly situated in the United States District Court for the Southern District of Texas (the "Federal Court"), entitled

528824_1


EXHIBIT " _____A_____ "

*Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust, et al. v. Hanover Compressor Co., et al.*, Case No. H-02-0410, *McBride v. Hanover Compressor Co.*, Case No. H02-0431, *Koch v. Hanover Compressor Co.*, Case No. H-02-0441, *Schneider v. Hanover Compressor Co.*, Case No. H-02-0491, *Goldstein v. Hanover Compressor Co.*, Case No. H-02-0526, *Noyes v. Hanover Compressor Co.*, No. H-02-0574, *Rocha v. Hanover Compressor Co.*, Case No. 02-0594, *Peck v. Hanover Compressor Co.*, Case No. H-02-0627, *Mueller v. Hanover Compressor Co.*, Case No. H-02-0652, *Langhoff v. Hanover Compressor Co.*, Case No. H-02-0764, *Fox v. Hanover Compressor Co.*, Case No. H-02-0815, *Rosen v. Goldberg*, Case No. H-02-0959, *Detectives Endowment v. Hanover Compressor Co.*, Case No. H-02-1016, *Montag v. Hanover Compressor Co.*, Case No. H-02-1030 and *Anderson v. Hanover Compressor Co.*, Case No. H-02-2306 (collectively, the "Securities Actions" were filed by the "Securities Plaintiff Class");

WHEREAS, by Order dated March 28, 2002, the Federal Court consolidated the Securities Actions under the caption *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust, et al. v. Hanover Compressor Co., et al.* (the "Consolidated Securities Action");

WHEREAS, by Order dated January 6, 2003, the Federal Court appointed Pirelli Armstrong Tire, Retiree Medical Benefits Trust, Plumbers & Steamfitters, Local 137 Pension Fund, O. Bryant Lewis, 720 Capital Management, LLC and Specialists DPM as lead plaintiffs (the "Lead Plaintiffs") and appointed Milberg Weiss Bershad Hynes & Lerach LLP ("Milberg Weiss") as lead counsel (the "Lead Counsel") in the Consolidated Securities Action;

WHEREAS, on and after April 10, 2002, the following derivative actions were filed in or removed to the Federal Court:  *Koch v. O'Connor, et al.*, Case No. H-02-1332, *Carranza v. O'Connor, et al.*, Case No. H-02-1430, *Steves v. O'Connor, et al.*, Case No. H-02-1527, *Hensley v. McGann, et al.*, Case No. H-02-2994, *Harbor Finance Partners v. McGhan, et al.*, Case No.

528824_1                                            2

H-02-0761, (the "Federal Derivative Actions") and on February 15, 2002, an additional

derivative action was filed in the Delaware Chancery Court: *Coffelt Family, LLC v. O'Connor*

(the "State Derivative Action"), *et al.*, No. CA 19410 (collectively, the "Derivative Actions" and

the plaintiffs in the Derivative Actions are the "Settling Derivative Plaintiffs");

WHEREAS, on August 19, 2002 and August 26, 2002, the Federal Derivative Actions

were consolidated into the *Harbor Finance Partners* action (the "Consolidated Derivative

Action");

WHEREAS, on January 23, 2003, Lead Plaintiff entered into tolling agreements with

each of GKH Investments, L.P., GKH Partners, L.P., Joe C. Bradford, Curtis Bedrich, Goldman,

Sachs & Co., Michael A. O'Connor, William S. Goldberg, Charles D. Erwin, Ted Collins, Jr.,

Robert R. Furgason, Rene J. Huck, Melvyn N. Klein, Alvin V. Shoemaker and Victor Grijalva,

pursuant to which the statute of limitations was tolled with respect to certain claims (the "Tolling

Agreements");

WHEREAS, on or after March 26, 2003, putative class actions alleging violations of the

Employee Retirement Income Security Act of 1974, as amended ("ERISA") were filed in the

Federal Court by or on behalf of the plaintiffs on behalf of themselves and all others similarly

situated (the "ERISA Plaintiffs"): *Kirkley v. Hanover Co., et al.*, Case No. H-03-1155,

*Angleopoulos v. Hanover Compressor Co., et al.*, Case No. H-03-1064 and *Freeman v. Hanover*

*Compressor Co., et al.*, Case No. H-3-1095 (collectively, the "ERISA Actions");

WHEREAS, certain of the Settling Parties, through their respective counsel, entered into

a memorandum of understanding, dated May 12, 2003;

WHEREAS, certain Settling Parties, including the plaintiffs in the *Angleopoulos* and

*Freeman* actions, who were not parties to the memorandum of understanding that was entered

into on May 12, 2003, through their counsel, entered into a first amended memorandum of understanding dated July 18, 2003;

WHEREAS, Michael O'Connor passed away on July 23, 2003 and Karen L. O'Connor has been appointed as the Independent Executrix of his Estate in Case No. 41710-2 in the County Court at Law No. 2 of Nueces County, Texas;

WHEREAS, by Order dated August 1, 2003, the Federal Court consolidated the ERISA Actions into the Consolidated Securities Action for purposes of settlement;

WHEREAS, the Settling Parties, including the plaintiff in the *Harbor Finance Partners* action (the only Settling Plaintiff who did not enter into the July 18, 2003 first amended memorandum of understanding) entered into a Second Amended and Restated Memorandum of Understanding, dated October 13, 2003 (the "MOU");

WHEREAS, on September 5, 2003, Lead Plaintiffs, on behalf of themselves and all others similarly situated, filed an Amended Complaint against PwC, Hanover, Michael McGhan, William S. Goldberg and Michael A. O'Connor (the "Consolidated Federal Securities Complaint");

WHEREAS, by Order dated October 2, 2003 the Federal Court consolidated the Consolidated Derivative Actions into the Consolidated Securities Action;

WHEREAS, on October 9, 2003 the ERISA Plaintiffs filed an Amended Consolidated Complaint for Breach of Fiduciary Duty and Violation of ERISA Disclosure Requirements in the Federal Court;

WHEREAS, Settling Plaintiffs, through their respective counsel, have conducted and completed extensive research, discovery and investigation during the prosecution of the Settling Actions, including without limitation:  (1) inspection and analysis of tens of thousands of pages

528824_1                                4

of documents produced by Settling Defendants; (2) review of Hanover's public filings, press releases and other public statements; (3) interviews of numerous Hanover officers and employees; and (4) consultation with accounting and damages consultants;

WHEREAS, Settling Parties have engaged in substantial arm's length negotiations in an effort to resolve all claims that have been or could be asserted in the Settling Actions, including conducting numerous meetings and telephone conferences where the terms of the agreements detailed herein were extensively debated and negotiated;

WHEREAS, Settling Plaintiffs, through their respective counsel, have carefully considered and evaluated, *inter alia,* the relevant legal authorities and evidence to support the claims asserted against the Settling Defendants, the likelihood of prevailing on those claims, the Settling Defendants' respective abilities to pay any judgment obtained in light of their current financial condition, and the likely appeals and subsequent proceedings necessary if the Settling Plaintiffs did prevail against the Settling Defendants, and have concluded that the Settlement set forth herein is in the best interests of the Settling Plaintiffs;

WHEREAS, the Settling Defendants have denied and continue to deny that they have liability as a result of any and all allegations contained in the Settling Actions, and are entering into the Settlement in order to eliminate the burden, distractions, expense and uncertainty of further litigation;

WHEREAS, the Settling Parties and their counsel believe that the terms and conditions contained in this Stipulation are fair, reasonable and adequate; and

WHEREAS, the Settling Parties and their counsel agree that these Recitals are an integral part of this Stipulation and constitute binding representations by the applicable Settling Parties and their counsel.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED** by and

among the Settling Parties that, subject to Federal Court approval and the satisfaction of the

conditions of Settlement as set forth herein, each of the Released Claims shall be finally and

fully compromised, settled and released, and each of the Settling Actions shall be dismissed with

prejudice, as to all Settling Parties, upon and subject to the terms and conditions of this

Stipulation, as follows:

1.    DEFINITIONS

As used in the Stipulation the following terms have the meanings specified below:

1.1.    "Actions" means the Consolidated Securities Action, the Derivative

Actions and the ERISA Actions.

1.2.    "Authorized Claimants" means the Authorized ERISA Claimants and the

Authorized Securities Claimants.

1.3.    "Authorized ERISA Claimant" means any member of the ERISA Plaintiff

Class, or such Class Member's successor in interest, who files or on whose behalf is filed

a timely, valid Proof of Claim and whose claim for recovery is allowed pursuant to the

terms of the ERISA Settlement.

1.4.    "Authorized Securities Claimant" means any member of the Securities

Plaintiff Class who files or on whose behalf is filed a timely, valid Proof of Claim and

whose claim for recovery is allowed pursuant to the terms of the Securities Settlement.

1.5.    "Change of Control" means the (i) sale, lease or exchange of all or

substantially all of Hanover's assets to any Person (other than a Person wholly owned,

directly or indirectly, by Hanover), (ii) consummation of a merger, consolidation,

recapitalization, reorganization or other similar transaction involving Hanover, other than

one in which more than 50% of the total voting power of the surviving entity outstanding immediately after such transaction is beneficially owned by the holders of the outstanding voting securities of Hanover immediately prior to such transaction, with the voting power of each such continuing holder relative to all such continuing holders not substantially altered in the transaction, (iii) dissolution or liquidation of Hanover, or (iv) the acquisition or gain by any Person, including a "group" as contemplated by Section 13(d)(3) of the Exchange Act, of ownership or control (including, without limitation, power to vote) of more than 50% of the outstanding shares of Hanover's voting stock (based upon voting power).

1.6.    "Claims Administrator" means the firm of Gilardi & Company.

1.7.    "Class Period" means the period beginning on May 4, 1999 and ending on December 23, 2002 (inclusive).

1.8.    "Code" means the Internal Revenue Code of 1986, as amended.

1.9.    "Consolidated Derivative Action" has the meaning assigned to such term in the Recitals hereof.

1.10.    "Consolidated Federal Securities Complaint" has the meaning assigned to such term in the Recitals hereof.

1.11.    "Consolidated Securities Action" has the meaning assigned to such term in the Recitals hereof.

1.12.    "Derivative Actions" has the meaning assigned to such term in the Recitals hereof.

1.13.    "Derivative Releases" has the meaning assigned to such term in Section 3.9.

1.14.   "Derivative Settlement" means the settlement of the Derivative Actions on and subject to the terms and conditions set forth in this Stipulation.

1.15.   "Derivative Settlement Fund" means the payments from the Securities Settlement Cash Fund and the Securities Settlement Stock Fund that are contemplated by Section 3.6.

1.16.   "Effective Date" means, with respect to each Settling Action, the date of completion of the following: (i) entry of an Order and Final Judgment, which approves in all material respects (x) the dismissal of the claims that have been or could be asserted in such Settling Action and (y) the releases and bar orders provided for in the Stipulation with respect to such Settling Action, and (ii) either (x) expiration of the time to appeal or otherwise seek review of the Order and Final Judgment which approves, in all material respects, the settlement of such Settling Action as provided herein, without any appeal having been taken or review sought, or (y) if an appeal is taken or review sought, the expiration of five (5) days after an appeal or review shall have been dismissed or finally determined by the highest court before which appeal or review is sought and which affirms the material terms of such appealed settlement and/or an Order and Final Judgment and is not subject to further judicial review: provided, however, that any award of attorneys' fees or costs shall not be considered a material provision of the Order and Final Judgment and any appeal of any such award shall not delay the Effective Date and any modification as a result of such appeal shall not be considered a modification of a material term.

1.17.   "ERISA" has the meaning assigned to such term in the Recitals hereof.

1.18.   "ERISA Actions" has the meaning assigned to such term in the Recitals hereof.

1.19.   "ERISA Plaintiff Class" means each and every Person who was a participant in the Plan and who, at any time during the Class Period, purchased and/or held Hanover Securities in their accounts in the Plan, and all Persons who hold or held Securities in the Plan as beneficiaries of any such participants.

1.20.   "ERISA Plaintiffs" has the meaning assigned to such term in the Recitals hereof.

1.21.   "ERISA Plan of Allocation" means the terms and procedures for allocating the ERISA Settlement Fund among, and distributing it to Authorized ERISA Claimants as set forth in the Notice, or as otherwise approved by the Federal Court.

1.22.   "ERISA Releases" has the meaning assigned to such term in Section 4.9.

1.23.   "ERISA Settlement" means the settlement of the ERISA Actions on and subject to the terms and conditions set forth in this Stipulation.

1.24.   "ERISA Settlement Fund" has the meaning assigned to such term in Section 4.2.

1.25.   "Escrow Agent" means Milberg Weiss, in its capacity as escrow agent with respect to the Settlement Fund.

1.26.   "Escrow Fund" means the escrow funds on deposit with Milberg Weiss, as escrow agent pursuant to the Escrow Agreement dated May 29, 2003, between Milberg Weiss, as escrow agent, and Hanover.

1.27.   "Exchange Act" means the Securities Exchange Act of 1934, as amended.

1.28.   "Federal Court" has the meaning assigned to such term in the Recitals hereof.

1.29.   "Federal Derivative Actions" has the meaning assigned to such term in the Recitals hereof.

1.30.   "FED. R. CIV. P. 23" means Federal Rule of Civil Procedure 23.

1.31.   "Fee and Expense Award" means the fees and expenses awarded to Lead Counsel and Settling ERISA Plaintiffs' Counsel and, to the extent approved by the Federal Court, the fee agreed to be paid to the Settling Derivative Plaintiffs' Counsel as set forth in sections 3.6 and 3.7 hereof.

1.32.   "Final" means no longer subject to further appeal or review, whether by exhaustion of any possible appeal, lapse of time or otherwise.

1.33.   "GKH" means GKH Partners, L.P., GKH Investments, L.P., GKH Private Limited, HGW Associates, L.P., DWL Lumber Corp. and JAKK Holding Corp.

1.34.   "GKH Settlement Shares" means two million five hundred thousand (2,500,000) shares of Hanover Common Stock to be paid to the Settlement Fund by GKH Partners, L.P. and GKH Investments, L.P., as provided in Sections 2.2 and 2.7.

1.35.   "Governance Term Sheet" means the Corporate Governance Settlement Term Sheet, attached hereto as Exhibit A.

1.36.   "Hanover" means Hanover Compressor Company, a Delaware corporation.

1.37.   "Hanover Common Stock" means the common stock, par value $.001 per share, of Hanover.

528824_1                                          10

1.38. "Hanover Securities" means Hanover Common Stock and any other Hanover equity or debt security or option related to the forgoing.

1.39. "Hanover Settlement Shares" means two million five hundred thousand (2,500,000) shares of Hanover Common Stock, which may be newly issued shares, other than and in addition to the GKH Settlement Shares, to be paid by Hanover to the Settlement Fund as provided in Section 2.7.

1.40. "Hanover Shareholders" means all record owners of Hanover Common Stock as of May 12, 2003.

1.41. "Lead Counsel" has the meaning assigned to such term in the Recitals hereof.

1.42. "Lead Plaintiffs" has the meaning assigned to such term in the Recitals hereof.

1.43. "Letter Agreement" means that certain letter agreement, dated May 12, 2003, by and between Hanover and GKH and certain of its Related Persons, which sets forth certain agreements relating to the settlement of the Actions.

1.44. "Michael A. O'Connor" means Michael A. O'Connor and his heirs, assigns, legatees, and devisees, the Estate of Michael A. O'Connor, Deceased, and Karen L. O'Connor as the Independent Executrix of the Estate of Michael A. O'Connor, Deceased.

1.45. "Milberg Weiss" has the meaning assigned to such term in the Recitals hereof.

1.46. "MOU" has the meaning assigned to such term in the Recitals hereof.

1.47.   "Non-Settled Action" has the meaning assigned to such term in Section 10.3.

1.48.   "Note" means the unsecured promissory note, in substantially the form attached hereto as Exhibit B, to be contributed to the Settlement Fund by Hanover pursuant to Section 2.7.

1.49.   "Notice" means any or all of the notices concerning the Settlement Hearings, in substantially the forms of the individual notices attached hereto as Exhibits C, D, and E and the summary notices attached hereto as Exhibits F, G and H.

1.50.   "Order and Final Judgment" means an order and final judgment in substantially the forms attached hereto as Exhibits I, J, and K.

1.51.   "Person" means a natural person, individual, corporation, partnership, limited partnership, limited liability partnership, limited liability company, association, joint venture, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, any business or legal entity, and any spouse, heir, legatee, executor, administrator, predecessor, successor, representative or assign of any of the foregoing.

1.52.   "Plan" means the Hanover Companies Retirement Savings Plan.

1.53.   "Preliminary Order" has the meaning assigned to such term in Section 8.1, in substantially the forms attached hereto as Exhibits L, M and N.

1.54.   "Proof of Claim" means the Proof of Claim and Substitute Form W-9, in substantially the form attached hereto as Exhibit O, which will be mailed to the Securities Plaintiff Class together with the Notice.

1.55.   "PwC" means PricewaterhouseCoopers LLP.

1.56.    "Related Persons" means, with respect to any Person, such Person's present and former parent entities, subsidiaries (direct or indirect) and affiliates, and each of their respective present and former shareholders, general partners, limited partners, affiliates, divisions, joint ventures, partnerships, officers, directors, employees, agents, representatives, attorneys, insurers, excess insurers, experts, advisors, investment advisors, underwriters, fiduciaries, trustees, auditors, accountants, representatives, spouses and immediate family members, and the predecessors, heirs, legatees, successors, assigns, agents, executors, devisees, personal representatives, attorneys, advisors and administrators of any of them, and the predecessors, successors, and assigns of each of the foregoing, and any other Person in which any such Person has or had a controlling interest or which is or was related to or affiliated with such Person, and any trust of which such Person is the settlor or which is for the benefit of such Person or member(s) of his or her family; provided, however, that PwC, its partners and employees are excluded from this definition and shall not be deemed to be a Related Person of any Settling Party.

1.57.    "Released Claims" means the Released Securities Claims, the Released Derivative Claims and the Released ERISA Claims.

1.58.    "Released Derivative Claims" has the meaning assigned to such term in Section 3.9.

1.59.    "Released Derivative Parties" means the Settling Derivative Defendants, the Plan, GKH, and Schlumberger, and each of their respective Related Persons.

1.60.    "Released ERISA Claims" has the meaning assigned to such term in Section 4.9.

1.61.  "Released ERISA Parties" means the Settling ERISA Defendants, Karen

L. O'Connor, as the Independent Executrix of the Estate of Michael A. O'Connor,

Deceased, GKH, and Schlumberger, and each of their respective Related Persons, the

Plan, and any Person who was or could be deemed a fiduciary of the Plan during the

Class Period.

1.62.  "Released Securities Claims" has the meaning assigned to such term in

Section 2.13.

1.63.  "Released Securities Parties" means the Settling Securities Defendants,

the Plan, Karen L. O'Connor, as the Independent Executrix of the Estate of Michael A.

O'Connor, Deceased, Schlumberger, and GKH, and each of their respective Related

Persons.

1.64.  "Schlumberger" means Schlumberger Technology Corporation,

Schlumberger Oilfield Holdings Limited, and Schlumberger Surenco S.A.

1.65.  "Securities Act" means the Securities Act of 1933, as amended.

1.66.  "Securities Actions" has the meaning assigned to such term in the Recitals

hereof.

1.67.  "Securities Plaintiff Class" means all Persons who purchased Hanover

Securities during the Class Period (including participants in the Plan who, during the

Class Period, purchased Hanover Securities in their accounts in the Plan or acquired

Hanover Securities through employer matching contributions) other than (a) those

individuals who were officers and/or directors of Hanover during the Class Period and (i)

their affiliates and (ii) members of their immediate families, (b) officers and/or directors

of Hanover at the Effective Date and (i) their affiliates and (ii) members of their

immediate families, (c) the Settling Securities Defendants and (i) their affiliates and (ii) members of their immediate families, (d) Schlumberger and its subsidiaries, (e) GKH and its subsidiaries and affiliates, and (f) the Plan.

1.68.   "Securities Plan of Allocation" means the terms and procedures for allocating the Settlement Fund among, and distributing it to, Authorized Securities Claimants as set forth in the Notice, or such other Plan of Allocation as the Federal Court shall approve.

1.69.   "Securities Releases" has the meaning assigned to such term in Section 2.13.

1.70.   "Securities Settlement" means the settlement of the Consolidated Securities Action on and subject to the terms and conditions set forth in this Stipulation.

1.71.   "Securities Settlement Cash Fund" has the meaning assigned to such term in Section 2.7.

1.72.   "Securities Settlement Fund" means the Securities Settlement Cash Fund, the Securities Settlement Stock Fund, and the Securities Settlement Note Fund together with any interest and earnings thereon, after deducting the Derivative Settlement Fund and the ERISA Settlement Fund.

1.73.   "Securities Settlement Note Fund" has the meaning assigned to such term in Section 2.7.

1.74.   "Securities Settlement Stock Fund" has the meaning assigned to such term in Section 2.7.

528824_1                                      15

1.75.   "Settlement" means the consummation of the events and transactions that will fully effectuate the Securities Settlement, the ERISA Settlement, and the Derivative Settlement.

1.76.   "Settlement Fund" means the cash and other property in the Securities Settlement Fund, the ERISA Settlement Fund and the Derivative Settlement Fund.

1.77.   "Settlement Hearing" means the hearing or hearings at which the Federal Court will review the adequacy, fairness, and reasonableness of the settlement.

1.78.   "Settlement Shares" means the GKH Settlement Shares and the Hanover Settlement Shares.

1.79.   "Settling Action" means each of the Consolidated Securities Action, the Derivative Actions and the ERISA Actions.

1.80.   "Settling Defendants" means the Settling Securities Defendants, the Settling Derivative Defendants and the Settling ERISA Defendants.

1.81.   "Settling Defendants' Counsel" means the Settling Derivative Defendants' Counsel, Settling ERISA Defendants' Counsel and the Settling Securities Defendants' Counsel.

1.82.   "Settling Derivative Defendants" means Michael A. O'Connor, William S. Goldberg, Melvyn N. Klein, Michael J. McGhan, Ted Collins, Jr., Robert R. Furgason, Rene J. Huck, Alvin V. Shoemaker, Victor E. Grijalva, Gordon T. Hall, I. Jon Brumley, Charles D. Erwin, and Hanover.

1.83.   "Settling Derivative Defendants' Counsel" means Katten, Muchin, Zavis & Rosenman, Dechert LLP, Beck, Redden & Secrest, Smyser, Kaplan & Veselka, LLP,

Wright & Brown, LLP, Orgain Bell & Tucker, LLP, Skadden, Arps, Slate, Meagher & Flom, LLP, and Hughes Hubbard & Reed LLP.

     1.84.   "Settling Derivative Parties" means the Derivative Plaintiffs and the Settling Derivative Defendants.

     1.85.   "Settling Derivative Plaintiffs" has the meaning assigned to such term in the Recitals hereof.

     1.86.   "Settling Derivative Plaintiffs' Counsel" means Scott & Scott, LLC, Reich & Binstock, Maricic & Goldstein, LLP, Robbins, Umeda & Fink, LLP, Schubert & Reed LLP, Emerson Poynter LLP, The Brualdi Law Firm, and Joseph A. McDermott, III.

     1.87.   "Settling ERISA Defendants" means Hanover, Michael J. McGhan, William S. Goldberg, and Michael A. O'Connor.

     1.88.   "Settling ERISA Defendants' Counsel" means Beck Redden & Secrest, Wright & Brown, LLP, Orgain Bell & Tucker, LLP, Katten, Muchin, Zavis, & Rosenman, and Hughes Hubbard & Reed LLP.

     1.89.   "Settling ERISA Parties" means the Settling ERISA Plaintiff Class and the Settling ERISA Defendants.

     1.90.   "Settling ERISA Plaintiff Class" means each and every member of the ERISA Plaintiff Class.

     1.91.   "Settling ERISA Plaintiffs' Counsel" means the Baskin Law Firm, Hoeffner & Bilek, L.L.P., Schiffrin & Barroway LLP, and Brodsky & Smith, LLC.

     1.92.   "Settling Parties" means the Settling Securities Parties, the Settling Derivative Parties and the Settling ERISA Parties.

1.93.  "Settling Plaintiffs" means the members of the Settling Securities Plaintiff Class, the Settling Derivative Plaintiffs and the members of the Settling ERISA Plaintiff Class.

1.94.  "Settling Plaintiffs' Counsel" means Lead Counsel, Settling Derivative Plaintiffs' Counsel and Settling ERISA Plaintiffs' Counsel.

1.95.  "Settling Securities Defendants" means Hanover, Michael J. McGhan, William S. Goldberg, Michael A. O'Connor, Charles D. Erwin and GKH.

1.96.  "Settling Securities Defendants' Counsel" means Hughes Hubbard & Reed LLP, Katten Muchin Zavis & Rosenman, Dechert LLP, Beck Redden & Secrest, Paul Weiss Rifkind, Wharton & Garrison LLP, and Wright & Brown, LLP, Orgain Bell & Tucker, LLP.

1.97.  "Settling Securities Parties" means the Settling Securities Plaintiff Class and the Settling Securities Defendants.

1.98.  "Settling Securities Plaintiff Class" or "Settling Securities Plaintiffs" means each and every member of the Securities Plaintiff Class other than those Persons who timely and validly exclude themselves from participating in the Securities Settlement.

1.99.  "State Derivative Action" has the meaning assigned to such term in the Recitals hereof.

1.100.  "Stipulation" means this Stipulation and Agreement of Settlement.

1.101.  "Supplemental Securities Agreement" means that certain confidential Supplemental Securities Agreement, provided for in Section 2.15,, by and among the

528824_1                                    18

Settling Securities Parties, providing certain additional terms upon which Hanover may terminate this Stipulation.

1.102. "Taxes" has the meaning assigned to such term in Section 7.3.

1.103. "Tax Expenses" has the meaning assigned to such term in Section 7.3

1.104. "Tolling Agreement" has the meaning assigned to such term in the Recitals hereof.

1.105. "Transfer Agent" means the firm of Mellon Shareholder Services.

1.106. "Unknown Claims" means, with respect to a Settling Party, any and all claims which such Settling Party does not know or suspect to exist in his, her or its favor at the time such Settling Party releases such claims which, if known by him, her or it, might or would have affected his, her or its decision not to object to such release or not to exclude himself, herself or itself from becoming a Class Member.

2.   SETTLEMENT OF CONSOLIDATED SECURITIES ACTION

2.1.   Settling Securities Defendants' Denial of Liability.  The Settling Securities Defendants have denied, and continue to deny, that they have any liability as a result of any and all allegations that have been or could be made in the Consolidated Securities Action.  The Settling Securities Defendants are entering into the Securities Settlement in order to eliminate the burden, distraction, expense and uncertainty of further litigation.

2.2.   GKH's Contribution and Settlement of Any and All Remaining Claims. GKH has entered into the Securities Settlement and GKH Partners, L.P. and GKH Investments, L.P., have agreed to pay two million five hundred  thousand (2,500,000) shares of Hanover Common Stock to settle all potential liability it might have in connection with the Consolidated Securities Action.

528824_1                                    19

2.3.    Corporate Governance.  Hanover will implement the corporate governance enhancements, which were the subject of substantial negotiation by and among the Settling Parties and the Settling Parties' Counsel, in the time periods and in the manner contemplated by the Governance Term Sheet.

2.4.    Payment to Authorized Securities Claimants.  The Securities Settlement Fund shall be distributed by or at the direction of the Claims Administrator to the Authorized Securities Claimants in the Consolidated Securities Action in accordance with the Securities Plan of Allocation.

2.5.    Securities Notice. The Claims Administrator, appointed and subject to the supervision and direction of the Federal Court, shall be responsible for providing individual notice to the Securities Plaintiff Class, in substantially the form as attached hereto as Exhibit C, providing for an opt-out time period of no less than forty (40) days from the date the Notice is mailed, and as otherwise directed by the Federal Court, as well as any other required or appropriate notice to be made by publication or otherwise.

2.6.    Reliance Upon Own Knowledge.  Lead Plaintiffs expressly represent and warrant that, in entering into the Securities Settlement, they relied upon their own knowledge and investigation (including the knowledge of and investigation performed by Lead Counsel), and not upon any promise, representation, warranty or other statement made by or on behalf of any of the Settling Securities Defendants or their Related Persons not expressly contained in this Stipulation.

2.7.    Securities Settlement Fund.  The following consideration will be or has been paid to the Securities Settlement Fund in connection with the Securities Settlement:

528824_1

(a)    Cash.  Hanover has contributed twenty-nine million five hundred thousand dollars ($29,500,000) into the Escrow Fund which, with interest and earnings thereon, and such other amounts as are contributed to the Securities Settlement Cash Fund pursuant to the terms of this subsection (a) shall constitute the "Securities Settlement Cash Fund" as of the date hereof and shall be held by the Escrow Agent pursuant to the terms of this Stipulation.  Hanover shall make an additional deposit of cash into the Securities Settlement Cash Fund in an amount equal to three million dollars ($3,000,000) within five (5) business days after a Change of Control, but only if either the Change of Control or the shareholder approval of such Change of Control occurs prior to the end of the twelve (12) months following the Order and Final Judgment approving the Securities Settlement.

(b)    Settlement Shares.  Within (i) five (5) business days after the Effective Date, Hanover shall deliver to the Escrow Agent the Hanover Settlement Shares and, (ii) thirty (30) business days after the Effective Date, GKH Partners, L.P. and GKH Investments, L.P., shall deliver to the Escrow Agent the GKH Settlement Shares (collectively, the "Securities Settlement Stock Fund"). The Settlement Shares shall be registered under the Securities Act or exempt from registration under the Securities Act.  All costs, including those of the Transfer Agent, incurred in issuing and distributing the Settlement Shares to the Authorized Securities Claimants pursuant hereto shall be borne by Hanover.  The total number of Settlement Shares to be contributed into the Securities Settlement Stock Fund will be adjusted by Hanover's Board of Directors in its good faith

judgment to reflect any changes to Hanover Common Stock due to stock splits, stock dividends or reverse stock splits occurring after May 12, 2003 and prior to the date of delivery to the Escrow Agent.

(c)    <u>Note.</u>  Within thirty (30) business days after the Effective Date, Hanover shall deliver the Note to the Escrow Agent.  Such note and all proceeds therefrom shall constitute the "Securities Settlement Note Fund."

2.8.    <u>Cost of Notice.</u>  Lead Counsel may withdraw an amount of cash up to one hundred thousand dollars ($100,000) from the Securities Settlement Cash Fund to pay actual costs incurred in connection with providing the Notice required by Section 2.5.

2.9.    <u>Procedure with Respect to the Settlement Shares.</u>

(a)    <u>Distribution to Lead Counsel.</u>  No earlier than five (5) business days after the Effective Date, the Escrow Agent, if requested by Lead Counsel, shall take such actions as are necessary and appropriate to ensure the issuance by Hanover of share certificates representing the Hanover Settlement Shares to be delivered to plaintiffs' counsel as directed by the Fee and Expense Award entered as part of the Securities Settlement.

(b)    <u>Distribution to Authorized Securities Claimants.</u>  Upon notice from the Claims Administrator that the Claims Administrator's process has been complete, the Escrow Agent shall tender to Hanover the certificates evidencing the remaining Hanover Settlement Shares and the GKH Settlement Shares (with any necessary endorsements) and request that Hanover (or its designee) issue share certificates as directed by the Claims Administrator and consistent with this Stipulation and orders of the Federal Court.

528824_1

22

(c)    <u>Fractional Shares.</u>  The Claims Administrator shall be directed that no fractional Settlement Shares will be distributed or allocated to or on behalf of any Person.  In addition, the Settlement Fund may liquidate Settlement Shares to pay Taxes incurred by the Settlement Fund.

2.10.    <u>Rights With Respect to the Settlement Shares.</u>  Ten (10) days before the date of the Settlement Hearing for the Securities Settlement, Hanover shall provide Lead Counsel with (a) the written opinion of outside counsel that the Hanover Settlement Shares, when issued in accordance with this Stipulation, will be validly issued, fully paid and non-assessable and (b) either (i) the written opinion of outside counsel or (ii) a no-action letter from the Securities and Exchange Commission, addressed to either Hughes Hubbard & Reed LLP or Hanover, substantially to the effect that (A) the Hanover Settlement Shares will be issued in compliance with the registration requirements of Section 5 of the Securities Act or will be issued in reliance upon an exemption therefrom and (B) the Hanover Settlement Shares will not be deemed to be "restricted securities" within the meaning of Rule 144(a)(3) promulgated under the Securities Act (except that affiliates of Hanover, before or after the Effective Date, may be required to sell such shares in accordance with Rule 144 promulgated under the Securities Act).

2.11.    <u>Attorneys' Fees.</u>  Lead Counsel may apply to the Federal Court for an award of attorneys' fees and reimbursement of all expenses incurred on behalf of the Securities Plaintiff Class.  Such fees and expenses, and interest thereon, shall be payable solely out of the Securities Settlement Fund and shall be deducted therefrom prior to the distribution thereof to the Settling Securities Plaintiff Class.  Following entry of any order

528824_1                                              23

by the Federal Court approving any fees and expenses to Lead Counsel, Lead Counsel may withdraw from the Securities Settlement Fund the fees and expenses so awarded; provided, however, that (a) prior to the Effective Date, such withdrawal must be cash only from the Securities Settlement Cash Fund and, (b) in the event that the order approving the fees and expenses so awarded is reversed or modified on appeal, Lead Counsel shall, within five (5) business days of the date which the fees and expenses award is modified or reversed, refund to the Securities Settlement Fund the fees and expenses previously distributed in full or in any amount consistent with such reversal or modification, plus interest thereon at the rate earned on the Securities Settlement Cash Fund through the date of such refund.

2.12.   Conditions.  The Securities Settlement shall terminate and be of no further force or effect if any of the conditions in Section 5.1 and 5.3 or any of the conditions set forth below are not satisfied or, with respect to the conditions in Section 2.12(b), (c), and (d), waived by Hanover:

(a)   the funding of the Securities Settlement Fund as provided above;

(b)   Hanover's failure to exercise its termination rights, if any, under the Supplemental Securities Settlement Agreement;

(c)   preliminary approval by the Federal Court of the Settlement; and

(d)   the Order and Final Judgment entered by the Federal Court, approving the Securities Settlement and providing for the Securities Releases and the bar order provided for in Section 2.14, becoming Final.

2.13.   Securities Releases.  Upon the Effective Date, the Settling Securities Plaintiff Class, and each of their respective successors, predecessors, assigns, attorneys