(including Lead Counsel), heirs, representatives, administrators, executors, devisees, legatees, and estates, release and forever discharge any and all claims, rights and causes of action, direct and derivative, whether based on federal, state, local, statutory or common law or any other law, rule or regulation, including, without limitation, Unknown Claims, claims under ERISA and claims under federal and state securities laws, that have been, could have been, or in the future might be or could be asserted in any form and in any forum against any of the Released Securities Parties that exist, could have existed, or may arise in connection with or that relate to both (i) the purchase or sale or holding of any Hanover Securities and (ii) any of the transactions (including the registration of securities and any failure to deliver prospectuses) matters or occurrences, or representations or omissions involved, set forth, referred to, or which relate in any way to the facts or allegations contained in or which could have been contained in the Consolidated Securities Action (including all such claims which arise under state or federal securities laws and accrued or are based on acts or omissions occurring during or prior to the end of the Class Period) (the "Released Securities Claims").

Upon the Effective Date, the Settling Securities Defendants and each of their respective successors, predecessors, assigns, attorneys (including Settling Securities Defendants' Counsel), heirs, representatives, legatees, administrators, devisees, executors and estates release and forever discharge any and all claims, rights and causes of action, whether based on federal, state, local, statutory or common law or any other law, rule or regulation, and whether known or unknown, that have been, could have been, or in the future might be asserted in any form or forum against any member of the Settling Securities Plaintiff Class or Lead Counsel that exist, could have existed, or may arise in

connection with or that relate to the institution, prosecution or settlement of any and all claims asserted in the Consolidated Securities Action, including, but not limited to, any action for costs or attorneys' fees.

The releases contained in this Section (the "Securities Releases") shall apply to each and every member of the Settling Securities Plaintiff Class and their counsel, including Lead Counsel, each and every Released Securities Party and each and every Settling Securities Defendants' Counsel, and the respective successors and assigns of any of the foregoing, whether directly or indirectly, representatively, derivatively or in any other capacity. The Securities Releases shall not apply to and are not intended to release any claims of the members of the Settling Securities Plaintiff Class against PwC or its partners or employees, including the claims asserted in the Consolidated Federal Securities Complaint.

The Securities Releases also apply to Unknown Claims, and the Settling Securities Parties, Settling Securities Defendants' Counsel and Lead Counsel agree to waive the benefits of §1542 of the California Civil Code (and the benefits of any other law (including principles of common law) of any state or territory or other jurisdiction of the United States or of any jurisdiction outside of the United States that is similar, comparable or equivalent to §1542 of the California Civil Code), which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

Each of the Settling Securities Parties, Lead Counsel and Settling Securities Defendants' Counsel acknowledges that the foregoing waiver was separately bargained for and is a material term of the Securities Settlement.

2.14.   <u>Securities Bar Order.</u>  The Order and Final Judgment shall include a bar order permanently and forever barring and enjoining all Persons, specifically including but not limited to PwC, other than those Persons that timely and properly exclude themselves from the Settling Securities Plaintiff Class, from filing, commencing, instituting, prosecuting or maintaining, either directly, indirectly, representatively or in any other capacity, any claim, counterclaim, cross-claim, third-party claim or other action against any of the Released Securities Parties arising out of, based upon or relating to the transactions and occurrences referred to in the facts and allegations contained in the Consolidated Securities Action, including without limitation any claim or action seeking indemnification or contribution, however denominated, and any claim or action, whether legal or equitable in nature, known or unknown, foreseen or unforeseen, accrued or unaccrued, matured or unmatured, or for damages or permitted costs and expenses (including attorneys' fees).  All such claims and actions are hereby extinguished, discharged, satisfied and unenforceable.

Such order shall include a provision that a Final verdict or judgment against PwC shall be reduced (up to the amount of such verdict or judgment) by the greater of:  (a) an amount that corresponds to the percentage of responsibility of the Released Securities Parties for the liability at issue; or (b) the amount paid to settle the Consolidated Securities Action pursuant to this Stipulation.  Such order shall also prohibit any member of the Settling Securities Plaintiff Class from settling any claim against PwC without also obtaining from PwC a release running in favor of every Released Securities Party that is at least as broad as the Securities Release; provided, however that this bar order shall not

apply to any indemnification obligations owed by Hanover under its by-laws or Articles of Incorporation to the other Settling Defendants.

2.15.   Supplemental Securities Agreement.   Within ten (10) business days after the date hereof, Lead Counsel and Hughes Hubbard & Reed LLP shall enter into a Supplemental Securities Agreement providing for the termination of the Securities Settlement at the sole election of Hanover, in the exercise of its absolute discretion, in the event that, after the execution of the Stipulation, members of the Securities Plaintiff Class owning a specified percentage of Hanover Securities purchased during the Class Period deliver timely and otherwise valid requests for exclusion from the Securities Plaintiff Class or initiate actions regarding, or assert any of, the Released Claims against one or more of the Settling Securities Defendants.   The Supplemental Securities Agreement shall be held confidential in accordance with its terms.

2.16.   Reimbursement of Lead Plaintiffs.   The Lead Plaintiffs may seek Federal Court approval of such amounts as allowed by §21D of the Exchange Act.

3.   SETTLEMENT OF CONSOLIDATED DERIVATIVE ACTION

3.1.   Settling Derivative Defendants' Denial of Liability.   The Settling Derivative Defendants have denied, and continue to deny, that they have any liability as a result of any and all allegations that have been or could be made in the Derivative Actions.   The Settling Derivative Defendants are entering into the Derivative Settlement in order to eliminate the burden, distraction, expense and uncertainty of further litigation.

3.2.   Reliance Upon Own Knowledge.   The Settling Derivative Plaintiffs expressly represent and warrant that, in entering into the Derivative Settlement, they relied upon their own knowledge and investigation (including the knowledge of and

investigation performed by counsel), and not upon any promise, representation, warranty or other statement made by or on behalf of any of the Settling Derivative Defendants or their Related Persons not expressly contained in this Stipulation.

3.3.  <u>Corporate Governance.</u>  Hanover will implement the corporate governance enhancements, which were the subject of substantial negotiation by and among the Settling Parties and the Settling Derivative Plaintiffs' Counsel, in the time periods and in the manner contemplated by the Governance Term Sheet.

3.4.  <u>Role of Settling Derivative Plaintiffs' Counsel.</u>  Settling Derivative Plaintiffs, through Settling Derivative Plaintiffs' Counsel, were material participants in the settlement negotiations relating to the Derivative Actions and were a substantial factor in obtaining the following benefits for Hanover:

(a)  payment of at least twenty six million six hundred fifty thousand dollars ($26,650,000) by Hanover's insurance carriers toward the Settlement;

(b)  contribution of the GKH Settlement Shares into the Securities Settlement Stock Fund; and

(c)  substantial corporate governance enhancements as detailed in the Governance Term Sheet.

3.5.  <u>Derivative Notice.</u>  Settling Derivative Plaintiff's Counsel shall be responsible for printing and mailing appropriate court-directed individual notice to the shareholders of Hanover entitled to receive such notice, substantially in the form of Exhibit D, as well as any other required or appropriate notice to be made by publication or otherwise.

528824_1

3.6.    Payments.  Within three (3) business days after preliminary approval of the Derivative Settlement, Hanover shall pay seventy five thousand dollars ($75,000) to counsel for the plaintiffs in the derivative action, *Koch v. O'Connor, et al.*, as payment for providing the Notice required by Section 3.5.  Within three (3) business days after the entry of the Order and Final Judgment, Hanover shall contribute seven hundred thousand dollars ($700,000) to the Securities Settlement Cash Fund.  Thereafter, provided that the Court has approved such a fee and expense award, seventy five thousand (75,000) shares of Hanover Common Stock from the Securities Settlement Stock Fund and seven hundred thousand dollars ($700,000) (which shall be deemed to have been contributed by Hanover's directors and officers insurance carriers) withdrawn from the Securities Settlement Cash Fund shall be paid to Settling Derivative Plaintiffs' Counsel, of which three hundred thousand dollars ($300,000) shall be allocated and paid to The Brualdi Law Firm.

3.7.    Attorneys' Fees.  In the event that the order approving the fee and expenses so awarded is reversed or modified on appeal, and in the event that any Settling Derivative Plaintiffs' Counsel has received payment, such counsel shall, within five (5) business days of the date which the fee and expense award is modified or reversed, refund to the Derivative Settlement Fund the fees and expenses previously received by them in full or in any amount consistent with such reversal or modification, plus interest thereon at the rate earned on the Securities Settlement Cash Fund through the date of such refund.  Lead Counsel shall refund, within ten (10) business days of any modification or reversal of a fee or expense award, any fees and expenses received,

which are required to be but are not refunded, by any Settling Derivative Plaintiffs' Counsel as directed above.

3.8.     Conditions.  The Derivative Settlement shall terminate and be of no further force or effect if any of the conditions in Section 5.1 and 5.3, or any of the conditions set forth below, are not satisfied or, with respect to the conditions in Section 3.8 (a), (b), and (d), waived by Hanover:

> (a)     dismissal with prejudice of the State Derivative Action without additional consideration;

> (b)     preliminary approval of the Derivative Settlement by the Federal Court;

> (c)     payment of any fee and expense award to Settling Derivative Plaintiffs' Counsel directed by the Federal Court; and

> (d)     the Order and Final Judgment by the Federal Court, approving the Derivative Settlement and providing for the Derivative Releases and bar order provided for in Section 3.10, becoming Final.

3.9.     Derivative Releases.  Upon the Effective Date, the Settling Derivative Plaintiffs, Hanover, and Hanover Shareholders, and each of their respective successors, predecessors, assigns, attorneys (including Settling Derivative Plaintiffs' Counsel), heirs, representatives, legatees, devisees, administrators, executors, and estates, release and forever discharge any and all claims, rights and causes of action, whether based on federal, state, local, statutory or common law or any other law, rule or regulation, including, without limitation, Unknown Claims and claims under ERISA, Delaware statutory and common law, federal and state securities laws and claims under any  law

governing fiduciaries or the duties of fiduciaries, that have been, could have been, or in the future might be or could be asserted in any form and in any forum by Settling Derivative Plaintiffs or Hanover Shareholders against any of the Released Derivative Parties on behalf of Hanover that exist, could have existed, or may arise in connection with or that relate to the transactions (including the registration of securities and any failure to deliver prospectuses), matters or occurrences, or representations or omissions involved, set forth, referred to, or which relate in any way to the facts or allegations contained in or which could have been contained in the Derivative Actions, (including, but not limited to, breach of any duty owed to Hanover, including the duty of care, loyalty and good faith) (the "Released Derivative Claims").

Upon the Effective Date, the Settling Derivative Defendants and each of their respective successors, predecessors, assigns, attorneys (including Settling Derivative Defendants' Counsel), heirs, representatives, administrators, legatees, devisees, executors and estates, release and forever discharge any and all claims, rights and cause of action, whether based on federal, state, local, statutory or common law or any other law, rule or regulation, and whether known or unknown, that have been, could have been, or in the future might be asserted in any form or forum against any of the Settling Derivative Plaintiffs or any of the Settling Derivative Plaintiffs' Counsel in the Derivative Actions in connection with or that exist, could have existed, or may arise in connection with or relate to the institution, prosecution or settlement of any and all claims asserted in the Derivative Actions, including, but not limited to, any action for costs or attorneys' fees.

The releases contained in this Section (the "Derivative Releases") shall apply to Hanover, each and every one of the Hanover Shareholders, the Settling Derivative

Plaintiffs, each and every Settling Derivative Plaintiffs' Counsel, each and every Released Derivative Party and each and every Settling Derivative Defendants' Counsel, and the respective successors and assigns of any of the foregoing, whether directly or indirectly, representatively, derivatively or in any other capacity.

The Derivative Releases apply to all claims, including Unknown Claims, and the Settling Derivative Plaintiffs, Settling Derivative Plaintiffs' Counsel, Settling Derivative Defendants and Settling Derivative Defendants' Counsel agree to waive the benefits of §1542 of the California Civil Code (and the benefits of any other law (including any principle of common law) of any state or territory or other jurisdiction of the United States or of any jurisdiction outside of the United States that is similar, comparable or equivalent to §1542 of the California Civil Code), which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

Each Settling Derivative Plaintiff, Settling Derivative Plaintiffs' Counsel, Settling Derivative Defendants and Settling Derivative Defendants' Counsel acknowledges that the foregoing waiver was separately bargained for and is a material term of the Derivative Settlement.

3.10.   <u>Derivative Bar Order.</u>  The Order and Final Judgment shall include a bar order permanently and forever barring and enjoining all Persons, specifically including but not limited to PwC, from filing, commencing, instituting, prosecuting or maintaining, either directly, indirectly, representatively or in any other capacity, any claim, counterclaim, cross-claim, third-party claim or other action against any of the Released Derivative Parties arising out of, based upon or relating to the transactions and

occurrences referred to in the facts and allegations contained in the Derivative Actions, including without limitation any claim or action seeking indemnification or contribution, however denominated, and any claim or action, whether legal or equitable in nature, known or unknown, foreseen or unforeseen, matured or unmatured, accrued or unaccrued, or for damages or permitted costs and expenses (including attorneys' fees). All such claims and actions are hereby extinguished, discharged, satisfied and unenforceable.

Such order shall include a provision that a final verdict or judgment against a defendant other than a Released Derivative Party in the Settling Derivative Action or in any other action arising out of, based upon or relating to the transactions and occurrences referred to in the complaints in the Derivative Actions shall be reduced (up to the amount of such verdict or judgment) by the greater of: (a) an amount that corresponds to the percentage of responsibility of the Released Derivative Parties for the liability at issue; or (b) the amount paid to plaintiffs by the Released Derivative Parties in respect of the liability at issue. Such order shall also prohibit any Settling Derivative Plaintiff from settling any claim against PwC without also obtaining from PwC a release running in favor of every Released Derivative Party that is at least as broad as the Derivative Release, provided, however that this bar order shall not apply to any indemnification obligations owed by Hanover under its by-laws or Articles of Incorporation to the other Settling Defendants.

4. SETTLEMENT OF ERISA ACTIONS

4.1. <u>Settling ERISA Defendants' Denial of Liability.</u> The Settling ERISA Defendants have denied, and continue to deny, that they have liability as a result of any

and all allegations that have been or could be made in the ERISA Actions. The Settling

ERISA Defendants are entering into the ERISA Settlement in order to eliminate the

burden, distraction, expense and uncertainty of further litigation.

4.2.   ERISA Settlement Fund. The Escrow Agent shall allocate an amount (the

"ERISA Settlement Fund") equal to one million seven hundred seventy five thousand

dollars ($1,775,000) in cash from the Securities Settlement Cash Fund, plus interest

earned thereon, to fund payments relating to the ERISA Settlement.

4.3.   Settled Claims. The ERISA Settlement contemplated herein shall be a

settlement both of the claims made on a class action basis and a settlement of the claims

made to or on behalf of the Plan.Reliance Upon Own Knowledge. The ERISA Plaintiffs

expressly represent and warrant that, in entering into this ERISA Settlement, they relied

upon their own knowledge and investigation (including the knowledge of and

investigation performed by Settling ERISA Plaintiffs' Counsel), and not upon any

promise, representation, warranty or other statement made by or on behalf of any of the

Settling ERISA Defendants or their Related Persons not expressly contained in this

Stipulation.

4.4.   Structural and Equitable Relief. Each participant in, or beneficiary under,

the Plan shall have the right to direct the investment of his or her employer contribution

to the Plan, upon the vesting thereof, in the same manner and among the same investment

alternatives as are available for the investment of employee contributions to the Plan

(provided, however, that the employer contributions may continue to be made in the form

of Hanover Common Stock).

4.5.   Attorneys' Fees.  Settling ERISA Plaintiffs' Counsel may apply to the Federal Court for an award of attorneys' fees and reimbursement of all expenses incurred by them on behalf of the Settling ERISA Plaintiff Class.  Such fees and expenses, and interest thereon, shall be payable out of the ERISA Settlement Fund and shall be deducted from the ERISA Settlement Fund prior to the distribution thereof to the Plan.  Following entry of any order by the Federal Court approving a fees and expenses to Settling ERISA Plaintiffs' Counsel, Lead Counsel may withdraw from the ERISA Settlement Fund, and allocate the fees and expenses so awarded, provided, however that in the event that the order approving the fee and expenses so awarded is reversed or modified on appeal, and in the event that any Settling ERISA Plaintiffs' Counsel has received payment, such counsel shall, within five (5) business days of the date which the fee and expense award is modified or reversed, refund to the ERISA Settlement Fund the fees and expenses previously received by them in full or in any amount consistent with such reversal or modification, plus interest thereon at the rate earned on the Securities Settlement Cash Fund through the date of such refund.  Lead Counsel shall refund, within ten (10) business days of any modification or reversal of a fee or expense award, any fee and expense amount discussed above which is not refunded by any Settling ERISA Plaintiffs' Counsel as directed above.

4.6.   Award to Named ERISA Plaintiff.  The named plaintiff in *Kirkley v. Hanover, et al.*, Case No. H-03-1155, will submit to the Federal Court an application for an award, in recognition of his services, not to exceed two thousand five hundred dollars ($2,500), which award shall be withdrawn from the ERISA Settlement Fund portion of

the Securities Settlement Cash Fund. Such award, if approved, shall be paid from the

ERISA Settlement Fund prior to distribution of the balance thereof to the Plan.

4.7.    Notice. The Claims Administrator shall be responsible for providing the

Notice to the members of the Settling ERISA Plaintiff Class, substantially in the form of

Exhibit E, as well as any other required or appropriate notice to be made by publication

or otherwise, all costs of which shall be paid by the Plan or Hanover.

4.8.    Conditions. The ERISA Settlement shall terminate and be of no further

force or effect if any of the conditions in Section 5.1 and 5.3, or any of the conditions set

forth below, are not satisfied or, with respect to the conditions in Section 4.8 (c) and (d),

waived by Hanover:

(a)    the funding of the ERISA Settlement Fund as provided herein;

(b)    the implementation of the structural and equitable relief

contemplated in Section 4.4 above;

(c)    preliminary approval by the Federal Court of the ERISA

Settlement except with respect to attorneys' fees; and

(d)    The Order and Final Judgment by the Federal Court, approving the

ERISA Settlement and providing for the ERISA Releases and bar order provided

for in Section 4.10 becoming Final.

4.9.    ERISA Releases. Upon the Effective Date the Settling ERISA Plaintiff

Class (and each of their respective successors, predecessors, assigns, attorneys (including

Settling ERISA Plaintiffs' Counsel) heirs, representatives, administrators, legatees,

devisees, executors and estates release and forever discharge any and all claims, rights

and causes of action, whether based on federal, state, local, statutory or common law or

528824_1                                              37

any other law, rule or regulation, including Unknown Claims, that have been, could have

been, or in the future might be or could be asserted in any form or forum against any of

the Released ERISA Parties in connection with or that exist, could have existed, or may

arise as to the transactions, matters or occurrences, representations or omissions,

involved, set forth, referred to, or which relate in any way to the facts of and allegations

contained in the ERISA Actions including, but not limited to, claims for negligence,

gross negligence, professional negligence, breach of duty of care and/or breach of duty of

loyalty and/or breach of duty of candor, fraud, breach of fiduciary duty, mismanagement,

corporate waste, malpractice, breach of contract, negligent or willful misrepresentation,

and violations of ERISA or other state or federal statutes, rules or regulations, provided,

however, that the releases shall be limited to matters pertaining to the Plan that were or

could have been prosecuted on a Plan-wide or Class-wide basis (the "Released ERISA

Claims").

Upon the Effective Date, the Settling ERISA Defendants and GKH and each of

their respective successors, predecessors, assigns, attorneys (including Settling ERISA

Defendants' Counsel), heirs, representatives, administrators, legatees, devisees, executors

and estates release and forever discharge any and all claims, rights and cause of action,

whether based on federal, state, local, statutory or common law or any other law, rule or

regulation, and whether known or unknown, that have been, could have been, or in the

future might be asserted in any form or forum against any member of the Settling ERISA

Plaintiff Class or any of the Settling ERISA Plaintiffs' Counsel in the Settling ERISA

Actions in connection with or that exist, could have existed, or may arise as to the

institution, prosecution or settlement of any and all claims asserted in the Settling ERISA Actions, including, but not limited to, any action for costs or attorneys' fees.

The releases contained in this Section (the "ERISA Releases") shall apply to each and every member of the Settling ERISA Plaintiff Class, each and every Settling ERISA Plaintiffs' Counsel, each and every Released ERISA Party and each and every Settling ERISA Defendants' Counsel, and the respective successors and assigns of any of the foregoing, whether directly or indirectly, representatively, derivatively or in any other capacity.

The ERISA Releases apply to all claims, including Unknown Claims, and the Settling ERISA Plaintiff Class, Settling ERISA Plaintiffs' Counsel, Settling ERISA Defendants and Settling ERISA Defendants' Counsel agree to waive the benefits of §1542 of the California Civil Code (and the benefits of any other law (including any principle of common law) of any state or territory or other jurisdiction of the United States or of any jurisdiction outside of the United States that is similar, comparable or equivalent to §1542 of the California Civil Code), which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

Each member of the Settling ERISA Plaintiff Class, Settling ERISA Plaintiffs' Counsel, Settling ERISA Defendants and Settling ERISA Defendants' Counsel acknowledges that the foregoing waiver was separately bargained for and is a material term of the ERISA Settlement.

4.10.   ERISA Bar Order.  The Order and Final Judgment shall include a bar order permanently and forever barring and enjoining all Persons, specifically including

but not limited to PwC, from filing, commencing, instituting, prosecuting or maintaining, either directly, indirectly, representatively or in any other capacity, any claim, counterclaim, cross-claim, third-party claim or other action against any of the Released ERISA Parties arising out of, based upon or relating to the transactions and occurrences referred to in the facts and allegations contained in the ERISA Actions, including without limitation any claim or action seeking indemnification and/or contribution, however denominated, and any claim or action whether legal or equitable in nature, known or unknown, foreseen or unforeseen, matured or unmatured, accrued or unaccrued, or for damages or permitted costs and expenses (including attorneys' fees). All such claims and actions are hereby extinguished, discharged, satisfied and unenforceable.

Such order shall include a provision that a Final verdict or judgment against a defendant other than a Released ERISA Party in any of the ERISA Actions or in any other action arising out of, based upon or relating to the transactions and occurrences referred to in the complaints in the ERISA Actions shall be reduced (up to the amount of such verdict or judgment) by the greater of: (a) an amount that corresponds to the percentage of responsibility of the Released ERISA Parties for the liability at issue; or (b) the amount paid to plaintiffs by the Released ERISA Parties in respect of the liability at issue. Such order shall also prohibit the Settling ERISA Plaintiff Class and the Settling ERISA Plaintiffs' Counsel from settling any claim against a Non-Settling Defendant without also obtaining from such Non-Settling ERISA Defendant a release running in favor of every Released ERISA Party that is at least as broad as the ERISA Release, provided, however that this bar order shall not apply to any indemnification obligations

owed by Hanover under its by-laws or Articles of Incorporation to the other Settling Defendants.

4.11.   <u>Payment to Authorized ERISA Claimants.</u>  The ERISA Settlement Fund shall be distributed by the Claims Administrator to the Plan for redistribution to Authorized ERISA Claimants, both in accordance with the ERISA Plan of Allocation.

5.   ADDITIONAL CONDITIONS TO EFFECTIVENESS OF THE SETTLEMENT

5.1.   <u>Approval.</u>  Hanover shall have obtained such consents, waivers and approvals from its banks and other lenders as it deems necessary in connection with the Settlement, all of which Hanover shall seek in good faith.

5.2.   <u>Performance by GKH.</u>  GKH shall have performed all obligations to be performed by it as provided in this Stipulation and in the Letter Agreement.

5.3.   <u>Cross-Contingency.</u>  In the event that the Federal Court does not approve all of the Securities Settlement, the ERISA Settlement, and the Derivative Settlement, Hanover may, in its sole discretion, terminate any or all of the (1) Securities Settlement, (2) Derivative Settlement, and (3) ERISA Settlement, provided, however, that nothing herein shall inhibit Hanover from consummating any of the Securities Settlement, Derivative Settlement, or ERISA Settlement despite the disapproval of any of such Settlements.

5.4.   <u>Performance by Hanover.</u>  Hanover shall have performed all obligations to be performed by it on or prior to the Effective Date as provided in this Stipulation and in the Letter Agreement.

6.    ESCROW MATTERS

6.1.    <u>Appointment of Escrow Agent.</u> Pursuant to the terms hereof, Milberg Weiss is hereby appointed the Escrow Agent and Milberg Weiss accepts the duties and obligations of the Escrow Agent set forth herein.

6.2.    <u>Investment of Settlement Fund.</u> The Escrow Agent shall invest the Securities Settlement Cash Fund in instruments backed by the full faith and credit of the United States Government with a maturity of not more than 90 days, and reinvest the proceeds of such instruments in the same manner as they mature, and may deposit a portion of the cash portion of the Securities Settlement Cash Fund into an interest bearing account in which the funds held therein are at all times fully insured by the Federal Deposit Insurance Corporation (or any successor thereto).

6.3.    <u>Distribution of Settlement Fund.</u> The Settlement Fund shall be distributed (or the instruments in which the Securities Settlement Cash Fund is invested distributed) by the Escrow Agent only at such time or times and in such manner as is expressly set forth herein or as otherwise authorized or directed by the Federal Court.

6.4.    <u>Concerning the Escrow Agent.</u> The Escrow Agent further covenants and agrees with the Settling Defendants that:

(a)    Except as is otherwise agreed by the Settling Defendants and the Escrow Agent, the Escrow Agent shall not invest any funds held hereunder except as directed pursuant to this Stipulation. Uninvested funds held hereunder shall not earn or accrue interest.

(b)    This Stipulation (including the Note) sets forth certain duties of Milberg Weiss in its capacity as the Escrow Agent, but does not relieve Milberg

Weiss of, and Milberg Weiss remains obligated to comply with, its obligations as Lead Counsel or otherwise that may be contained elsewhere in this Stipulation or any other agreement entered into between the Settling Defendants and Lead Counsel (or their respective representatives or counsel).

(c)     To induce the Escrow Agent to act as such hereunder, the Escrow Agent shall be entitled to rely, if it is acting in good faith, upon any order, judgment, certification, demand, notice, instrument or other writing delivered to it hereunder without being required to determine the authenticity or the correctness of any fact stated therein or the propriety or validity or the service thereof. The Escrow Agent may, if it is acting in good faith, act in reliance upon any instrument or signature believed by it to be genuine and may assume that any person purporting to give receipt or advice or make any statement or execute any document in connection with the provisions hereof has been duly authorized to do so.

(d)     Except and to the extent Lead Counsel is otherwise permitted to make a withdrawal to pay counsel fees and expenses pursuant to this Stipulation, the Escrow Agent does not have any beneficial interest in the Settlement Fund, but is serving as escrow holder only and having only possession thereof subject to the terms hereof, and the Escrow Agent shall not be entitled to any fees or other compensation for, or reimbursement for any expenses incurred in connection with, the services to be rendered by the Escrow Agent hereunder.

(e)     Until the Effective Date, the Escrow Agent (and any successor Escrow Agent) may be removed or may resign only upon the execution by the

528824_1                                          43

Settling Defendants and the Escrow Agent of an instrument to that effect.  Upon the removal or resignation of the Escrow Agent in accordance with the foregoing sentence, the Escrow Agent (and any successor Escrow Agent) shall deliver the Settlement Fund to any successor Escrow Agent designated in writing or, if no such successor is so designated, to the Federal Court, whereupon the Escrow Agent shall be discharged of and from any and all obligations under this Section 6.

(f)     In the event of any disagreement between the Settling Parties resulting in adverse claims or demands being made in connection with the Settlement Fund, or in the event that the Escrow Agent in good faith is in doubt as to what action it should take hereunder, the Escrow Agent shall be entitled to retain the Settlement Fund until the Escrow Agent shall have received (i) a Final non-appealable order of the Federal Court directing delivery of the Settlement Fund or (ii) a written agreement executed by the Escrow Agent and the Settling Defendants directing delivery of the Settlement Fund, in which event the Escrow Agent shall disburse the Settlement Fund in accordance with such order or agreement.

7.     TAX MATTERS

7.1.     Qualified Settlement Fund.  The Settling Parties and the Escrow Agent agree that the Settlement Fund and all of its constituent parts (including the Securities Settlement Cash Fund, the Securities Settlement Note Fund, and the Securities Settlement Stock Fund), shall be a "qualified settlement fund" within the meaning of Treas. Reg. Sec. 1.468B-1 at all times after preliminary approval of this Stipulation by the Federal

Court, it being agreed that preliminary approval of this Stipulation shall constitute Federal Court approval of the establishment of the Settlement Fund and all of its constituent parts (including the Securities Settlement Cash Fund, the Securities Settlement Note Fund and the Securities Settlement Stock Fund). In addition, the Escrow Agent shall, if and only if Hanover so requests, timely make such elections as necessary or advisable to carry out the provisions of this Section 7.1, including a "relation-back election" (as defined in Treas. Reg. Sec. 1.468B-1). Such elections shall be made in compliance with the procedures and requirements contained in the applicable regulations. It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties and thereafter to cause the appropriate filing to occur.

7.2.    Returns.  For the purpose of Section 468B of the Code, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent. The Escrow Agent shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including without limitation the returns described in Treas. Reg. Sec. 1.468B-2(k)).

7.3.    Taxes.  All (i) taxes (including any estimated taxes, interest, penalties or additions to tax) arising with respect to the income earned by the Settlement Fund, including any taxes that may be imposed upon the Settlement Fund, Settling Defendants or Settling Defendants' Counsel with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes ("Taxes"), and (ii) expenses and costs incurred in connection with the operation and implementation of this Section 7.3

(including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this Article 7 ("Tax Expenses"), shall be paid out of the Settlement Fund. Settling Defendants and Settling Defendants' Counsel shall have no liability or responsibility for Taxes or Tax Expenses. The Escrow Agent hereby indemnifies and holds harmless each of the Settling Defendants and Settling Defendants' Counsel for any and all Taxes and Tax Expenses (including, without limitation, Taxes payable by reason of any such indemnification). Further, Taxes and Tax Expenses shall be treated as and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Federal Court and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to the Authorized Claimants any funds necessary to pay such amounts including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. Sec. 1.468B-2(1)(2); neither Settling Defendants nor Settling Defendants' Counsel are responsible nor shall they have any liability therefore. The Settling Parties shall cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Article 7.

8. PRELIMINARY ORDER AND SETTLEMENT HEARING

    8.1. <u>Application for Preliminary Order.</u> Within five (5) business days after the execution and delivery of this Stipulation by all parties hereto, the Settling Parties shall submit this Stipulation together with its Exhibits to the Federal Court and shall apply for entry of an order, requesting, *inter alia*, the preliminary approval of the Settlement,

certification of relevant claims for settlement purposes, and approval for the mailing and

publication of the Notices (the "Preliminary Order").

9.   ADMINISTRATION AND CALCULATION OF CLAIMS, FINAL AWARDS, AND
     SUPERVISION AND DISTRIBUTION OF SECURITIES SETTLEMENT FUND AND
     ERISA SETTLEMENT FUND

   9.1.   Administration of the Settlement Fund.  The Claims Administrator,

appointed and subject to such supervision and direction of the Federal Court, shall

administer and calculate the claims submitted by or on behalf of Settling Plaintiffs and

shall oversee distribution of the Settlement Fund to the Authorized Claimants or, as

applicable, to the Plan for redistribution to the Authorized Claimants.

   9.2.   Distribution of the ERISA Settlement Fund.  Distribution of the ERISA

Settlement Fund shall be applied as follows:

   (a)   to pay the Taxes and Tax Expenses described in Article 7 hereof to

the extent allocable to the ERISA Settlement;

   (b)   to pay Settling ERISA Plaintiffs' Counsel attorneys' fees and

expenses, if and to the extent allowed by the Federal Court, and as otherwise

provided in this Stipulation;

   (c)   to pay all the costs and expenses of the Claims Administrator

reasonably and actually incurred in connection with discharging its

responsibilities in connection with the process of distributing the ERISA

Settlement Fund to Authorized ERISA Claimants, and paying escrow fees and

costs allocable to the ERISA Settlement Fund, if any;

   (d)   to pay the named plaintiff in *Kirkley v. Hanover, et al.*, Case

No. H-03-1155, two thousand five hundred dollars ($2,500), if such award is

approved by the Federal Court; and

       (e)     to distribute the ERISA Settlement Fund (after deducting costs and expenses allowed pursuant to Section 9.2(a), (b), (c), and (d)) to Authorized ERISA Claimants as allowed by the ERISA Plan of Allocation.

     9.3.    <u>Distribution of the Securities Settlement Fund.</u>  The Securities Settlement Fund shall be applied as follows:

       (a)     to pay the Taxes and Tax Expenses described in Article 7 hereof to the extent allocable to the Securities Settlement;

       (b)     to pay Lead Counsel attorneys' fees and expenses, if and to the extent allowed by the Federal Court, and as otherwise provided in this Stipulation;

       (c)     to pay all the costs and expenses reasonably and actually incurred in connection with providing Notice to and locating Securities Plaintiff Class, soliciting claims of Securities Plaintiff Class, assisting with the filing of claims, administering and distributing the Securities Settlement Fund to Authorized Securities Claimants, processing proofs of claim and release forms and paying escrow fees and costs allocable to the Securities Settlement Fund, if any; and

       (d)     to distribute the Settlement Fund (after deducting costs and expenses allowed pursuant to Section 9.3(a), (b) and (c)) to Authorized Securities Claimants as allowed by the Securities Plan of Allocation.

     9.4.    <u>Distribution of Remaining Balance of Securities Settlement Fund.</u>  The Securities Settlement Fund shall be distributed to the Authorized Claimants substantially in accordance with the Securities Plan of Allocation.  However, if there is any balance remaining in the Securities Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise) after the later of (a) twenty four (24) months after the Effective Date

or (b) twelve (12) months after the cancellation or maturity of the Note, Lead Counsel shall reallocate such balance among the Authorized Securities Claimants in an equitable and economic fashion.  Thereafter, any balance which still remains in the Securities Settlement Fund shall be donated to an appropriate non-profit organization or distributed as may be ordered by the Federal Court consistent with the terms of this Stipulation.

9.5.    Responsibility of Administration.  Settling Defendants' Counsel shall not have any responsibility for, interest in, or liability whatsoever with respect to, (i)  the investment, distribution or administration of the Settlement Fund (or losses incurred as a result thereof), (ii) the determination or administration of the Securities Plan of Allocation or the ERISA Plan of Allocation, (iii) the solicitation or calculation of Proofs of Claim from any Authorized Claimant, or (iv) the payment or withholding of Taxes, or any losses incurred in connection with or by the Settlement Fund.

9.6.    Release of Liability for Distributions.  No Person shall have any claim against any Settling Party, their counsel or any of their Related Persons based on the distributions made in accordance with this Stipulation or further orders of the Federal Court.

9.7.    Claims by Persons Who Are Both Settling Securities Plaintiffs and Settling ERISA Plaintiff Class Members.  Settling ERISA Class members who by virtue of their holdings in the Plan are also Settling Securities Plaintiffs shall have submitted on their behalf by the Plan Proofs of Claims for such holdings in connection with both the Securities and ERISA Settlements.  Distributions in response to such Proofs of Claim shall be as described in the Securities Plan of Allocation and the ERISA Plan of Allocation, respectively.

528824_1

9.8.    Certain Obligations of the Plan, the Claims Administrator, and Hanover.

(a)    Submission of Information to Claims Administrator. The Plan shall timely submit to the Claims Administrator all available information concerning the holdings of and transactions in Hanover Securities in the Plan by members of the Settling ERISA Plaintiff Class as may be required in connection with submission of a Proof of Claim for participation in the Securities Settlement and the ERISA Settlement. Such submissions shall be deemed for all purposes to be Proofs of Claim submitted by the Settling ERISA Plaintiff Class members with respect to such holdings for participation in the Securities Settlement and the ERISA Settlement.

(b)    Actions by Claims Administrator. The Claims Administrator will process the information provided by the Plan as described in Section 9.8(a) above and calculate the distributions in cash and Hanover Common Stock due to each member of the Settling ERISA Plaintiff Class from the ERISA Settlement Fund and the Securities Settlement Fund, all deductions from such funds required under this Stipulation having been made. The Claims Administrator will provide the results of such calculations to the Plan and will transfer or cause to be transferred to the Plan an aggregate amount of cash and Hanover Common Stock equal to the sum of cash and Hanover Common Stock that it has calculated are due to each of the Settling ERISA Class Members.

(c)    Distribution of Settlement Proceeds. All proceeds from the ERISA Settlement and the Securities Settlement distributed by or at the direction of the Claims Administrator to the Plan pursuant to Section 9.8(b) above shall be

528824_1

redistributed by the Plan to the members of the Settling ERISA Plaintiff Class on a pass-through basis within thirty (30) days of the later of the receipt of the funds and the information specifying the distribution to be made to each member of the Settling ERISA Plaintiff Class. Such redistribution shall correspond in amount and kind with the calculations provided by the Claims Administrator. The Plan shall make all redistributions of proceeds of the ERISA Settlement that it receives directly to the Plan accounts of members of the Settling ERISA Plaintiff Class who have such accounts or, to the extent and in the manner permitted by law, to any other account which such members may specify. The Plan and/or Hanover shall cause to be discharged all of the Plan's reporting obligations under federal or state tax laws or ERISA in respect of its redistribution of such proceeds. The Plan shall bear the costs and expenses attributable to discharging all of its obligations under this Stipulation. Any proceeds that cannot be redistributed by the Plan upon the exercise of reasonable efforts or as otherwise required by law shall be converted into cash and, subject to the requirements of law, shall be used first to pay costs associated with the redistribution of proceeds and thereafter shall become the property of the Plan. Any unrecovered costs to the Plan of effecting the redistribution of proceeds shall be borne by Hanover.

      (d)   <u>Implementation of Plan's Obligations.</u>  Hanover will cause the Plan to undertake the obligations imposed on it hereunder.

10. TERMINATION

    10.1. <u>Termination of the Stipulation.</u> In the event that the Stipulation is terminated or cancelled, for any reason, within ten (10) business days after written notification of such event is sent by Hanover to the Escrow Agent, (a) the Securities Settlement Cash Fund (including accrued interest), net of any reasonable and actual costs incurred for notice expenses, shall be refunded by the Escrow Agent to Hanover, (b) the Note (if issued) shall be cancelled and returned by the Escrow Agent to Hanover, (c) the Hanover Settlement Shares (if previously delivered) shall be returned by the Escrow Agent to Hanover, and (d) the GKH Settlement Shares (if previously delivered) shall be returned by the Escrow Agent to GKH. At the request of Hanover, the Escrow Agent or its designee shall apply for any Tax refund owed to the Securities Settlement Cash Fund and pay the proceeds, after deduction of any fees or expenses incurred in connection with such application(s) for refund, to Hanover.

    10.2. <u>Restoration in Event of Termination.</u> In the event that the Settlement is terminated or cancelled, for any reason, the Settling Parties shall be restored to their respective positions in the Settling Actions as of May 11, 2003. In such event, the terms and provisions of this Stipulation shall have no further force and effect with respect to the Settling Parties and shall not be used in any of the Actions, and any judgment or order entered by the Federal Court in accordance with the terms of the Stipulation shall be treated as vacated, *nunc pro tunc*. No order of the Federal Court or modification or reversal on appeal of any order of the Federal Court concerning any Plan of Allocation or the amount of any attorneys' fee and expense award approved by the Federal Court shall constitute grounds for cancellation or termination of the Stipulation.

10.3.   Partial Settlement.  Without limiting the generality of Sections 10.1 and

10.2, if one or more of the Securities Settlement, ERISA Settlement, or Derivative

Settlement is or are terminated as contemplated by this Stipulation (each, a "Non-Settled

Action"), but any of such settlements is consummated as contemplated by this

Stipulation, then (a) that portion of the Settlement Fund, less any reasonable and actual

cost of Notice, as relates to the Non-Settled Actions shall be refunded and returned in a

like manner as contemplated by Section 10.1 above and (b) the Settling Parties in the

Non-Settled Actions shall be restored to their respective positions in the Non-Settled

Actions in a like manner as contemplated by Section 10.2 above.

11.   MISCELLANEOUS PROVISIONS

11.1.   Cooperation of Settling Parties.  The Settling Parties (a) acknowledge that

it is their intent to consummate the Settlement and (b) agree to cooperate to the extent

reasonably necessary to effectuate and implement all terms and conditions of this

Stipulation and to exercise their commercially reasonable efforts to accomplish the

foregoing terms and conditions of this Stipulation and to consummate the transactions

contemplated hereby.

11.2.   Acknowledgment of Adequate Consideration.  The Settling Parties

acknowledge, represent and warrant to each other that the mutual releases and payments

hereunder are such that each of the Settling Parties is to receive adequate consideration

for the consideration given.

11.3.   No Admissions.  Neither this Stipulation nor the Settlement, nor any act

performed or document executed pursuant to or in furtherance of this Stipulation or the

Settlement (a) is or may be deemed to be or may be used as an admission of, or evidence

of, the validity of any Released Claim, or of any wrongdoing or liability of the Settling Defendants or any of their Related Persons; (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Settling Defendants or any of their Related Persons in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal; or (c) is or may be alleged or mentioned so as to contravene clause (a) above in any litigation or other action unrelated to the enforcement of this Stipulation. Settling Defendants may file this Stipulation or any judgment or order of the Federal Court related hereto in any action that may be brought against them in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim. The Order and Final Judgment in the Securities Settlement, the Derivative Settlement, and the ERISA Settlement will contain a statement that, during the course of the litigation, the Settling Parties and the Settling Parties' Counsel complied with the requirements of Federal Rule of Civil Procedure 11.

11.4.　Confidentiality Agreements.　All agreements made and orders entered during the course of the negotiations relating to the confidentiality of information shall survive this Stipulation and the Settlement.

11.5.　Exhibits.　All of the Exhibits to this Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

11.6.　Costs.　Except as otherwise expressly provided herein, the Settling Parties shall bear their own costs.

11.7.   <u>Entire Agreement.</u>  This Stipulation, the May 2003 Supplemental Agreement between GKH and Hanover, the Supplemental Securities Agreement, the Escrow Agreement, and all documents executed pursuant hereto constitute the entire agreement between the parties with respect to the settlement of the Actions and supersede any and all prior negotiations, discussions, agreements or undertakings, whether oral or written, with respect to the settlement of the Actions including, but not limited to, the MOU.

11.8.   <u>Counterparts.</u>  The Stipulation may be executed in one or more counterparts and all such counterparts together shall be deemed to be one and the same instrument.

11.9.   <u>Binding Effect.</u>  This Stipulation shall be binding upon, and inure to the benefit of, the Released Securities Parties, the Released Derivative Parties, the Released ERISA Parties, the Settling Parties and each of their respective Related Persons.  This Stipulation is not intended, and shall not be construed, to create rights in or confer benefits on any other Persons, and there shall not be any third party beneficiaries hereto except as expressly provided hereby with respect to such aforementioned Persons who are not parties hereto.

11.10.  <u>Judicial Enforcement.</u>  The Federal Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Stipulation and the Settlement, and the Settling Parties submit to the jurisdiction of the Federal Court for purposes of implementing and enforcing the terms of the Stipulation and Settlement.

11.11.  <u>Choice of Law.</u>  This Stipulation shall be governed by the laws of the State of Texas, excluding its choice of law provisions.

11.12.  <u>Warrant of Authority.</u>  Each counsel or other Person executing the Stipulation or any of its Exhibits on behalf of any party hereto hereby warrants that such Person has the full authority to do so.

11.13.  <u>Waiver of Breach.</u>  The Settling Parties may not waive or vary any right hereunder except by an express written waiver or variation.  Any failure to exercise or any delay in exercising any of such rights, or any partial or defective exercise of such rights, shall not operate as a waiver or variation of that or any other such right.  The waiver by one Settling Party of any breach of this Stipulation by another Settling Party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation.

11.14.  <u>Fair Construction.</u>  This Stipulation shall not be construed more strictly against one party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the parties, it being recognized that it is the result of arm's-length negotiations between the parties and all parties have contributed substantially and materially to the preparation of this Stipulation.

11.15.  <u>No Assignment of Claims.</u>  Each member of the Settling Securities Plaintiff Class and the Settling ERISA Plaintiff Class, and each Settling Derivative Plaintiff hereby represents and warrants that it has not assigned any rights, claims or causes of action that were asserted or could have been asserted in connection with, under, or arising out of any of the claims being settled or released herein, provided, however, that nothing contained in this Stipulation should prevent any member of the Settling Securities Plaintiff Class from assigning his, her, or its right to distributions from the Settlement Fund.

528824_1                                      56

11.16.  <u>Totality of Releases and Bar Orders.</u>  For the avoidance of doubt, the Settling Parties hereby acknowledge and agree that, if the Settlement is consummated in all material respects, (i) the Securities Release, Derivative Release and ERISA Release shall operate together with duplication and without exclusion of any Released Claim and (ii) the bar orders contemplated by Sections 2.14, 3.10 and 4.10 shall operate together with duplication and without exclusion of any matter discussed therein.

11.17.  <u>Tolling Agreements Void.</u>  The Tolling Agreements shall be void upon the Effective Date of the Securities Settlement.

11.18.  <u>No Compensation Necessary as a Result of Losses.</u>  The Settling Plaintiffs and the Settling Plaintiffs' Counsel acknowledge that the Settlement Fund may suffer losses as a result of investment of the Securities Settlement Cash Fund or fluctuations in value of the Settlement Shares (including fluctuations and resulting losses before the Settlement Shares are contributed to the Securities Settlement Stock Fund), or the Note, and they agree that none of the Settling Defendants or the Settling Defendants' Counsel is liable for or has any obligation to compensate for, or restore to the Settlement Fund or the Settling Plaintiffs or the Settling Plaintiffs' Counsel, any such losses or value fluctuations, and further agree that any such losses or fluctuations in value shall be at the risk of the Settling Plaintiffs and the Settling Plaintiffs' Counsel.

11.19.  <u>Assignment of Agreement.</u>  Milberg Weiss shall not assign any of its rights or obligations under this Stipulation (including any rights and obligations as Lead Counsel or Escrow Agent) without the prior written consent of Hanover, and any attempted transfer or assignment in violation of this provision shall be null and void; provided, however, that Milberg Weiss may, without consent, but with prior written

notice to Hanover, assign any such rights or obligations to a single entity formed as a result of a reorganization of Milberg Weiss as long as such assignee assumes all of the obligations of Milberg Weiss under this Stipulation and Milberg Weiss and each of its partners, as Milberg Weiss and its partners existed on May 12, 2003, are jointly and severally liable with the assignee for all such obligations.

11.20.  <u>Facsimile Signatures.</u>  Any signature to this Stipulation, to the extent signed and delivered by means of a facsimile machine, shall be treated in all manners and respects as an original signature and shall be considered to have the same binding legal effect as if it were the original signed version thereof delivered in person.  At the request of a Settling Party to this Stipulation, any other Settling Party to this Stipulation so executing and delivering this document by means of a facsimile machine shall reexecute original forms thereof and deliver them to the requesting party.  No party to this Stipulation shall raise the use of a facsimile machine to deliver a signature or the fact that any signature or agreement was transmitted or communicated through the use of a facsimile machine as a defense to the formation or enforceability of this Stipulation and each such Person forever waives any such defense.

The Settling Parties have caused this Stipulation to be duly executed and delivered by their counsel of record:

_____        Date: 23 ocтoввг 2003
Kevin T. Abikoff
HUGHES HUBBARD & REED LLP
1775 I Street, N.W.
Washington, D.C.  20006-2401
Telephone:  202-721-4600
Facsimile:  202-721-4646

Counsel for Defendant Hanover Compressor
Company


_____        Date:  _____
Darren J. Robbins
Randall Steinmeyer
Amber L. Eck
MILBERG WEISS BERSHAD HYNES & LERACH LLP
401 B Street, Suite 1700
San Diego, CA  92101
Telephone:  619-231-1058
Facsimile:  619-231-7423

Counsel for Lead Plaintiffs Pirelli Armstrong Tire,
Retiree Medical Benefits Trust, Plumbers &
Steamfitters, Local 137 Pension Fund, O. Bryant
Lewis, 720 Capital Management, LLC and
Specialists DPM

59

The Settling Parties have caused this Stipulation to be duly executed and

delivered by their counsel of record:


_____     Date: _____
Kevin T. Abikoff
HUGHES HUBBARD & REED LLP
1775 I Street, N.W.
Washington, D.C. 20006-2401
Telephone: 202-721-4600
Facsimile: 202-721-4646

Counsel for Defendants Hanover Compressor
Company


_____     Date: _10/22/03_
Darren L. Robbins
Randall Steinmeyer
Amber L. Eck
MILBERG WEISS BERSHAD HYNES & LERACH LLP
401 B Street, Suite 1700
San Diego, CA 92101
Telephone: 619-231-1058
Facsimile: 619-231-7423

Counsel for Lead Plaintiffs Pirelli Armstrong Tire,
Retiree Medical Benefits Trust, Plumbers &
Steamfitters, Local 137 Pension Fund, O. Bryant
Lewis, 720 Capital Management, LLC and
Specialists DPM

Date: 10/23/03

Richard B. Brualdi
Kevin T. O'Brien
THE BRUALDI LAW FIRM
29 Broadway, Suite 1515
New York, New York 10006
Telephone: 212-952-0602
Facsimile: 212-785-1618

Counsel for Plaintiff Harbor Finance Partners


Date: _____

Paul T. Warner
REICH & BINSTOCK
4265 San Felipe, Suite 1000
Houston, TX 77027
Telephone: 713-622-7271
Facsimile: 713-623-8724

Counsel for Plaintiffs Roger Koch, Henry Carranza
and William Steves


Date: _____

David M. Goldstein
MARICIC & GOLDSTEIN, LLP
10535 Foothill Blvd., Suite 300
Rancho Cucamongo, CA 91729
Telephone: 909-945-9549
Facsimile: 909-980-5525

Counsel for Plaintiff William Steves


Date: _____

Neil Rothstein
SCOTT & SCOTT, LLC
P.O. Box 192
108 Norwich Avenue
Colchester, CT 06415
Telephone: 1-800-404-7770
Facsimile: 1-860-537-4432

528824_1                          60

Date: _____

_____
Richard B. Brualdi
Kevin T. O'Brien
THE BRUALDI LAW FIRM
29 Broadway, Suite 1515
New York, New York 10006
Telephone: 212-952-0602
Facsimile: 212-785-1618

Counsel for Plaintiff Harbor Finance Partners

_____                    Date: 10/22/03
Paul T. Warner
REICH & BINSTOCK
4265 San Felipe, Suite 1000
Houston, TX 77027
Telephone: 713-622-7271
Facsimile: 713-623-8724

Counsel for Plaintiffs Roger Koch, Henry Carranza
and William Steves

Date: _____

_____
David M. Goldstein
MARICIC & GOLDSTEIN, LLP
10535 Foothill Blvd., Suite 300
Rancho Cucamongo, CA 91729
Telephone: 909-945-9549
Facsimile: 909-980-5525

Counsel for Plaintiff William Steves

Date: _____

_____
Neil Rothstein
SCOTT & SCOTT, LLC
P.O. Box 192
108 Norwich Avenue
Colchester, CT 06415
Telephone: 1-800-404-7770
Facsimile: 1-860-537-4432

528824_1                          60

Date: _____

Richard B. Brualdi
Kevin T. O'Brien
THE BRUALDI LAW FIRM
29 Broadway, Suite 1515
New York, New York 10006
Telephone: 212-952-0602
Facsimile: 212-785-1618

Counsel for Plaintiff Harbor Finance Partners

Date: _____

Paul T. Warner
REICH & BINSTOCK
4265 San Felipe, Suite 1000
Houston, TX 77027
Telephone: 713-622-7271
Facsimile: 713-623-8724

Counsel for Plaintiffs Roger Koch, Henry Carranza
and William Steves

_David M. Goldstein_ w/permission BJR                     Date: _10 -23-03_
David M. Goldstein
MARICIC & GOLDSTEIN, LLP
10535 Foothill Blvd., Suite 300
Rancho Cucamongo, CA 91729
Telephone: 909-945-9549
Facsimile: 909-980-5525

Counsel for Plaintiff William Steves

Date: _____

Neil Rothstein
SCOTT & SCOTT, LLC
P.O. Box 192
108 Norwich Avenue
Colchester, CT 06415
Telephone: 1-800-404-7770
Facsimile: 1-860-537-4432

Date: _____

_____
Richard B. Brualdi
Kevin T. O'Brien
THE BRUALDI LAW FIRM
29 Broadway, Suite 1515
New York, New York 10006
Telephone:  212-952-0602
Facsimile:  212-785-1618

Counsel for Plaintiff Harbor Finance Partners


Date: _____

_____
Paul T. Warner
REICH & BINSTOCK
4265 San Felipe, Suite 1000
Houston, TX  77027
Telephone:  713-622-7271
Facsimile:  713-623-8724

Counsel for Plaintiffs Roger Koch, Henry Carranza
and William Steves


Date: _____

_____
David M. Goldstein
MARICIC & GOLDSTEIN, LLP
10535 Foothill Blvd., Suite 300
Rancho Cucamongo, CA  91729
Telephone:  909-945-9549
Facsimile:  909-980-5525

Counsel for Plaintiff William Steves

*Neil Rothstein / as by permission*          Date: 10-22-03
_____
Neil Rothstein
SCOTT & SCOTT, LLC
P.O. Box 192
108 Norwich Avenue
Colchester, CT 06415
Telephone:  1-800-404-7770
Facsimile:  1-860-537-4432