Counsel for Plaintiff
Henry Carranza

Date: 10-22-03

Brian J. Robbins
ROBBINS UMEDA & FINK, LLP
1010 Second Avenue, Suite 2360
San Diego, CA 92101
Telephone: 619-525-3990
Facsimile: 619-525-3991

Counsel for Plaintiff
Roger Koch


Date: _____

Robert Schubert
SCHUBERT & REED LLP
Two Embarcadero Center
Suite 1660
San Francisco, CA 94111
Telephone: 415-788-4220
Facsimile: 415-788-0161

Counsel for Plaintiff
John B. Hensley, Jr.


Date: _____

John G. Emerson
Scott E. Poynter
EMERSON POYNTER LLP
P.O Box 164810
Little Rock, AR 72216-4810
Little Rock, AR 72202-5094
Telephone: 501-907-2555
Facsimile: 501-907-2556

Counsel for Plaintiff
Coffelt Family LLC

528830_1

Counsel for Plaintiff
Henry Carranza

Date: _____

Brian J. Robbins
ROBBINS UMEDA & FINK, LLP
1010 Second Avenue, Suite 2360
San Diego, CA  92101
Telephone:  619-525-3990
Facsimile:  619-525-3991

Counsel for Plaintiff
Roger Koch

Date: _10\22\03_

Robert Schubert
SCHUBERT & REED LLP
Two Embarcadero Center
Suite 1660
San Francisco, CA  94111
Telephone:  415-788-4220
Facsimile:  415-788-0161

Counsel for Plaintiff
John B. Hensley, Jr.

Date: _____

John G. Emerson
Scott E. Poynter
EMERSON POYNTER LLP
P.O Box 164810
Little Rock, AR 72216-4810
Little Rock, AR 72202-5094
Telephone:  501-907-2555
Facsimile:  501-907-2556

Counsel for Plaintiff
Coffelt Family LLC

528824_1

61

Counsel for Plaintiff
Henry Carranza


_____     Date: _____

Brian J. Robbins
ROBBINS UMEDA & FINK, LLP
1010 Second Avenue, Suite 2360
San Diego, CA 92101
Telephone: 619-525-3990
Facsimile: 619-525-3991

Counsel for Plaintiff
Roger Koch


_____     Date: _____

Robert Schubert
SCHUBERT & REED LLP
Two Embarcadero Center
Suite 1660
San Francisco, CA 94111
Telephone: 415-788-4220
Facsimile: 415-788-0161

Counsel for Plaintiff
John B. Hensley, Jr.


_____     Date: 10/23/03

John G. Emerson
Scott E. Poynter
EMERSON POYNTER LLP
P.O Box 164810
Little Rock, AR 72216-4810
Little Rock, AR 72202-5094
Telephone: 501-907-2555
Facsimile: 501-907-2556

Counsel for Plaintiff
Coffelt Family LLC


528824_1                              61

_[signature]_                                Date: 10/22/03

James Baskin
BASKIN LAW FIRM
300 W. 6th Street, Suite 1950
Austin, TX 78701
Telephone: 512-381-6300
Facsimile: 512-322-9280

Counsel for Plaintiff
Henry Duncan Kirkley


_____                     Date: _____

Thomas Bilek
HOEFFNER & BILEK, L.L.P.
440 Louisiana Ste., 720
Houston, TX 77002
Telephone: 713-227-7720
Facsimile: 713-227-9404

Counsel for Plaintiffs
Ann Angleopoulos and Joyce Freeman


_____                     Date: _____

Andrew L. Barroway
Robert B. Weiser
Eric L. Zager
SCHIFFRIN & BARROWAY
Three Bala Plaza East, Suite 400
Bala Cynwyd, PA 19004
Telephone: 610-667-7706
Facsimile: 610-667-7056

Counsel for Plaintiff
Ann Angleopoulos


528824_1                         62

OCT 23 2003 10:38AM    HP LASERJET 3200                                              P. 1
OCT-23-2003 THU 10:01 AM THE BASKIN LAW FIRM         FAX NO. 5123229280              P. C1

Date: _____

James Baskin
BASKIN LAW FIRM
300 W. 6th Street, Suite 1950
Austin, TX 78701
Telephone: 512-381-6300
Facsimile: 512-322-9280

Counsel for Plaintiff
Henry Duncan Kirkley

*Thomas B. Bilek, by*
*[signature] (by permission)*   Date: 10/23/03

Thomas Bilek
HOBFFNER & BILEK, L.L.P.
440 Louisiana Sts., 720
Houston, TX 77002
Telephone: 713-227-7720
Facsimile: 713-227-9404

Counsel for Plaintiffs
Ann Angleopoulos and Joyce Freeman

*Robert B. Weiser, by*
*[signature] (by permission)*   Date: 10/23/07

Andrew U. Barroway
Robert B. Weiser
Eric L. Zager
SCHIFFRIN & BARROWAY
Three Bala Plaza East, Suite 400
Bala Cynwyd, PA 19004
Telephone: 610-667-7706
Facsimile: 610-667-7056

Counsel for Plaintiff
Ann Angleopoulos

*Evan Smith, by*
*DR (by permission)*

Date: 10/23/03

Evan Smith
BRODSKY & SMITH, LLC
240 Mineola Boulevard
Mineola, New York 11501
Telephone: 516-741-4977
Facsimile: 610-667-9029

Counsel for Plaintiff
Joyce Freeman


Date: _____

Pamela G. Smith
David H Kistenbroker
KATTEN MUCHIN ZAVIS &
ROSENMAN
525 West Monroe, Suite 1600
Chicago, IL 60661-3693
Telephone: 312-902-5200
Facsimile: 312-577-4770

Counsel for Defendant William S. Goldberg


Date: _____

Edward B. Horahan, III
DECHERT LLP
1775 I Street, N.W.
Washington, DC 20006-2401
Telephone: 202-261-3300
Facsimile: 202-261-3333

Counsel for Defendant Charles D. Erwin

539394_1

Date: _____

_____
Evan Smith
BRODSKY & SMITH, LLC
240 Mineola Boulevard
Mineola, New York 11501
Telephone: 516-741-4977
Facsimile: 610-667-9029

Counsel for Plaintiff
Joyce Freeman

_____     Date: 10/23/03
Pamela G. Smith
David H Kistenbroker
KATTEN MUCHIN ZAVIS &
ROSENMAN
525 West Monroe, Suite 1600
Chicago, IL 60661-3693
Telephone: 312-902-5200
Facsimile: 312-577-4770

Counsel for Defendant William S. Goldberg

Date: _____

_____
Edward B. Horahan, III
DECHERT LLP
1775 I Street, N.W.
Washington, DC 20006-2401
Telephone: 202-261-3300
Facsimile: 202-261-3333

Counsel for Defendant Charles D. Erwin

_____     Date:  _____
Evan Smith
BRODSKY & SMITH, LLC
240 Mineola Boulevard
Mineola, New York 11501
Telephone:  516-741-4977
Facsimile:  610-667-9029

Counsel for Plaintiff
Joyce Freeman


_____     Date:  _____
Pamela G. Smith
David H Kistenbroker
KATTEN MUCHIN ZAVIS &
ROSENMAN
525 West Monroe, Suite 1600
Chicago, IL  60661-3693
Telephone:  312-902-5200
Facsimile:  312-577-4770

Counsel for Defendant William S. Goldberg


_Edward B Horahan III_ Date:  _10/23/03_
Edward B. Horahan, III
DECHERT LLP
1775 I Street, N.W.
Washington, DC 20006-2401
Telephone:  202-261-3300
Facsimile:  202-261-3333

Counsel for Defendant Charles D. Erwin

Date: 10/29/07

_____
Eric J.R. Nichols
BECK REDDEN & SECREST
One Houston Center
1221 McKinney St., Suite 4500
Houston, TX 77010-2010
Telephone: 713-951-3701
Facsimile: 713-951-3720

Counsel for Defendant Michael J. McGhan

Date: _____

_____
Craig Smyser
SMYSER KAPLAN & VESELKA, L.L.P.
Bank of America Center
700 Louisiana Street, Suite 2300
Houston, TX 77002
Telephone: 713-221-2300
Facsimile: 713-221-2320

Counsel for Defendants Melvyn N. Klein, Ted
Collins, Jr., Robert R. Furgason,
Rene J. Huck and Alvin V. Shoemaker

Date: _____

_____
Harvey G. Brown, Jr.
WRIGHT & BROWN, LLP
Three Riverway, Suite 1660
Houston, TX 77057
Telephone: 713-572-4321
Facsimile: 713-572-4320

Counsel for Karen L. O'Connor and the Estate of Michael
A. O'Connor, Deceased

_____        Date: _____

Eric J.R. Nichols
BECK REDDEN & SECREST
One Houston Center
1221 McKinney St., Suite 4500
Houston, TX 77010-2010
Telephone: 713-951-3701
Facsimile: 713-951-3720

Counsel for Defendant Michael J. McGhan


_____        Date: _10·22·2003_

Craig Smyser
SMYSER KAPLAN & VESELKA, L.L.P.
Bank of America Center
700 Louisiana Street, Suite 2300
Houston, TX 77002
Telephone: 713-221-2300
Facsimile: 713-221-2320

Counsel for Defendants Melvyn N. Klein, Ted
Collins, Jr., Robert R. Furgason,
Rene J. Huck and Alvin V. Shoemaker


_____        Date: _____

Harvey G. Brown, Jr.
WRIGHT & BROWN, LLP
Three Riverway, Suite 1660
Houston, TX 77057
Telephone: 713-572-4321
Facsimile: 713-572-4320

Counsel for Karen L. O'Connor and the Estate of Michael
A. O'Connor, Deceased

Date: _____

Eric J.R. Nichols
BECK REDDEN & SECREST
One Houston Center
1221 McKinney St., Suite 4500
Houston, TX 77010-2010
Telephone:  713-951-3701
Facsimile:  713-951-3720

Counsel for Defendant Michael J. McGhan


Date: _____

Craig Smyser
SMYSER KAPLAN & VESELKA, L.L.P.
Bank of America Center
700 Louisiana Street, Suite 2300
Houston, TX 77002
Telephone:  713-221-2300
Facsimile:  713-221-2320

Counsel for Defendants Melvyn N. Klein, Ted
Collins, Jr., Robert R. Furgason,
Rene J. Huck and Alvin V. Shoemaker


Date: 10/24/2003

Harvey G. Brown, Jr.
WRIGHT & BROWN, LLP
Three Riverway, Suite 1660
Houston, TX  77057
Telephone: 713-572-4321
Facsimile:  713-572-4320

as Independent Executrix of

Counsel for Karen L. O'Connor and the Estate of Michael
A. O'Connor, Deceased

528824_1                                    64

Date: _10.23-03_

Steven J. Rothschild
SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP
Onc Rodney Square, PO Box 636
Wilmington, DE 19801
Telephone: 302-651-3000
Facsimile: 302-651-3001

Counsel for Defendants Victor E. Grijalva, Gordon
T. Hall and I. Jon Brumley

Date: _____

Richard A. Rosen
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: 212-373-3000
Facsimile: 212-757-3990

Counsel for GKH

Date: _____

Steven J. Rothschild
SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP
One Rodney Square, PO Box 636
Wilmington, DE 19801
Telephone: 302-651-3000
Facsimile: 302-651-3001

Counsel for Defendants Victor E. Grijalva, Gordon
T. Hall and I. Jon Brumley

*[signature: Richard A Rosen]*          Date: 10/23/03

Richard A. Rosen
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: 212-373-3000
Facsimile: 212-757-3990

Counsel for GKH

Exhibit A

## HANOVER COMPRESSOR
## CORPORATE GOVERNANCE SETTLEMENT TERM SHEET

Within 30 days after the later of entry of an Order and Final Judgment approving the Securities Settlement or the Derivative Settlement, the Company's Board of Directors will adopt resolutions or amendments to the Company's By-Laws or Articles of Incorporation to ensure adherence to the following Corporate Governance Policies; provided, however, that with respect to any policy affecting the composition of the Board of Directors, the Company, at its sole election, may elect to make any required change through a vote of shareholders at the annual meeting following the next election of directors after the later of entry of an Order and Final Judgment approving the Securities Settlement or the Derivative Settlement; provided further that if any such election is not at least 45 days after the later of entry of an Order and Final Judgment approving the Securities Settlement or the Derivative Settlement, then such changes may be deferred until the next annual election of directors. The Company agrees that the governance provisions included herein will remain in effect for five years or such earlier time as there is a Change in Control of the Company (as defined in the Stipulation) provided, however, that any proposed guideline can be altered or removed if the Board, in good faith and upon the advice of counsel, and after consultation with Plaintiffs' settlement counsel, who agrees to act reasonably and in good faith, determines that such guideline conflicts with or is substantially redundant with any law, regulation or rule (including rules of the New York Stock Exchange or other exchange or quotation system on which the Company's stock is listed or traded (collectively, herein, "NYSE")), or conflicts with or is substantially redundant with any amendment to the Company's articles of incorporation approved by the Company's shareholders.

DC 528638_1

## I.  Board of Directors

**A.**  Director Independence:

- Every director standing for election shall stand for a one-year term.

- No person who has reached the age of 72 shall be eligible for election or re-election as a director of the Company.

- At least a majority of the Board, including the Chairman of the Board, shall be "independent directors," as defined below; provided, however, that within 12 months two-thirds of the Board shall be "independent directors" as defined below.

- To be deemed "independent" in any calendar year, a director would have to satisfy the following qualifications:

  (a)  has not been employed as an elected officer of the Company or its subsidiaries (direct or indirect) or affiliates (defined for purposes of this settlement term sheet as any individual or business entity that owns at least 12.5% of the securities of the Company having ordinary voting power) within the last five calendar years;

  (b)  has not received, during the current calendar year or any of the three immediately preceding calendar years, remuneration, directly or indirectly, other than *de minimis* remuneration, as a result of service as, or compensation paid to an entity affiliated with the director that serves as, (i) an advisor, consultant, or legal counsel to the Company or to a member of the Company's senior management; or (ii) a significant customer or supplier of the Company; provided, however, that any director who was a member of the Board on May 13, 2003 and within the last three years has retired from an entity that would otherwise fit the definition included in (i) or (ii) of this paragraph shall not be rendered non-independent by virtue of remuneration he or she received prior to joining the Board of the Company;

  (c)  has no personal services contract(s) with the Company, or any member of the Company's senior management;

  (d)  is not affiliated with a not-for-profit entity that receives significant contributions from the Company;

  (e)  during the current calendar year or any of the three immediately preceding calendar years, has not had any business relationship with the Company for which the Company has been required to make disclosure under Regulation S-K of the SEC, other than for service as a director or for which relationship no more than *de*

*minimis* remuneration was received in any one such year; provided, however, that the need to disclose any relationship that existed prior to a director joining the Board shall not in and of itself render the director non-independent;

(f)    is not employed by a public company at which an executive officer of the Company serves as a director,

(g)    has not had any of the relationships described in subsections (a)-(f) above, with any affiliate of the Company;

(h)    is not a member of the immediate family of any person described in subsections (a)-(g) above; and

(i)    a director is deemed to have received remuneration (other than remuneration as a director, including remuneration provided to a non-executive Chairman of the Board, Committee Chairman, or Lead Director), directly or indirectly, if remuneration, other than *de minimis* remuneration, was paid by the Company, its subsidiaries (direct or indirect), or affiliates, to any entity in which the director has a beneficial ownership interest of five percent or more, or to an entity by which the director is employed or self-employed other than as a director.  Remuneration is deemed *de minimis* remuneration if such remuneration is $60,000 or less in any calendar year, or if such remuneration is paid to an entity, it (i) did not for the calendar year exceed the lesser of $5 million, or five percent (5%) of the gross revenues of the entity; and (ii) did not directly result in a material; increase in the compensation received by the director from that entity.

•    The Company shall adopt share ownerships guidelines for its directors that are designed to align the interests of the Board with those of shareholders, taking into account that share ownerships requirements must ensure that Board members have a sufficient stake in the Company to share in the financial fortunes of shareholders while also considering the appropriate financial planning and needs of individual directors.  At least 50% of directors' annual fees shall be paid in stock, provided that this amount may be reduced by any restricted stock award granted to a director.

•    The Board shall hold an executive session at least twice each year at which employee directors are not present.

B.    The Nominating Committee, the Compensation Committee and the Audit Committee of the Board of Directors shall each be composed entirely of independent directors.

C.    The offices of Chairman of the Board and Chief Executive Officer shall be held by separate individuals; provided, however, that if in the future the Chairman of



the Board is not-independent then a Lead Director who is independent shall be chosen (as noted below) and under such circumstances the Chairman of the Board and Chief Executive Officer may be held by the same individual.

**D.**   The Compensation Committee shall recommend for review by the Board annual and long-term performance goals for the Chief Executive Officer and evaluate his performance against such goals and other relevant factors such as the performance of the Company's peer companies.

**E.**   During its consideration of the compensation of the Chief Executive Officer, the Compensation Committee shall meet in executive session, without the Chief Executive Officer.

**F.**   The Board's Committees shall have standing authorization, on their own decision, to retain legal and/or other advisors of their choice, which advisors shall report directly to the Committee and whose reasonable fees and expenses shall be paid by the Company.

**G.**   The Board of Directors shall adopt a resolution setting forth the following compensation principles:

>   (a)   Compensation arrangements shall emphasize pay for performance and encourage retention of those employees who enhance the Company's performance;

>   (b)   Compensation arrangements shall promote ownership of the Company stock to align the interests of management and stockholders;

>   (c)   Compensation arrangements shall maintain an appropriate balance between base salary and long-term and annual incentive compensation;

>   (d)   In approving compensation, the recent compensation history of the executive, including special or unusual compensation payments, shall be taken into consideration;

>   (e)   Cash incentive compensation plans for senior executives shall link pay to achievement of financial goals set in advance by the Compensation Committee;

>   (f)   The Nominating and Corporate Governance Committee shall review annually the compensation of directors.

**H.**   The Board of Directors shall adopt a resolution broadening the mandate of the Nomination Committee to make it the Nominating and Corporate Governance Committee, which Committee's functions shall include:

(a)  The Nominating and Corporate Governance Committee, in consultation with the Chairman of the Board, the Lead Director (if the Lead Director is not also the Chairman of the Board) and the Chief Executive Officer, shall be responsible for periodic review and interpretation of the Company's Corporate Governance Policies and the Nominating and Corporate Governance Committee Guidelines, as well as consideration of other corporate governance issues that may, from time to time, merit consideration by the entire Board;

(b)  The Nominating and Corporate Governance Committee, in consultation with the Chairman of the Board, the Lead Director (if the Lead Director is not also the Chairman of the Board) and the Chief Executive Officer, shall consider and make recommendations to the Board concerning the appropriate size and needs of the Board;

(c)  The Nominating and Corporate Governance Committee, in consultation with the Chairman of the Board, the Lead Director (if the Lead Director is not also the Chairman of the Board) and the Chief Executive Officer, shall consider candidates to fill vacant Board positions. Candidates shall be selected for their character, judgment, business experience, time commitment, and acumen. Final approval of a candidate shall be determined by the full Board;

(d)  The Board shall establish performance criteria for itself and evaluate itself and individual members on a regular basis. Board evaluation shall include an assessment of whether the Board has the necessary diversity of skills, backgrounds, experiences, etc., to meet the Company's ongoing needs. Individual director evaluations shall include high standards for in-person attendance at Board and committee meetings and consideration of absences; and

(e)  The Nominating and Corporate Governance Committee shall consider policies relating to the Board and directors, including committee structure and size, share ownership, and retirement and resignation.

I.  The Board shall designate an independent director to act in a lead capacity to coordinate the other independent directors, as described below. The Lead Director may also serve as Chairman of the Board. The Lead Independent Director is responsible for coordinating the activities of the independent directors. In addition to the duties of all Board members (which shall not be limited or diminished by the Lead Independent Director's role), the specific responsibilities of the Lead Independent Director are to advise the Chairman of the Board (if the

Lead Director is not also the Chairman of the Board) or to undertake the following:

(a) determine an appropriate schedule of Board meetings, seeking to ensure that the independent directors can perform their duties responsibly while not interfering with the flow of the Company's operations;

(b) prepare agendas for the Board and Committee meetings;

(c) assess the quality, quantity, and timeliness of the flow of information from the Company's management that is necessary for the independent directors to effectively and responsibly perform their duties, and although the Company's management is responsible for the preparation of materials for the Board, the Lead Independent Director may specifically request the inclusion of certain material;

(d) direct the retention of consultants who report directly to the Board;

(e) ensure that the Governance Committee oversees compliance with and implementation of the Corporate Governance Policies and ensures that the Chairman of the Governance Committee oversees the process to recommend revisions to the Corporate Governance Policies;

(f) coordinate, develop the agenda for, and moderate executive sessions of the Board's independent directors, and act as principal liaison between the independent directors and the Chairman of the Board and/or Chief Executive Officer on sensitive issues;

(g) evaluate, along with the members of the Compensation Committee and the full Board, the Chief Executive Officer's performance and meet with the Chief Executive Officer to discuss the Board's evaluation; and

(h) recommend the membership of the various Board Committees, as well as selection of the Committee Chairs.

J. the Lead Independent Director shall have the authority to retain such counsel or consultants as the Lead Independent Director deems necessary to perform her responsibilities whose reasonable fees and expenses shall be paid by the Company.

K. At each regularly scheduled Board of Directors meeting, the Company's Chief Financial Officer or his designee shall provide a report that includes year-to-date financial results and quarterly or quarter-to-date financial results that include the Company's financial condition and prospects, including but not limited to, as

appropriate under the circumstances, a discussion of all reasons for material increases in expenses and liabilities, if any, and material decreases in revenues and earnings, if any, including any modification or adjustment of reserve accounts or contingencies and management plans for ameliorating or reversing such negative trends and the success or failure of any such plans presented in the past.

## II.    Shareholder Nominated Directors

A.    The Board through its bylaws or otherwise shall establish a procedure for shareholders to nominate one or two directors as detailed below.

    1.    <u>Initial Review Process</u>.  As soon as reasonably practicable after the execution of a Memorandum of Understanding attaching as an exhibit this Corporate Governance Term Sheet, Lead Plaintiffs' Counsel (or their designee), in coordination with the Chairman of the Board of Hanover (or his designee) shall seek to identify potential directors.  In undertaking this process, Lead Plaintiffs' Counsel (or their designee), in coordination with the Chairman of the Board of Hanover (or his designee) shall contact each individual or entity holding more than 1% (but less than 10%) of the Company's common stock for the purpose of requesting that such shareholder or shareholders provide the name or names of candidates for Hanover's Board of Directors.  Lead Plaintiffs' Counsel, in coordination with the Chairman of the Board, shall conduct an appropriate review (including background information and interviews of prospective candidates) and submit the names of the individuals determined to be qualified (as measured against criteria to be established by Hanover's Board of Directors in the exercise of their business judgment) to the Nomination and Corporate Governance Committee for review.

    2.    <u>Initial Selection Process</u>.  Hanover's Nominating and Corporate Governance Committee shall review each of the candidates submitted to it by Lead Plaintiffs' Counsel and select from among them the two determined by the Committee in the exercise of its business judgment as the most appropriate for being added to Hanover's Board.  In the event that two are not selected from those presented to the Nominating and Corporate Governance Committee, Lead Plaintiffs' Counsel shall be advised of this determination, including the reasons for it, and shall be given an opportunity (utilizing the process noted above) to continue to submit qualified candidates until two candidates are identified.  Once two candidates are identified, the Nominating and Corporate Governance Committee shall recommend to the Board, and the Board shall, subject to its fiduciary duties, elect the two candidates.

    3.    <u>Vacancies Among Selected Directors</u>.  Should either or both of the directors selected pursuant to paragraphs (1) and (2) hereof cease to be on the board because of death, resignation, disability or removal, Lead Plaintiffs' Counsel shall have the right to initiate and participate in the

selection of a replacement director or directors following the procedure set forth in paragraphs (1) and (2) above.

4.    <u>Additional Term of Selected Directors</u>.  After their initial election to the Board, the two shareholder nominated directors shall be nominated by the Board at the next annual election at which directors are elected to serve for an additional one year term; provided, however, that in the event either or both of such directors die, resign, or are disabled or removed, or if the Board determines reasonably and in good faith that they should not be nominated, then Lead Plaintiffs' Counsel shall have the right to initiate and participate in the selection of a replacement director or directors following the procedure set forth in paragraphs (1) and (2) above.

5.    <u>Continued Election of Single Shareholder Nominated Director</u>.  After the election of the two shareholder nominated directors as specified in paragraph (4) above, who shall serve for a term of one year, at the next annual election of directors the Board, subject to its fiduciary duties, shall only be obligated to nominate, in its sole discretion, one shareholder nominated director; provided, however, that nothing herein will prevent the Board from nominating both shareholder nominated directors; provided, further that in the event either or both of such directors die, resign, or are disabled or removed, or if the Board determines reasonably and in good faith that they should not be nominated, then Lead Plaintiffs' Counsel shall have the right to initiate and participate in the selection of a replacement director or directors following the procedure set forth in paragraphs (1) and (2) above.

## III.    Internal Audit Function

**A.**    Within six months of final approval of the settlement, the Company shall implement an intensive internal audit function.  The Internal Auditor, who shall be appointed by the Board and who will report to the Audit Committee at least twice a year, shall monitor the Company's internal control environment, revenue recognition practices and its accounting practices.  The Internal Auditor shall be responsible for devising an Internal Audit Plan for each fiscal year which will be presented to the Audit Committee of the Board of Directors.  The Internal Audit Plan shall include assessment of the internal controls environment in order to ensure that appropriate financial reporting procedures are in place and being followed by the Company's employees.  Appropriate Company operations as dictated by the Internal Audit Plan shall be subject to an internal audit review each year.  A written report shall be prepared for each internal audit performed describing the internal audit's findings, opinions and recommendations, if any.  As appropriate, after review and comment from potentially impacted operational departments, these written reports (together with any response from potentially affected departments) shall be directed to the Chief Executive Officer, Chief Operating Officer, Chief Financial Officer, General Counsel, and the Audit Committee for their review, and, if necessary, remedial action.

## IV.   Revenue Recognition Policy

A.    The Chief Executive Officer and Chief Financial Officer shall be responsible for ensuring that the Company's revenue recognition policy conforms to the requirements of Generally Accepted Accounting Principles ("GAAP"), as currently in effect or as amended, and is implemented and utilized throughout the Company.  The Chief Executive Officer and Chief Financial Officer shall report to the Board of Directors or the Audit Committee on a semi-annual basis regarding the implementation and operation of this policy.  The Chief Executive Officer and Chief Financial Officer shall ensure that the Company revenue recognition policy is distributed to each Company employee who records or reviews the recording of revenue.  Any questions regarding that policy, or its application, shall be directed to the Company's Chief Financial Officer, who shall, as appropriate, inform the Chief Executive Officer.

B.    To the extent net income was benefited in the aggregate for a quarter by the modification or adjustment of any reserve or contingency amounts, of more than the one percent of quarterly revenue such modification or adjustment shall be clearly disclosed in the quarterly statements.

## V.   Stock Options

A.    Subject to the adoption of guidelines by the FASB and compliance with any such guidelines, the Company will either fully expense all stock options going forward or shall provided sufficient disclosure in its periodic reports to allow shareholders to determine the expense impact of granted options.

## VI.   Annual Audit of Financial Statements by Independent Auditor

A.    So long as the Company remains a publicly traded company, the Company shall engage an independent auditing firm to perform an annual audit of its financial statements.  The annual audit will encompass, as determined appropriate by the Chief Financial Officer and such independent auditing firm, a review of the financial results reported by each Company office to the Company headquarters.  A written report of the results of each annual audit, including any findings, opinions or recommendations by the independent auditor shall be provided to the Chief Executive Officer, the Chief Operating Officer, the Chief Financial Officer and the Audit Committee of the Board of Directors for review and remedial action, if necessary.

B.    The Company's independent auditing firm may not perform any consulting work for the Company, other than tax consulting work.

C.    The Company shall rotate its independent auditing firm on or before March 1, 2008.

## VII.  Insider Trading Controls

A.    The Board of Directors will appoint an officer of the Company who will be responsible for effecting compliance with the Company's stock trading and market communications policy.  That individual will be designated the "Trading Compliance Officer," and will be responsible for developing (with Board involvement), presenting to the Board for approval, and monitoring and updating (with Board involvement and approval) a comprehensive program (the "Trading Compliance Program") designed to ensure compliance with the Company's trading policies.  The Board will be responsible for direct oversight of the Trading Compliance Program and the Trading Compliance Officer, and the outside director (non-management) members of the Board will have direct access to the Trading Compliance Officer, including the opportunity to meet with the Trading Compliance Officer outside the presence of any other member of management.  At least once yearly, the outside director members of the Board will receive a report from the Trading Compliance Officer outside the presence of any other members of management.

B.    The Trading Compliance Program shall contain provisions with respect to transactions in the Company's securities by directors and officers of the Company which are no less restrictive than those set forth in the New York Stock Exchange Listed Company Manual and shall take into account applicable federal securities laws and regulations.

C.    During the pendency of any Company-funded open market stock buy-back program, no insider shall be permitted to sell stock.

D.    Any corporate director or elected officer who acquires Company shares via option exercise, of options granted after Settlement Approval, must retain 33% of the net shares acquired, after taking into account the sale of shares to pay taxes and the option exercise price, for at least 12 months or such earlier time as the individual ceases to be a director of or an executive officer of the company as a result of death, resignation, termination or other reason.

E.    The Company shall require the public disclosure of all sales or purchases of the Company's stock by any corporate executive officers or directors within 48 hours of such purchase or sale.  Using Company stock or options to secure any loan to an executive officer or director or engaging in a swap, forward contract or other similar contract involving an executive officer's or director's stock shall be considered a "sale" and so disclosed.  The Company will take reasonable steps to ensure that all directors and officers file all trading forms required by them to be filed by the SEC concerning trading by directors, officers, and executive employees of the Company.

F.    Failure to comply with the Company's trading policy will result in appropriate sanctions, including disgorgement by the individual to the Company of all profits from the transaction, termination, or other appropriate disciplinary action.

    **G.**    No corporate officer or director shall directly or indirectly "short" the Company's stock or engage in "put" or call transactions involving the Company's stock.

## VIII.  Stock Options/Change-of-Control

    **A.**    No stock option plan for corporate executives or directors may be adopted without a shareholder vote.  Previously established stock option plans may not be modified to reduce stock option exercise prices or increase the number of shares available under the plan without a shareholder vote.

    **B.**    No corporate executive compensation plan adopted after the date of the final approval of the settlement may include any "change-of-control" definition that does not require the actual sale or merger of the Company to trigger a "change-of-control."  A vote in favor of a merger or sale of the Company shall not constitute a "change-of-control."  Provided, however, that any executive compensation plan may continue to define change of control broadly to include, among other things instances where (i) the Company sells, leases or exchanges all or substantially all of its assets to any other person or entity (other than to an entity wholly owned, directly or indirectly, by the Company), (ii) there is consummated a merger, consolidation, re-capitalization, reorganization or other similar transaction involving the Company, other than one in which more than 50% of the total voting power of the surviving entity outstanding immediately after such transaction is beneficially owned by the holders of the outstanding voting securities of the Company immediately prior to such transaction, with the voting power of each such continuing holder relative to other such continuing holders not substantially altered in the transaction, (iii) the Company is to be dissolved and liquidated, (iv) any person or entity, including a "group" as contemplated by Section 13(d)(3) of the 1934 Act, acquires or gains ownership or control (including, without limitation, power to vote) of more than 50% of the outstanding shares of the Company' voting stock (based upon voting power).

## IX.  Code of Conduct

The Company shall create. maintain and disseminate to employees a code of conduct appropriate in scope and content which shall include, among other things, policies with respect to insider trading and proper documentation and accounting of transactions.