Exhibit B

# PROMISSORY NOTE AND INDENTURE

$6,650,000                                          **[after the Effective Date]**
                                                    Houston, Texas

     For value received, the undersigned, Hanover Compressor Company, a Delaware corporation (the "Company"), promises to pay to the order of the law firm of Milberg Weiss Bershad Hynes & Lerach LLP, or its successor(s), as and solely in the capacity of escrow agent (the "Escrow Agent") with respect to the Settlement Fund as defined in that certain Stipulation and Agreement of Settlement, dated as of _____, 2003, entered into in connection with Civil Action No. H-02-0410 (Consolidated) of the United States District Court for the Southern District of Texas, Houston Division (the "Stipulation"), at its offices at 401 B Street, Suite 1700, San Diego, California, or at such other place as may be designated in writing by the Escrow Agent, in lawful money of the United States of America and in immediately available funds, the principal sum of Six Million Six Hundred Fifty Thousand Dollars ($6,650,000.00), together with interest thereon at an effective annual yield of five percent (5%) from the date of final approval of the Stipulation by the Federal Court, on March 31, 2007 (the "Maturity Date"), on the terms and subject to the conditions contained herein. Interest under this Note shall be calculated on the basis of a 365-day year for the actual number of days elapsed.

     This is the Note referred to in the Stipulation. The Escrow Agent agrees to apply the proceeds of this Note, if any, as provided in Section 9.3 of the Stipulation. Initially capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Stipulation. If there is any inconsistency between the Stipulation and this Note, the terms of this Note shall govern.

     This Note is a general, unsecured obligation of the Company.

     Each of the Company and the Escrow Agent represents and warrants that this Note is intended to constitute an "indenture" as defined in, and for purposes of, the Trust Indenture Act of 1939, as amended (the "TIA"). The Company is issuing this Note in reliance on the exemption contained in Section 304(a)(9) of the TIA and Rule 4a-3 promulgated thereunder; accordingly, this Note is not qualified, or subject to qualification, under the TIA, and the Escrow Agent is not required to be eligible as a trustee for purposes of the TIA. The provisions of Sections 315(a), (c) and (d) of the TIA are incorporated by reference herein and the Escrow Agent agrees to be bound by such provisions as if it were a "trustee" as such term is used therein

     **This Note is not negotiable and is not otherwise transferable, divisible or assignable. Any purported negotiation of this Note and any purported transfer, division or assignment of this Note shall be null and void *ab initio*.**

     If a Change of Control occurs prior to the Maturity Date and the Change of Control Price (as defined below) is (x) $12.25 or more, this Note shall be immediately extinguished and cancelled, and shall no longer evidence an obligation of the Company, or (y) less than $12.25, the entire outstanding principal amount of this Note and all accrued but unpaid interest hereunder shall be due and payable thirty (30) days following the Change of Control.

528382_1

"Change of Control Price" means the Closing Price Per Share on the last Business Day (as defined below) immediately prior to a Change of Control, with all appropriate adjustments made, by and in the good faith judgment of the Company's Board of Directors, to reflect stock splits, reverse stock splits, stock dividends, reclassifications, mergers and reorganizations occurring after May 12, 2003 (but prior to the date of the Change of Control).

"Closing Price Per Share" means, with respect to the Hanover Common Stock, for any day, (i) the last reported sale price regular way (or if no closing sale price is reported, the average of the bid and ask prices or, if more than one in either case, the average of the average bid and average ask prices) on such date as reported in the composite transactions for the principal United States securities exchange on which the Hanover Common Stock is traded or, if the Hanover Common Stock is not listed or admitted to trading on any United States securities exchange or quoted on the Nasdaq National Market, the average of the closing bid prices in the over-the-counter market as furnished by any Nasdaq National Market member firm selected from time to time by the Company for that purpose.

If, before the Maturity Date, the stockholders of the Company approve a transaction the consummation of which would be a Change of Control, but such consummation does not occur prior to the Maturity Date, the Company's obligation to make payment hereunder shall be suspended for a period not to exceed sixty (60) days, during which period interest shall continue to accrue at the annual rate of five percent (5%). If a Change of Control occurs prior to the expiration of such sixty-day period and the Change of Control Price is $12.25 or more, this Note shall be extinguished and cancelled and shall no longer evidence an obligation of the Company; otherwise, the entire outstanding principal amount of this Note and all accrued but unpaid interest hereunder shall be immediately due and payable upon expiration of such sixty-day period.

If at any time prior to the Maturity Date and after the earlier of (x) March 31, 2004 and (y) the first distribution to the Settling Securities Plaintiffs from the Settlement Fund, the average Closing Price Per Share equals or exceeds $12.25, with all appropriate adjustments made by and in the good faith judgment of the Company's Board of Directors to reflect stock splits, reverse stock splits, stock dividends, reclassifications, mergers and reorganizations occurring after May 12, 2003, for any 15 consecutive trading days, this Note shall be extinguished and cancelled and shall no longer evidence an obligation of the Company.

The Company shall give prompt written notice to the Escrow Agent, in form and substance reasonable to allow the Escrow Agent to carry out its duties hereunder, following any Change of Control, stockholder approval of a transaction that would be a Change of Control, adjustment made pursuant to the immediately preceding paragraph and the Company's calculation, certified by its chief financial officer, of the applicable Change of Control Price or average Closing Price Per Share. Any failure by the Company to comply with the obligations imposed on it by this paragraph shall be a default, entitling the Escrow Agent to such remedies as the Federal Court may deem just and equitable under the circumstances.

If payment on this Note becomes due and payable on a day other than a Business Day, the maturity hereof shall be extended to the immediately following Business Day and interest shall continue to accrue during such extension. "Business Day" means any day other than a

Saturday or Sunday or any other day on which banks in Houston, Texas are authorized or required by law, order or proclamation to be closed for business.

The Company and the Escrow Agent each irrevocably agree that all claims in respect of any action or proceeding arising out of or relating to this Note are related to the Actions referred to in the Stipulation, which are pending before the Federal Court and, therefore, irrevocably submit to the jurisdiction of such court in any such action or proceeding arising out of or relating to this Note, and the Company and the Escrow Agent hereby each irrevocably agree that the sole and exclusive venue for the resolution of any such claims in any such action or proceeding shall be in such court.

All rights and obligations hereunder shall be governed by the laws of the State of Texas, without giving effect to principles of conflict of laws that would result in the application of the laws of any other jurisdiction.

HANOVER COMPRESSOR COMPANY

By:_____
    Name:
    Title:


MILBERG WEISS BERSHAD HYNES & LERACH LLP,
as Escrow Agent

By:_____
    Name:
    Title: Partner

Exhibit C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PIRELLI ARMSTRONG TIRE CORPORATION RETIREE MEDICAL BENEFITS TRUST, *et al.*, On Behalf of Themselves and All Others Similarly Situated, | § § § § § | Civil Action No. H-02-0410 (Consolidated) Hon. Vanessa D. Gilmore |
| Plaintiffs, | § § § | CLASS ACTION |
| vs. | § § | |
| HANOVER COMPRESSOR COMPANY, *et al.* | § § | |
| Defendants. | § § | |

NOTICE OF PENDENCY OF CLASS ACTION AND PROPOSED CLASS ACTION
SETTLEMENT

TO:   ALL PERSONS WHO PURCHASED HANOVER SECURITIES BETWEEN
MAY 4, 1999 AND DECEMBER 23, 2002, INCLUSIVE.

PLEASE READ THIS NOTICE CAREFULLY AND COMPLETELY.  YOUR RIGHTS
MAY BE AFFECTED.  YOU MAY BE ENTITLED TO RECEIVE BENEFITS
PURSUANT TO THE PROPOSED SETTLEMENT DESCRIBED HEREIN.  TO
CLAIM YOUR SHARE OF THE SETTLEMENT FUND, YOU MUST SUBMIT A
VALID PROOF OF CLAIM POSTMARKED ON OR BEFORE _____, 2003.

PLEASE FIND THE DEFINITION OF CAPITALIZED TERMS IN THE SECTION OF
THIS NOTICE ENTITLED "DEFINITIONS."

      This Notice has been sent to you pursuant to Rule 23 of the Federal Rules of Civil
Procedure and an Order of the United States District Court for the Southern District of
Texas, Houston Division (the "Court").  The purpose of this Notice is to inform you of
the proposed settlement of this class action litigation (the "Action") and of the hearing to
be held by the Court to consider the fairness, reasonableness, and adequacy of the
settlement.  This Notice is not intended to be, and should not be construed as, an
expression of any opinion by the Court with respect to the truth of the allegations in the
Action or the merits of the claims or defenses asserted.  This Notice describes the rights
you may have in connection with the Settlement and what steps you may take in relation
to the Settlement and this class action litigation.

528766

The proposed Settlement creates a Securities Settlement Fund comprised of cash in the amount of $29,500,000 (which will accrue interest prior to distribution), 5,000,000 shares of Hanover Common Stock, and a note in the amount of $6,650,000, a portion of which will go toward settlement of related shareholder derivative and ERISA class action litigation. The securities to be issued will either be registered or exempt from registration pursuant to §3(a)(10) of the Securities Act of 1933. In addition to the monetary relief, Hanover will implement significant corporate governance changes. Based on Lead Plaintiffs' estimate of the number of shares entitled to participate in the settlement, and the anticipated number of claims to be submitted by members of the Class, the average distribution per share would be approximately $0.80 before deduction of Court-approved fees and expenses. However, your actual recovery from the Securities Settlement Fund will depend on a number of variables including the number of claimants, the number and type of securities you purchased or sold, the timing of your purchases and sales, if any, and the expense of administering the claims process.

Lead Plaintiffs and the Settling Securities Defendants do not agree on the average amount of damages per share that would be recoverable if Lead Plaintiffs were to have prevailed on each claim asserted. The issues on which the parties disagree include (1) the appropriate economic model for determining the amount by which Hanover Securities were allegedly artificially inflated (if at all) during the Class Period; (2) the amount by which Hanover Securities were allegedly artificially inflated (if at all) during the Class Period; (3) the effect of various market forces influencing the trading price of Hanover Securities at various times during the Class Period; (4) the extent to which external factors, such as general market conditions, influenced the trading price of Hanover Securities at various times during the Class Period; (5) the extent to which the various matters that Lead Plaintiffs alleged were materially false or misleading influenced (if at all) the trading price of Hanover Securities at various times during the Class Period; (6) the extent to which the various allegedly adverse material facts that Lead Plaintiffs alleged were omitted influenced (if at all) the trading price of Hanover Securities at various times during the Class Period; and (7) whether the statements made or facts allegedly omitted were false, material or otherwise actionable under the federal securities laws.

The Lead Plaintiffs believe the proposed settlement is an outstanding result and clearly in the best interests of the Class. Because of the risks associated with continuing to litigate and proceeding to trial, there was a danger that Lead Plaintiffs would not have prevailed on any of their claims, in which case the Class would receive nothing. In addition, the amount of damages recoverable by the Class was and is challenged by Settling Securities Defendants. Recoverable damages in this case are limited to losses caused by conduct actionable under applicable law and, had the litigation gone to trial, the Settling Securities Defendants intended to assert that some or all of the losses of Class Members were caused by non-actionable market, industry or general economic factors.

Lead Plaintiffs' counsel have not received any payment for their services in conducting this Action on behalf of the Lead Plaintiffs and the members of the Class, nor

have they been reimbursed for their out-of-pocket expenditures. If the settlement is approved by the Court, counsel for the Lead Plaintiffs will apply to the Court for attorneys' fees of up to 22% of the settlement proceeds and reimbursement of out-of-pocket expenses not to exceed $500,000, to be paid from the Securities Settlement Fund. If the amount requested by counsel is approved by the Court, the average cost per share would be $0.18. The average cost per share could vary depending on the number of shares for which claims are filed.

For further information regarding this settlement you may contact: Rick Nelson, Milberg Weiss Bershad Hynes & Lerach LLP, 401 B Street, Suite 1700, San Diego, California 92101, Telephone (619) 231-1058. Please do not call any representative of Hanover or the Court.


## SETTLEMENT HEARING

A Settlement Hearing will be held on _____ before the Honorable Vanessa D. Gilmore, United States District Court for the Southern District of Texas, Houston Division, 515 Rusk Avenue, Houston, Texas 77002, , to determine: (A) whether the proposed Settlement should be approved by the Court as fair, reasonable and adequate; (B) whether the proposed Plan of Allocation of the Securities Settlement Fund is fair, reasonable and adequate, (C) whether the application by Lead Counsel for an award of attorneys' fees and expenses should be approved, (D) whether the amounts requested by the Lead Plaintiffs pursuant to Section 21D of the Securities Exchange Act of 1934 should be approved, and (E) whether an Order and Final Judgment should be entered finally resolving the Action against the Settling Securities Defendants. *This Settlement does not release or otherwise compromise any claim by any member of the Class against Hanover's auditor, PricewaterhouseCoopers LLP or its partners and employees.*


## DEFINITIONS USED IN THIS NOTICE

1.     "Action" means *Pirelli Armstrong Tire Corporation Retiree Medical Benefits Trust, et al., on Behalf of Themselves and All Others Similarly Situated vs. Hanover Compressor Co.*, Civil Action No. H-02-0410, for which an amended complaint for violation of the federal securities laws was filed against the Settling Securities Defendants on September 5, 2003.

2.     "Authorized Securities Claimant" means any Class Member who files or on whose behalf is filed a timely, valid Proof of Claim and whose claim for recovery is allowed pursuant to the terms of the Settlement.

3.     "Change of Control" means the (i) sale, lease or exchange of all or substantially all of Hanover's assets to any Person (other than a Person wholly owned, directly or indirectly, by Hanover), (ii) consummation of a merger, consolidation, recapitalization, reorganization or other similar transaction involving Hanover, other than one in which

more than 50% of the total voting power of the surviving entity outstanding immediately after such transaction is beneficially owned by the holders of the outstanding voting securities of Hanover immediately prior to such transaction, with the voting power of each such continuing holder relative to all such continuing holders not substantially altered in the transaction, (iii) dissolution or liquidation of Hanover, or (iv) the acquisition or gain by any Person, including a "group" as contemplated by Section 13(d)(3) of the Exchange Act, of ownership or control (including, without limitation, power to vote) of more than 50% of the outstanding shares of Hanover's voting stock (based upon voting power).

4.    "Claims Administrator" means the firm of Gilardi & Company

5.    "Class" or "Securities Plaintiff Class" as context may require, means all Persons who purchased Hanover Securities during the Class Period (including participants in the Plan who, during the Class Period, purchased Hanover Securities in their accounts in the Plan or acquired Hanover Securities through employer matching contributions) other than (a) those individuals who were officers and/or directors of Hanover during the Class Period and (i) their affiliates and (ii) members of their immediate families, (b) officers and/or directors of Hanover at the Effective Date and (i) their affiliates and (ii) members of their immediate families, (c) the Settling Securities Defendants and (i) their affiliates and (ii) members of their immediate families; (d) Schlumberger and its subsidiaries, (e) GKH and its subsidiaries and affiliates, and (f) the Plan.

6.    "Class Period" means the period beginning on May 4, 1999 and ending on December 23, 2002, inclusive.

7.    "Corporate Governance Term Sheet" means the Corporate Governance Settlement Term Sheet, attached to the Stipulation.

8.    "Court" means the United States District Court for the Southern District of Texas.

9.    "Effective Date" means, with respect to the Action, the date of completion of the following: (i) entry of an Order and Final Judgment, which approves in all material respects (x) the dismissal of the claims that have been or could be asserted in the Action and (y) the releases and bar orders provided for in the Stipulation with respect to the Action and (ii) either (x) expiration of the time to appeal or otherwise seek review of the Order and Final Judgment which approves, in all material respects, the settlement of the Actions as provided in the Stipulation, without any appeal having been taken or review sought, or (y) if an appeal is taken or review sought, the expiration of five (5) days after an appeal or review shall have been dismissed or finally determined by the highest court before which appeal or review is sought and which affirms the material terms of such appealed settlement and/or an Order and Final Judgment and is not subject to further judicial review: provided, however, that any award of attorneys' fees or costs shall not be considered a material provision of the Order and Final Judgment and any appeal of any such award shall not delay the Effective Date and any modification as a result of such appeal shall not be considered a modification of a material term.

528766                                4

10. "Final" means no longer subject to further appeal or review, whether by exhaustion of any possible appeal, lapse of time or otherwise.

11. "GKH" means GKH Partners, L.P., GKH Investments, L.P., GKH Private Limited, HGW Associates, L.P., DWL Lumber Corp. and JAKK Holding Corp.

12. "Hanover" means Hanover Compressor Company, a Delaware corporation.

13. "Hanover Common Stock" means the Common Stock, par value $.001 per share, of Hanover.

14. "Hanover Securities" means Hanover Common Stock and any other Hanover equity or debt security or option related to the forgoing.

15. "Lead Counsel" means Milberg Weiss Bershad Hynes and Lerach LLP..

16. "Lead Plaintiffs" means Pirelli Armstrong Tire, Retiree Medical Benefits Trust, Plumbers & Steamfitters, Local 137 Pension Fund, O. Bryant Lewis, 720 Capital Management, LLC and Specialists DPM.

17. "Michael A. O'Connor" means Michael A. O'Connor and his heirs, assigns, legatees, and devisees, the estate of Michael A. O'Connor, deceased, and Karen L. O'Connor as the independent executrix of the estate of Michael A. O'Connor, deceased.

18. "Milberg Weiss" means Milberg Weiss Bershad Hynes and Lerach LLP.

19. "Notice" means this Notice of Pendency of Class Action and Proposed Class Action Settlement.

20. "Order" means the order preliminarily approving the Settlement referred to in this Notice.

21. "Order and Final Judgment" means an order and final judgment, in substantially the form attached to the Stipulation, by the Court dismissing the Action on the merits and with prejudice.

22. "Person" means a natural person, individual, corporation, partnership, limited partnership, limited liability partnership, limited liability company, association, joint venture, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, any business or legal entity, and any spouse, heir, legatee, executor, administrator, predecessor, successor, representative or assign of any of the foregoing.

23. "Plan" means the Hanover Companies Retirement Savings Plan.

24. "Plan of Allocation" the terms and procedures for allocating the Securities Settlement Fund among and distributing it to Authorized Securities Claimants as set forth herein or such other Plan of Allocation as the Court shall approve.

25.    "Proof of Claim" means the Proof of Claim, and release, and Substitute Form W-9, which will be mailed to the Class together with the Notice.

26.    "PwC" means Pricewaterhouse Coopers LLP.

27.    "Related Persons" means with respect to any Person, such Person's present and former parent entities, subsidiaries (direct or indirect) and affiliates, and each of their respective present and former shareholders, general partners, limited partners, affiliates, divisions, joint ventures, partnerships, officers, directors, employees, agents, representatives, attorneys, insurers, excess insurers, experts, advisors, investment advisors, underwriters, fiduciaries, trustees, auditors, accountants, representatives, spouses and immediate family members, and the predecessors, heirs, legatees, successors, assigns, agents, executors, devisees, personal representatives, attorneys, advisors and administrators of any of them, and the predecessors, successors, and assigns of each of the foregoing, and any other Person in which any such Person has or had a controlling interest or which is or was related to or affiliated with such Person, and any trust of which such Person is the settlor or which is for the benefit of such Person or member(s) of his or her family; provided, however, that PwC, and its partners and employees are excluded from this definition and shall not be deemed to be a Related Person of any Settling Party.

28.    "Released Claims" means any and all claims, rights and causes of action, direct and derivative, whether based on federal, state, local, statutory or common law or any other law, rule or regulation, including, without limitation, Unknown Claims, claims under ERISA and claims under federal and state securities laws, that have been, could have been, or in the future might be or could be asserted in any form and in any forum against any of the Released Securities Parties that exist, could have existed, or may arise in connection with or that relate to both (i) the purchase or sale or holding of any Hanover Securities and (ii) any of the transactions (including the registration of securities and any failure to deliver prospectuses), matters or occurrences, or representations or omissions involved, set forth, referred to, or which relate in any way to the facts or allegations contained in or which could have been contained in the Consolidated Securities Action (including all such claims which arise under state or federal securities laws and accrued or are based on acts or omissions occurring during the Class Period). The Released Claims do not apply and do not release any claims of the Securities Plaintiff Class against PriceWaterhouseCoopers LLP or its partners and employees.

29.    "Released Securities Parties" means the Settling Securities Defendants, Karen L. O'Connor, as the Independent Executrix of the Estate of Michael A. O'Connor, Deceased, the Plan, and GKH, and each of their respective Related Persons.

30.    "Securities Actions" means the putative securities class action lawsuits filed below: *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust, et al. v. Hanover Compressor Co., et al.*, Case No. H-02-0410, *McBride v. Hanover Compressor Co.*, Case No. H02-0431, *Koch v. Hanover Compressor Co.*, Case No. H-02-0441, *Schneider v. Hanover Compressor Co.*, Case No. H-02-0491, *Goldstein v. Hanover Compressor Co.*, Case No. H-02-0526, *Noyes v. Hanover Compressor Co.*, No. H-02-0574, *Rocha v. Hanover Compressor Co.*, Case No. 02-0594, *Peck v. Hanover Compressor Co.*, Case

No. H-02-0627, *Mueller v. Hanover Compressor Co.*, Case No. H-02-0652, *Langhoff v. Hanover Compressor Co.*, Case No. H-02-0764, *Fox v. Hanover Compressor Co.*, Case No. H-02-0815, *Rosen v. Goldberg*, Case No. H-02-0959, *Detectives Endowment v. Hanover Compressor Co.*, Case No. H-02-1016, *Montag v. Hanover Compressor Co.*, Case No. H-02-1030 and *Anderson v. Hanover Compressor Co.*, Case No. H-02-2306.

31.     "Securities Settlement Cash Fund" means twenty-nine million five hundred twenty-five thousand dollars ($29,500,000), plus interest accrued thereon which Hanover has caused to be deposited into an interest bearing account.

32.     "Securities Settlement Fund" means the Securities Settlement Cash Fund, Securities Settlement Note and Securities Settlement Stock Fund.

33.     "Securities Settlement Note" means that certain note with a principal amount of six million six hundred fifty thousand dollars ($6,650,000), maturing on March 31, 2007.

34.     "Securities Settlement Stock Fund" means five million (5,000,000) shares of Hanover Common Stock.

35.     "Settlement" means the agreement to settle the claims against the Settling Securities Defendants in the Action as described herein.

36.     "Settlement Hearing" means a hearing that will be held by the Court to consider (A) whether the proposed Settlement should be approved by the Court as fair, reasonable and adequate; (B) whether the proposed Plan of Allocation of the Securities Settlement Fund is fair, reasonable and adequate, (C) whether the application by Lead Counsel for an award of attorneys' fees and expenses should be approved, (D) whether the amounts requested by the Lead Plaintiffs pursuant to Section 21D of the Securities and Exchange Act of 1934 should be approved, and (E) whether an Order and Final Judgment should be entered finally resolving the Action against the Settling Securities Defendants.

37.     "Settling Securities Defendants" means Defendants Hanover, Michael J. McGhan, William S. Goldberg, Michael A. O'Connor, Charles D. Erwin, and GKH.

38.     "Settling Securities Defendants' Counsel" means Hughes Hubbard & Reed LLP, Katten Muchin Zavis & Rosenman, Dechert LLP, Beck Redden & Secrest, Paul Weiss Rifkind, Wharton & Garrison LLP, and Wright & Brown, LLP, Orgain Bell & Tucker, LLP.

39.     "Settling Securities Parties" means the Settling Securities Plaintiffs and the Settling Securities Defendants.

40.     "Settling Securities Plaintiffs" means each and every Class Member other than those Persons who timely and validly exclude themselves from participating in the Settlement.

41.     "Stipulation" means the proposed Stipulation and Settlement, filed with the Court.



42. "Unknown Claims" means, with respect to a Settling Party, any and all claims which such Settling Party does not know or suspect to exist in his, her or its favor at the time such Settling Party releases such claims which, if known by him, her or it, might or would have affected his, her or its decision not to object to such release or not to exclude himself, herself or itself from remaining a Class Member.

BACKGROUND OF THE LITIGATION

On and after February 4, 2002, putative securities class action lawsuits were filed by the plaintiffs named below on behalf of themselves and others similarly situated in the Court, entitled *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust, et al. v. Hanover Compressor Co., et al.*, Case No. H-02-0410, *McBride v. Hanover Compressor Co.*, Case No. H02-0431, *Koch v. Hanover Compressor Co.*, Case No. H-02-0441, *Schneider v. Hanover Compressor Co.*, Case No. H-02-0491, *Goldstein v. Hanover Compressor Co.*, Case No. H-02-0526, *Noyes v. Hanover Compressor Co.*, No. H-02-0574, *Rocha v. Hanover Compressor Co.*, Case No. 02-0594, *Peck v. Hanover Compressor Co.*, Case No. H-02-0627, *Mueller v. Hanover Compressor Co.*, Case No. H-02-0652, *Langhoff v. Hanover Compressor Co.*, Case No. H-02-0764, *Fox v. Hanover Compressor Co.*, Case No. H-02-0815, *Rosen v. Goldberg*, Case No. H-02-0959, *Detectives Endowment v. Hanover Compressor Co.*, Case No. H-02-1016, *Montag v. Hanover Compressor Co.*, Case No. H-02-1030 and *Anderson v. Hanover Compressor Co.*, Case No. H-02-2306.

The Securities Actions generally allege that Hanover and certain of its officers and directors violated the federal securities laws as a result of certain alleged misstatements and omissions included in Hanover's periodic filings with the Securities and Exchange Commission and other public statements in connection with transactions which were restated by Hanover in 2002. Generally, the Securities Actions seek to impose liability and recover damages under Section 10 of the Securities and Exchange Act of 1934 and Rule 10b-5 promulgated thereunder and Sections 11 and 15 of the Securities Act of 1933.

By Order dated March 28, 2002, the Court consolidated the Securities Actions under the caption *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust, et al. v. Hanover Compressor Co., et al.*. By order dated January 6, 2003, the Court appointed Pirelli Armstrong Tire, Retiree Medical Benefits Trust, Plumbers & Steamfitters, Local 137 Pension Fund, O. Bryant Lewis, 720 Capital Management, LLC and Specialists DPM as Lead Plaintiffs and appointed Milberg Weiss Bershad Hynes & Lerach LLP as Lead Counsel in the Action. On _____, 2003 the Court certified the Class for settlement purposes.

Settling Securities Plaintiffs, through Lead Counsel, have conducted and completed extensive research, discovery and investigation during the prosecution of the Action, including without limitation: (1) inspection and analysis of tens of thousands of pages of documents produced by Settling Securities Defendants; (2) review of Hanover's public filings, press releases and other public statements; (3) interviews of numerous

8



Hanover officers and employees; and (4) consultation with accounting and damages consultants.

Settling Securities Parties have engaged in substantial arm's length negotiations in an effort to resolve all claims that have been or could be asserted in the Action, including conducting numerous meetings and telephone conferences where the terms of the agreements detailed herein were extensively debated and negotiated. Lead Counsel believes that the terms and conditions contained in the Settlement are fair, reasonable and adequate.

CLASS RECOVERY UNDER THE PROPOSED SETTLEMENT

The value of the Securities Settlement Fund at the time the Stipulation was executed was approximately $80 million, which amount includes cash, Hanover Common Stocks, as well as a note with a face amount of approximately $6.7 million. The Securities Settlement Fund consists of:

Cash. Cash in the amount of twenty-nine million five hundred thousand dollars ($29,500,000) has been deposited by Hanover, after Hanover obtained funds from its directors and officers insurance carriers, into an interest bearing account. As more fully set forth in the Stipulation, Hanover shall deposit an additional three million dollars ($3,000,000) within five (5) business days after a Change of Control but only if the Change of Control or shareholder approval of the Change of Control occurs prior to twelve (12) months following the Court's final approval of the Settlement. A portion of the cash fund ($1,775,000) is allocated to the settlement of the ERISA Actions which, is also subject to Court approval.

Hanover Stock. Hanover and GKH (a significant Hanover shareholder) have agreed to pay a total of five million (5,000,000) shares of Hanover Common Stock, which had a closing market price of $10.40 per share on Tuesday, October 21, 2003. As more fully set forth in the Stipulation, of the five million (5,000,000) shares, two million five hundred thousand (2,500,000) will be paid by Hanover, and two million five hundred thousand (2,500,000) will be paid by GKH. The value of the Securities Settlement Stock Fund is dependent on the value of Hanover's Common Stock, and accordingly has fluctuated and will continue to fluctuate. The number of shares to be paid to the Securities Settlement Stock Fund is fixed and will not change. Hanover and GKH provide no guarantee as to the value of the shares and will not make any additional payment if the value declines. A portion of the Hanover Common Stock (75,000 shares) may be awarded by the Court to counsel in the Derivative Actions for their attorneys' fees and expenses.

Note. After the Effective Date, Hanover will contribute a Securities Settlement Note to the Settlement with a principal amount of six million six hundred fifty thousand dollars ($6,650,000), maturing on March 31, 2007. As more fully set fort in the Stipulation, the Securities Settlement Note shall accrue interest at an effective annual yield of 5% computed from the date of the Court's final approval of the Settlement. On

the maturity date, the Securities Settlement Note, together with accrued interest, will be paid in the form of cash. If at any time after the earlier of (A) March 31, 2004 and (B) the first distribution to the Settling Securities Plaintiffs, and prior to March 31, 2007, the average of the closing price of Hanover Common Stock equals or exceeds $12.25 for any 15 consecutive trading days, the Securities Settlement Note shall be extinguished. Should there be a Change of Control prior to March 31, 2007, and either (A) the Change of Control results in Hanover's Common Stock being acquired for $12.25 per share or more then the Note is extinguished, or (B) the Change of Control results in Hanover Common Stock being acquired for less than $12.25 per share, then the principal amount of the Securities Settlement Note together with any interest that has accumulated shall be due and payable 30 days following the Change in Control.

Distribution of the Settlement Fund: A portion of the Securities Settlement Fund will be used for certain administrative expenses including the costs of printing and mailing this Notice, the cost of publishing a summary notice, payment of any taxes assessed against the Securities Settlement Fund and costs associated with processing the Proof of Claims submitted. A portion of the Securities Settlement Fund may also be awarded to Lead Plaintiffs for their time and expenses incurred in the prosecution of the Action on behalf of the Class as allowed by Section 21D of the Securities Exchange Act of 1934, as amended. In addition, as explained below, a portion of the Settlement Fund may be awarded by the Court to Lead Counsel as attorneys' fees and for reimbursement of out-of-pocket expenses. The balance of the Securities Settlement Fund will be distributed according to the Plan of Allocation described below to members of the Class who submit valid and timely Proof of Claim forms.

Corporate Governance Changes: In addition to the monetary relief described above, Hanover will implement significant corporate governance enhancements which are set forth in a Corporate Governance Term Sheet. The governance changes include the appointment of two new directors to Hanover's Board of Directors and the adoption of enhanced independence requirements for members of the Board.

SPECIAL NOTICE FOR CLASS MEMBERS WHO ALSO ARE ERISA CLASS MEMBERS

In connection with the Settlement, Settling Securities Defendants have also agreed to settle litigation under the Employee Retirement Income Security Act ("ERISA") arising from many of the same events on which the Securities Actions were based. By Order dated _____, the Court has scheduled a hearing to determine, among other things, whether to certify a class action on behalf of all Persons who, during the Class Period, were participants in the Plan and who, at any time during the Class Period, purchased and/or held Hanover Securities in their accounts in the Plan, and all Persons who hold or held Hanover Securities in the Plan as beneficiaries of any such participants, and whether to approve that proposed settlement. Class members may also be members of the class that has been proposed in the related litigation under ERISA (the "ERISA Class"). All such Persons will also receive a notice describing their rights in connection with that litigation.



A Person may participate in the settlement of both cases if eligible to do so.  In addition, Settling Securities Plaintiffs who are members of the ERISA Class may not be required to file a Proof of Claim in this proceeding in respect to some or all of their holdings.

## STATEMENT OF POTENTIAL OUTCOME OF CASE AND REASONS FOR SETTLEMENT

Lead Counsel has carefully considered and evaluated, among other things, the relevant legal authorities and evidence to support the claims asserted against the Settling Securities Defendants, the time, expense and uncertainties of continued litigation, the likelihood of prevailing on these claims asserted, and the substantial monetary and equitable benefits of the Settlement.  Based on an evaluation of the above factors as well as the substantial arms' length settlement negotiations, the respective abilities of the Settling Securities Defendants to pay any judgment, and the likely appeals and subsequent proceedings necessary if the Settling Securities Plaintiffs were to prevail against the Settling Securities Defendants, Lead Counsel has concluded that the Settlement is fair, reasonable, adequate and in the overall best interests of the Class.

Settling Securities Defendants have denied and continue to deny that they have liability as a result of any or all of the allegations contained in the Action, and are entering into the Settlement in order to eliminate the burden, distraction, expense and uncertainty of further litigation.

## ATTORNEYS' FEES, COSTS AND EXPENSES OF LEAD COUNSEL

Lead Counsel has not received any payment for its work in connection with the Action, nor has it been reimbursed for its out-of-pocket expenses.  The fee requested by Lead Counsel would compensate counsel for their efforts in achieving the Settlement for the benefit of the Class and for their risk in undertaking this representation on a contingency basis.  At the Settlement Hearing or at such other time as the Court may direct, Lead Counsel will apply to the Court for an award of attorneys' fees from the Securities Settlement Fund, in an amount not greater than 22% of the total Securities Settlement Fund, and for reimbursement of its expenses, in an amount of up to $500,000.  Lead Counsel, without further notice to the Class, may subsequently apply to the Court for fees and expenses incurred in connection with administering and distributing the Securities Settlement Fund to Settling Securities Plaintiffs (to be paid from the Securities Settlement Fund).  Lead Counsel shall request that the fees and reimbursement of expenses be paid proportionally from each of the Securities Settlement Note, the Securities Settlement Stock Fund, and the Securities Settlement Cash Fund.

## SETTLEMENT RELEASES AND BAR ORDER

If the Court grants the order approving the proposed Settlement and dismisses the Action with prejudice, the order will contain a "release" and "bar order."  The "release"

and "bar order" are set forth in the Stipulation on file with the Court but are generally summarized here.

Released Securities Parties and their Related Persons will be released from the Released Claims. The release applies to all claims, including Unknown Claims, and the Settling Securities Parties, Settling Securities Defendants' Counsel and Lead Counsel agree to waive the benefits of §1542 of the California Civil Code (and the benefits of any other law (including principles of common law) of any state or territory or other jurisdiction of the United States or of any jurisdiction outside of the United States that is similar, comparable or equivalent to §1542 of the California Civil Code), which provides:

A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

If the proposed Settlement is approved, Released Securities Parties and their Related Persons will also be protected from further liability in connection with other lawsuits, such as the claims currently being pursued against PwC, which relate to the claims being settled in the Action.

PLAN OF ALLOCATION

The Securities Settlement Fund will be distributed to Class Members who submit or are deemed to have submitted a valid and timely Proof of Claim under the Plan of Allocation set forth here.

To the extent there are sufficient funds in the Securities Settlement Fund, each Authorized Securities Claimant will receive an amount equal to the Authorized Securities Claimant's claim, as defined below. If, however, the amount in the Securities Settlement Fund is not sufficient to permit payment of the total claim of each Authorized Securities Claimant, then each Authorized Securities Claimant shall be paid the percentage of the Securities Settlement Fund that each Authorized Securities Claimant's claim bears to the total of the claims of all Authorized Securities Claimants. Payment in this manner shall be deemed conclusive against all Authorized Securities Claimants.

A claim will be calculated as follows:

***Common Stock***

Proposed Allocation:

1.    For shares of Hanover Common Stock that were <u>purchased on or after 5/4/99 but on or before 8/29/01</u>, and

      a)    sold prior to 8/30/01, the claim per share is $0;

      b)    sold from 8/30/01 through 12/31/01, the claim per share is $2.02;

      c)    sold from 1/2/02 through 1/17/02, the claim per share is $3.56;

      d)    sold from 1/18/02 through 1/24/02, the claim per share is $4.90;

      e)    sold from 1/28/02 through 8/1/02, the claim per share is $6.90;

      f)    sold from 8/2/02 through 12/20/02, the claim per share is $7.67;

      g)    retained as of 12/20/02, the claim per share is $7.87.

2.    For shares of Hanover Common Stock that were <u>purchased on or after 8/30/01 but on or before 12/31/01</u>, and

      a)    sold prior to 1/2/02, the claim per share is $0;

      b)    sold from 1/2/02 through 1/17/02, the claim per share is $1.54;

      c)    sold from 1/18/02 through 1/24/02, the claim per share is $2.88;

      d)    sold from 1/28/02 through 8/1/02, the claim per share is $4.88;

      e)    sold from 8/2/02 through 12/20/02, the claim per share is $5.65;

      f)    retained as of 12/20/02, the claim per share is $5.85.

3.    For shares of Hanover Common Stock that were <u>purchased on or after 1/2/02 but on or before 1/17/02</u>, and

      g)    sold prior to 1/18/02, the claim per share is $0;

      h)    sold from 1/18/02 through 1/24/02, the claim per share is  $1.34;

      i)    sold from 1/28/02 through 8/1/02, the claim per share is $3.34;

      j)    sold from 8/02/02 through 12/20/02, the claim per share is $4.11;

k)     retained as of 12/20/02, the claim per share is $4.31.

4.     For shares of Hanover Common Stock that were <u>purchased on or after 1/18/02 but on or before 1/24/02</u>, and

l)     sold prior to 1/28/02, the claim per share is $0;

m)     sold from 1/28/02 through 8/1/02, the claim per share is $2.00;

n)     sold from 8/2/02 through 12/20/02, the claim per share is $2.77;

o)     retained as of 12/20/02, the claim per share is $2.97.

5.     For shares of Hanover Common Stock that were <u>purchased on or after 1/28/02 but on or before 8/1/02</u>, and

p)     sold prior to 8/2/02, the claim per share is $0;

q)     sold from 8/2/02 through 12/20/02, the claim per share is $0.77;

r)     retained as of 12/20/02, the claim per share is $0.97.

6.     For shares of Hanover Common Stock that were <u>purchased on or after 8/2/02 but on or before 12/23/02</u>, and

s)     sold prior to 12/23/02, the claim per share is $0;

t)     retained as of 12/23/02, the claim per share is $0.20.

***Debt Securities***

<u>Proposed Allocation</u>:

1.     For the 4.75% Convertible Senior Notes ("notes") due 3/15/08, that were <u>purchased on or after 5/4/99 but on or before 8/29/01</u>, and

u)     sold prior to 8/30/01, the claim per note is $0;

v)     sold from 8/30/01 through 12/31/01, the claim per note is $22.42;

w)     sold from 1/02/02   through 1/17/02, the claim per note is $34.92;

x)     sold from 1/18/02 through 1/25/02, the claim per not is $37.42;

y)     sold from 1/28/02 through 8/1/02, the claim per note is $61.12;

z)     sold from 8/2/02 through 12/20/02, the claim per note is $141.92;

aa)     retained as of 12/20/02, the claim per note is $143.12.

2. For the 4.75% Convertible Senior Notes due 3/15/08 ("note"), that were <u>purchased on or after 8/30/01 but on or before 12/31/01,</u> and

bb) sold prior to 1/2/02, the claim per note is $0;

cc) sold from 1/2/02 through 1/17/02, the claim per note is $12.50;

dd) sold from 1/18/02 through 1/25/02, the claim per note is $15.00;

ee) sold from 1/28/02 through 8/1/02, the claim per note is $38.70;

ff) sold from 8/2/02 through 12/20/02, the claim per note is $119.50;

gg) retained as of 12/20/02, the claim per note is $120.70.

3. For the 4.75% Convertible Senior Notes due 3/15/08 ("note"), that were <u>purchased on or after 1/02/02 but on or before 1/17/02,</u> and

hh) sold prior to 1/18/02, the claim per note is $0;

ii) sold from 1/18/02 through 1/25/02, the claim per note $2.50;

jj) sold from 1/28/02 through 8/1/02, the claim per note is $26.20;

kk) sold from 8/02/02 through 12/20/02, the claim per note is $107.00;

ll) retained as of 12/20/02, the claim per note is $108.20.

4. For the 4.75% Convertible Senior Notes due 3/15/08 ("note"), that were <u>purchased on or after 1/18/02 but on or before 1/25/02,</u> and

mm) sold prior to 1/28/02, the claim per note is $0;

nn) sold from 1/28/02 through 8/1/02, the claim per note is $23.70 ;

oo) sold from 8/2/02 through 12/20/02, the claim per note is $104.50;

pp) retained as of 12/20/02, the claim per note is $105.70.

5. For the 4.75% Convertible Senior Notes due 3/15/08 ("note"), that were <u>purchased on or after 1/28/02 but on or before 8/1/02,</u> and

qq) sold prior to 8/2/02, the claim per note is $0;

rr) sold from 8/2/02 through 12/20/02, the claim per note is $80.80;

ss) retained as of 12/20/02, the claim per note is $82.00

6.   For the 4.75% Convertible Senior Notes due 3/15/08 ("note"), that were purchased on or after 8/2/02 but on or before 12/23/02, and

tt)   sold prior to 12/23/02, the claim per note is $0;

uu)   retained as of 12/23/02, the claim per note is $1.20

Total recovery for the notes shall not exceed 5% of the Securities Settlement Fund.

### *Call Options*

1.   For Call Options on Hanover Common Stock that were purchased on or after 5/4/99 but on or before 12/23/02 and

A.  sold, exercised or expired prior to 8/30/01, the claim per Call option is $0;

B.  sold, expired or exercised after 8/30/01, the claim per Call option is the difference between the price paid for the Call option less the proceeds received upon the sale or settlement of the Call option.

### *Put Options*

2.   For Put options on Hanover Common Stock that were sold on or after 5/4/99 but on or before 12/23/02, and

A.  Purchased or expired prior to 8/30/01, the claim per Put option is $0;

B.  Purchased or expired after 8/30/01, the claim per Put option is the difference between the amount paid upon settlement of the Put option contract less the initial proceeds received upon the sale of the Put option contract.

Total recovery of options shall not exceed 4% of the Settlement Fund.

For Settling Securities Plaintiffs who held Hanover Securities at the beginning of the Class Period or made multiple purchases or sales during the Class Period, the first-in, first-out ("FIFO") method will be applied to such holdings, purchases and sales for purposes of calculating a claim with respect to each class of Hanover Securities eligible for relief. Under the FIFO method, sales of Hanover Securities during the Class Period will be matched, in chronological order, first against applicable Hanover Securities held at the beginning of the Class Period. The remaining sales of Hanover Securities during the Class Period will then be matched, in chronological order, against Hanover Securities purchased during the Class Period.

A Settling Securities Plaintiff will be eligible to receive a distribution from the Settlement Fund only if that Settling Securities Plaintiff had a net loss, after all profits from transactions in Hanover Securities during the Class Period are subtracted from all

losses. For the purpose of determining net loss, however, Hanover Securities purchased during the Class Period and not sold during the Class Period shall be treated as if sold on December 23, 2002, at the closing price for the applicable Hanover Security.

The Plan of Allocation was developed to provide for an equitable allocation of the Securities Settlement Fund. It is based on a preliminary basic estimate of damages and is not intended to (and does not) reflect an exact method of calculating damages.

The Court has reserved jurisdiction to allow, disallow or adjust the claim of any member of the Class on equitable grounds.

CONDITIONS TO SETTLEMENT

The Stipulation contains conditions, certain of which may be waived by Hanover, which must be satisfied for the parties to be required to complete the Settlement of the Action.

THE RIGHTS OF CLASS MEMBERS AND THE RIGHT TO BE EXCLUDED

If you purchased Hanover Securities during the Class Period then you are a member of the Securities Plaintiff Class. Members of the Securities Plaintiff Class have the following options with respect to the proposed Settlement:

- Remain a Class Member and Obtain Monetary Relief: If you wish to remain a member of the Securities Plaintiff Class, you may share in the Securities Settlement Fund according to the Plan of Allocation. To receive such relief Class members will need to timely and accurately complete the Proof of Claim. However, members of the ERISA Class who are entitled to relief under this Settlement will have their Proof of Claim filed on their behalf by the Plan with respect to Plan shares.

- Request Exclusion from the Class and Receive No Relief Under the Settlement. If you do not wish to be a member of the Securities Plaintiff Class– and therefore not participate in the Settlement– you may request to be excluded. If you exclude yourself, you will not be bound by the Final judgment. However, you will not be entitled to any share of the Securities Settlement Fund. To be excluded, you must send a written letter entitled "Request for Exclusion" which must be postmarked on or before _____ [at least 14 days before the Settlement Hearing] and addressed to:

Hanover Securities Litigation
c/o Gilardi & Co. LLC
P.O. Box 990
Corte Madera, CA 94976-0990

- In order to be valid, your Request for Exclusion must: (a) set forth the name and address and telephone number of the person or entity requesting exclusion; (b) state that such person or entity "requests exclusion from the

528766

17

Class in *Pirelli Armstrong Tire Corporation Retiree Medical Benefits Trust, et al., on Behalf of Themselves and All Others Similarly Situated vs. Hanover Compressor Co.*, Civil Action No. H-02-0410"; the number of shares of Hanover Securities you purchased during the Class Period, and the price(s) paid and, if sold, received therefore, the dates of each such transaction, and (c) be signed by such person or entity. The Request for Exclusion shall not be accepted by the Court or be effective unless it provides all of the foregoing information and is postmarked within the time period stated above.

- DO NOT REQUEST EXCLUSION IF YOU WISH TO SHARE IN THE SECURITIES SETTLEMENT FUND.

- Any Class Member who does not timely submit a properly completed Request for Exclusion shall be bound by the proposed Stipulation, and by any judgment or determination of the Court affecting the Class.

SUBMISSION AND PROCESSING OF PROOFS OF CLAIM

Except as to holdings and transactions in the Plan (discussed below) to receive any distribution from the Securities Settlement Fund, you need to complete and sign the accompanying Proof of Claim and send it by prepaid first class mail postmarked on or before _____, addressed as follows:

Hanover Securities Litigation
c/o Gilardi & Co. LLC
Claims Administrator
P.O. Box 990
Corte Madera, CA 94976-0990

IF YOU DO NOT SUBMIT A PROPER PROOF OF CLAIM FORM, YOU WILL NOT BE ENTITLED TO ANY SHARE OF THE SETTLEMENT CONSIDERATION.

If you purchased or acquired Hanover Common Stock in an account in the Plan (including through employer matching contributions), a Proof of Claim will automatically be submitted on your behalf for these holdings by the Plan. You will still, however, be required to submit a Proof of Claim for purchases of Hanover Common Stock outside the Plan. NOTE: IF YOU ELECT TO BE EXCLUDED FROM THE CLASS THIS EXCLUSION WILL APPLY TO CLAIMS IN RESPECT OF ALL OF YOUR HANOVER SECURITIES PURCHASES, WHETHER WITHIN OR OUTSIDE THE PLAN.

If you are a Class member and you do not properly exclude yourself from the Class, you will be bound by the Stipulation and the Final judgment of the Court dismissing this Action as against the Settling Securities Defendants, even if you do not submit a Proof of Claim. All Proofs of Claims must be submitted by the date specified in this Notice unless such period is extended by order of the Court.

Each Person or entity submitting a Proof of Claim shall be deemed to have submitted to the jurisdiction of the Court with respect to such Person's claim.

SETTLEMENT HEARING AND ABILITY TO APPEAR AND/OR OBJECT TO THE SETTLEMENT

Each Class member who does not submit a timely Request for Exclusion will be represented by Lead Counsel, including at the Settlement Hearing, unless he or she enters an appearance, personally or through counsel of his or her own choice at his or her own expense. You are not required to retain your own counsel, but if you choose to do so, such counsel must file an appearance on your behalf on or before _____, and must serve copies of such appearance on the attorneys listed below.

Class members who comply with the procedures set forth below for making an appearance (personally or through counsel) may be heard to the extent allowed by the Court regarding the fairness, reasonableness, and adequacy of the Settlement, the Plan of Allocation, or the application for an award of attorneys' fees and reimbursement of expenses; provided, however, that in no event shall any Person be heard regarding the Settlement, the Plan of Allocation, or Lead Counsel's application for attorneys' fees and expenses, and in no event shall any paper or brief submitted by any such Person be accepted or considered by the Court, unless, by _____ [at least 14 days before the Settlement Hearing], such Person (A) files with the Clerk of the Court notice of such Person's intention to appear, showing proof of such person's membership in the Class, including the number of Hanover Securities purchased during the Class Period, and providing a statement that indicates the basis for such opposition, along with any documentation in support of such objection, and (B) simultaneously serves copies of such notice, proof, statement, and documentation, together with copies of any other papers or briefs such person files with the Court, in person or by prepaid first-class mail or overnight delivery mail upon Lead Counsel:

Darren J. Robbins
MILBERG WEISS BERSHAD HYNES & LERACH LLP
401 B Street, Suite 1700
San Diego, CA 92101

Counsel for Settling Securities Plaintiffs and Lead Plaintiffs Pirelli Armstrong Tire, Retiree Medical Benefits Trust, Plumbers & Steamfitters, Local 137 pension Fund, O. Bryant Lewis, 720 Capital Management, LLC and Specialists DPM

and on Settling Defendants' Counsel:

Kevin T. Abikoff
HUGHES HUBBARD & REED LLP
1775 I Street, N.W.
Washington, DC 20006-2401

Counsel for Settling Defendant Hanover Compressor Company

NOTICE TO BANKS, BROKERS OR OTHER NOMINEES

If you engaged in purchase and/or sale transactions in Hanover Securities during the
Class Period as a nominee for the benefit of another, you are directed to provide a copy of
this Notice to the beneficial owner of such Hanover Securities, postmarked no later than
10 days after receipt of this Notice or to provide within 10 days of receipt of this Notice
the names and addresses of such persons to the Claims Administrator, in which case the
beneficial owner will be sent a copy of the Notice.  You may obtain reimbursement of
your reasonable and actual out-of-pocket disbursements that would not have been made
but for this request by submitting an itemized statement to: Hanover Securities Litigation,
c/o Gilardi & Co. LLC, P.O. Box 990, Corte Madera, CA  94976-0990, Telephone (800)
447-7657.

FURTHER INFORMATION

Further information regarding the Action and this Notice may be obtained by
contacting Lead Counsel: Rick Nelson, Esq., Milberg Weiss Bershad Hynes & Lerach
LLP, 401 B Street, Suite 1700, San Diego, CA 92101, Telephone (619) 231-1058.

All inquiries regarding this Notice or the Proof of Claim form should be made in
writing to:  Hanover Securities Litigation, c/o Gilardi & Co. LLC, P.O. Box 990, Corte
Madera, CA  94976-0990, or by telephone (800) 447-7657.  All other inquiries regarding
this Action should be made to Lead Counsel at the address listed above.

The pleadings and other records of the Action may be examined and copied at any
time during regular office hours at the Office of the Clerk, United States District Court,
Southern District of Texas, Houston Division, 515 Rusk Avenue, Houston, Texas 77002.

Please Do Not Telephone The Court or The Clerk's Office Regarding This Notice.

DATE:  _____              BY ORDER OF THE COURT
                                UNITED STATES DISTRICT COURT

528766

Exhibit D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PIRELLI ARMSTRONG TIRE CORPORATION RETIREE MEDICAL BENEFITS TRUST, *et al.*, On Behalf of Themselves and All Others Similarly Situated, | § § § § § | Civil Action No. H-02-0410 (Consolidated) Hon. Vanessa D. Gilmore |
| Plaintiffs, | § § § | CLASS ACTION |
| vs. | § § | |
| HANOVER COMPRESSOR COMPANY, *et al.* | § § | |
| Defendants. | § § § | |

NOTICE OF PENDENCY AND SETTLEMENT OF DERIVATIVE ACTIONS

TO:    ALL HOLDERS OF HANOVER COMPRESSOR COMPANY COMMON STOCK AS OF MAY 12, 2003.

PLEASE READ THIS NOTICE CAREFULLY AND COMPLETELY.  YOUR RIGHTS WILL BE AFFECTED.

THIS NOTICE RELATES TO A PROPOSED SETTLEMENT OF SHAREHOLDER DERIVATIVE ACTIONS AND CLAIMS ASSERTED THEREIN. HOLDERS OF HANOVER COMMON STOCK AS OF MAY 12, 2003, ARE ENTITLED TO OBJECT, IF THEY DESIRE, TO THE SETTLEMENT OF THE DERIVATIVE CLAIMS AS DESCRIBED HEREIN.  IF THE COURT APPROVES THE DERIVATIVE SETTLEMENT, YOU WILL BE BARRED FROM PURSUING THE RELEASED DERIVATIVE CLAIMS.

PLEASE FIND THE DEFINITION OF CAPITALIZED TERMS IN THE SECTION OF THIS NOTICE ENTITLED "DEFINITIONS."

PURPOSE OF THIS NOTICE

This Notice is given pursuant to Rule 23.1 of the Federal Rules of Civil Procedure and by an Order of the United States District Court for the Southern District of Texas. The purpose of the Notice is to advise you that shareholder derivative proceedings are now pending in the Court relating to Hanover and that the parties thereto have reached a proposed settlement which would fully, finally and forever resolve these actions on the terms and conditions summarized in this Notice and that a Settlement Hearing will be held on _____ before the Honorable Vanessa D. Gilmore, United States District Court for the Southern District of Texas, Houston Division, 515 Rusk Avenue, Houston, Texas 77002.

THIS IS NOT AN EXPRESSION OF ANY OPINION BY THE COURT AS TO THE MERITS OF ANY CLAIMS OR ANY DEFENSES ASSERTED BY ANY PARTY IN THE ACTION, OR THE FAIRNESS, REASONABLENESS OR ADEQUACY OF THE PROPOSED SETTLEMENT.

DEFINITIONS

1.      "Consolidated Securities Action" means *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust, et al. v. Hanover Compressor Co., et al.*

2.      "Court" means the United States District Court, Southern District of Texas.

3.      "Derivative Actions" means *Harbor Finance Partners v. McGhan, et al.*, Case No. H-02-0761; *Koch v. O'Connor, et al.*, Case No. H-02-1332; *Carranza v. O'Connor, et al.*, Case No. H-02-1430; *Steves v. O'Connor, et al.*, Case No. H-02-1527; and *Hensley v. McGann, et al.*, Case No. H-02-1430, and *Coffelt Family, LLC v. O'Connor, et al.*, No. CA 19410.

4.      "Derivative Settlement" means the agreement to settle the claims against the Settling Derivative Defendants in the Derivative Actions, as described in the Stipulation.

5.      "ERISA Actions" means *Kirkley v. Hanover Co., et al.*, Case No. H-03-1155, *Angleopoulos v. Hanover Compressor Co., et al.*, Case No. H-03-1064 and *Freeman v. Hanover Compressor Co., et al.*, Case No. H-3-1095.

6.      "Federal Derivative Actions" means the Derivative Actions with the exception of *Coffelt Family, LLC v. O'Connor, et al.*, No. CA 19410.

7.      "GKH" means GKH Partners, L.P., GKH Investments, L.P., GKH Private Limited, HGW Associates, L.P., DWL Lumber Corp. and JAKK Holding Corp.

8.      "Hanover" means Hanover Compressor Company, a Delaware corporation.

9.      "Hanover Common Stock" means the common stock, par value $.001 per share, of Hanover.

10.   "Hanover Securities" means Hanover Common Stock and any other Hanover equity or debt security or option related to the forgoing.

11.   "Hanover Shareholders" means all record owners of Hanover Common Stock as of May 12, 2003.

12.   "Notice" means this Notice of Pendency and Settlement of Derivative Actions.

13.   "Michael A. O'Connor" means Michael A. O'Connor and his heirs, assigns, legatees, and devisees, the Estate of Michael A. O'Connor, Deceased, and Karen L. O'Connor as the Independent Executrix of the Estate of Michael A. O'Connor, Deceased.

14.   "Order" means the order preliminarily approving the Derivative Settlement referred to in this Notice.

15.   "Order and Final Judgment" means an order and final judgment, in substantially the form attached to the Stipulation, dismissing the Derivative Actions on the merits and with prejudice.

16.   "Person" means a natural person, individual, corporation, partnership, limited partnership, limited liability partnership, limited liability company, association, joint venture, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, any business or legal entity, and any spouse, heir, legatee, executor, administrator, predecessor, successor, representative or assign of any of the foregoing.

17.   "PwC" means PricewaterhouseCoopers LLP.

18.   "Related Person" means with respect to any Person, such Person's present and former parent entities, subsidiaries (direct or indirect) and affiliates, and each of their respective present and former shareholders, general partners, limited partners, affiliates, divisions, joint ventures, partnerships, officers, directors, employees, agents, representatives, attorneys, insurers, excess insurers, experts, advisors, investment advisors, underwriters, fiduciaries, trustees, auditors, accountants, representatives, spouses and immediate family members, and the predecessors, heirs, legatees, successors, assigns, agents, executors, personal representatives, attorneys, advisors and administrators of any of them, and the predecessors, successors, and assigns of each of the foregoing, and any other Person in which any such Person has or had a controlling interest or which is or was related to or affiliated with such Person, and any trust of which such Person is the settlor or which is for the benefit of such Person or member(s) of his or her family; provided, however, that PricewaterhouseCoopers, LLP is excluded from this definition and shall not be deemed to be a Related Person of any party to the Derivative Settlement, the Securities Settlement, or the ERISA Settlement.

19.   "Released Derivative Claims" means any and all claims, rights and causes of action, whether based on federal, state, local, statutory or common law or any other law, rule or regulation, including, without limitation, unknown claims and claims under ERISA, Delaware statutory and common law, federal and state securities laws and claims under any law governing

fiduciaries or the duties of fiduciaries, that have been, could have been, or in the future might be or could be asserted in any form and in any forum by Hanover Shareholders against any of the Released Derivative Parties on behalf of Hanover that exist, could have existed, or may arise in connection with or that relate to the transactions (including the registration of securities and any failure to deliver prospectuses), matters or occurrences, or representations, or omissions involved, set forth, referred to, or which related in any way to the facts or allegations contained in or which could have been contained in the Derivative Actions, (including, but not limited to, breach of any duty owed to Hanover, including the duty of care, loyalty and good faith).

20.     "Related Persons" means, with respect to any Person, such Person's present and former parent entities, subsidiaries (direct or indirect) and affiliates, and each of their respective present and former shareholders, general partners, limited partners, affiliates, divisions, joint ventures, partnerships, officers, directors, employees, agents, representatives, attorneys, insurers, excess insurers, experts, advisors, investment advisors, underwriters, fiduciaries, trustees, auditors, accountants, representatives, spouses and immediate family members, and the predecessors, heirs, legatees, successors, assigns, agents, executors, devisees, personal representatives, attorneys, advisors and administrators of any of them, and the predecessors, successors, and assigns of each of the foregoing, and any other Person in which any such Person has or had a controlling interest or which is or was related to or affiliated with such Person, and any trust of which such Person is the settlor or which is for the benefit of such Person or member(s) of his or her family; provided, however, that PwC is excluded from this definition and shall not be deemed to be a Related Person of any Settling Party.

21.     "Released Derivative Parties" means the Settling Derivative Defendants, the Plan, GKH, and Schlumberger, and each of their respective Related Persons.

22.     "Securities Actions" means *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust, et al. v. Hanover Compressor Co., et al.*, Case No. H-02-0410, *McBride v. Hanover Compressor Co.*, Case No. H02-0431, *Koch v. Hanover Compressor Co.*, Case No. H-02-0441, *Schneider v. Hanover Compressor Co.*, Case No. H-02-0491, *Goldstein v. Hanover Compressor Co.*, Case No. H-02-0526, *Noyes v. Hanover Compressor Co.*, No. H-02-0574, *Rocha v. Hanover Compressor Co.*, Case No. 02-0594, *Peck v. Hanover Compressor Co.*, Case No. H-02-0627, *Mueller v. Hanover Compressor Co.*, Case No. H-02-0652, *Langhoff v. Hanover Compressor Co.*, Case No. H-02-0764, *Fox v. Hanover Compressor Co.*, Case No. H-02-0815, *Rosen v. Goldberg*, Case No. H-02-0959, *Detectives Endowment v. Hanover Compressor Co.*, Case No. H-02-1016, *Montag v. Hanover Compressor Co.*, Case No. H-02-1030 and *Anderson v. Hanover Compressor Co.*, Case No. H-02-2306.

23.     "Securities Settlement" means the settlement of the Consolidated Securities Action on and subject to the terms and conditions set forth in the Stipulation.

24.     "Settlement Hearing" means a hearing that will be held by the Court to consider whether the proposed Derivative Settlement should be approved by the Court as fair, reasonable and adequate, and whether the Order and Final Judgment should be entered.

25.     "Settling Derivative Defendants" means Hanover (as a nominal defendant), Michael A. O'Connor, William S. Goldberg, Melvyn N. Klein, Michael J. McGhan, Ted Collins, Jr., Robert R. Furgason, Rene J. Huck, Alvin V. Shoemaker, Victor E. Grijalva, Gordon T. Hall I, Jon Brumley and Charles D. Erwin.

26.     "Settling Derivative Defendants' Counsel" means Katten, Muchin, Zavis & Rosenman, Dechert LLP, Beck, Redden & Secrest, Smyser, Kaplan & Veselka, LLP, Wright & Brown, LLP, Orgain Bell & Tucker, LLP, Skadden, Arps, Slate, Meagher & Flom, LLP, and Hughes Hubbard & Reed LLP.

27.     "Settling Derivative Plaintiffs" means the plaintiffs who brought the Derivative Actions.

28.     "Settling Derivative Parties" means settling Derivative Plaintiffs and settling Derivative Defendants.

29.     "State Derivative Action" means *Coffelt Family, LLC v. O'Connor, et al.,* No. CA 19410.

30.     "Stipulation" means the proposed Stipulation and Settlement, filed with the Court, which would settle the Derivative Actions.

31.     "Unknown Claims" means, with respect to a Settling Party, any and all claims which such Settling Party does not know or suspect to exist in his, her or its favor at the time such Settling Party releases such claims which, if known by him, her or it, might or would have affected his, her or its decision not to object to such release.

## BACKGROUND OF THE DERIVATIVE LITIGATION

On or after April 10, 2002, the Federal Derivative Actions were filed in or removed to the Court on behalf of Hanover.  On February 15, 2002, an additional derivative action, *Coffelt Family, LLC v. O'Connor, et al.,* No. CA 19410 was filed in Delaware Chancery Court on behalf of Hanover.

The Derivative Actions, which were filed by certain Hanover Shareholders on behalf of Hanover, alleged, among other things, that Hanover's directors breached their fiduciary duties to shareholders in connection with transactions which were restated by Hanover in 2002.  By way of relief, the Derivative Actions sought, on behalf of Hanover, of damages, interest and costs, including legal fees.

On August 19, 2002 and August 26, 2002, the Federal Derivative Actions were consolidated into the *Harbor Finance Partners* action (the "Consolidated Derivative Action"). By Order dated October 2, 2003 the Federal Court consolidated the Consolidated Derivative Action into the Consolidated Securities Actions captioned above.

Class action litigation also was initiated by various parties alleging violations of the federal securities laws and the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), in connection with many of the same events that are the subject of the Derivative

Actions. Counsel for plaintiffs in the Derivative Actions, along with counsel for the plaintiffs in the Consolidated Securities Actions and the ERISA Actions, have conducted and completed extensive research, discovery and investigation, including without limitation: (1) inspection and analysis of tens of thousands of pages of documents produced by Settling Derivative Defendants; (2) review of Hanover's public filings, press releases and other public statements; (3) interviews of numerous Hanover officers and employees; and (4) consultation with accounting and damages consultants.

Counsel for the plaintiffs in the Derivative Actions and Settling Derivative Defendants have reached an agreement to settle the Derivative Actions on terms that are summarized herein. Counsel for plaintiffs in the Derivative Actions have engaged in substantial arm's length negotiations in an effort to resolve all claims that have been or could be asserted in the Derivative Actions, including conducting numerous meetings and conferences where the terms of the agreements detailed herein were extensively debated and negotiated. The proposed Derivative Settlement, along with separate settlements of the Consolidated Securities Action and the ERISA Actions, are before the Court for approval.

TERMS OF THE DERIVATIVE SETTLEMENT

The Derivative Settlement calls for Hanover to adopt significant governance reforms intended to improve the responsiveness and accountability of the corporation's board of directors and officers to the interests of shareholders. Under the terms of the Settlement, Hanover's Board of Directors will adopt resolutions or amendments to Hanover's By-Laws or Articles of Incorporation to ensure adherence to such corporate governance enhancements. These modifications include a process for the election of two new directors to Hanover's Board, enhanced director independence, implementation of an internal audit function, enhanced insider trading controls, and improvements to Hanover's code of conduct. These enhancements are detailed in the Corporate Governance Term Sheet, which is attached to this Notice as Exhibit A. Furthermore, the Settling Derivative Plaintiffs, through Settling Derivative Plaintiffs' Counsel were a substantial factor in obtaining at least $26.5 million from Hanover's insurance carriers to be used towards the settlement and the contribution of 2.5 million shares of Hanover stock from GKH to the settlement.

PLAINTIFFS' COUNSEL'S POSITION CONCERNING SETTLEMENT

Counsel for plaintiffs in the Derivative Actions have carefully considered and evaluated, among other things, the interests of Hanover in resolving the Derivative Actions with as little disruption to the corporation's affairs as is consistent with securing relief for Hanover Shareholders, the relevant legal authorities and evidence to support the claims asserted against the Settling Derivative Defendants, the likelihood of prevailing on those claims, the Settling Derivative Defendants' respective abilities to pay any judgment, and the likely appeals and subsequent proceedings necessary if the Settling Derivative Plaintiffs were to prevail against the Settling Derivative Defendants. They have concluded that the proposed Derivative Settlement is fair, reasonable, adequate and in the overall best interests of Hanover and its stockholders.



DEFENDANTS' POSITION CONCERNING SETTLEMENT

Settling Derivative Defendants have denied and continue to deny that they have liability as a result of any or all of the allegations contained in the Derivative Actions, and are entering into the Derivative Settlement in order to eliminate the burden, distraction, expense and uncertainty of further litigation, and to undertake structural improvements in corporate governance that may benefit the corporation's stockholders.

ATTORNEYS' FEES AND EXPENSES OF SETTLING DERIVATIVE PLAINTIFFS' COUNSEL

Counsel for the Settling Derivative Plaintiffs have not received any payment for work in connection with the Derivative Actions, nor been reimbursed for out-of-pocket expenses. Settling Derivative Plaintiffs, through their counsel, participated in the settlement negotiations relating to the Derivative Actions and were a significant factor in obtaining contribution by Hanover's insurance carriers and GKH toward the settlements of the Securities and ERISA Actions as well as substantial corporate governance enhancements. Within three (3) business days after preliminary approval of the Derivative Settlement, Hanover shall pay seventy five thousand dollars ($75,000) to counsel for the plaintiffs in the derivative action, *Koch v. O'Connor, et al.*, as payment for providing the appropriate court-directed individual notice to the Hanover Shareholders entitled to receive such notice, as well as any other required or appropriate notice to be made by publication or otherwise. If the proposed Derivative Settlement is approved by the Court, counsel to the Settling Derivative Plaintiffs will be paid the sum of $700,000 (excluding the costs of notice) and 75,000 shares of Hanover Common Stock.

SETTLEMENT RELEASES AND BAR ORDER

If the Court grants the order approving the proposed Derivative Settlement and dismisses the Federal Derivative Actions with prejudice, the order will contain a "release" and "bar order" (the State Derivative Action will be dismissed in the Court of Chancery for the State of Delaware in and for New Castle County). The "release" and "bar order" are set forth in the Stipulation on file with the Court but are generally summarized here. Released Derivative Parties and their Related Persons will be released from a broad range of claims by Hanover Shareholders and their Related Persons. The release applies to all claims, including Unknown Claims, and the Settling Derivative Parties, Settling Derivative Defendants' Counsel and counsel to the Settling Derivative Plaintiffs agree to waive the benefits of §1542 of the California Civil Code (and the benefits of any other law (including principles of common law) of any state or territory or other jurisdiction of the United States or of any jurisdiction outside of the United States that is similar, comparable or equivalent to §1542 of the California Civil Code), which provides:

A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

If the proposed Derivative Settlement is approved, Released Derivative Defendants and their Related Persons will also be protected from further liability in connection with other potential lawsuits relating to the claims being settled in the Derivative Actions.

If the proposed Derivative Settlement is approved by the Court, all Hanover Shareholders will automatically participate in the Settlement benefits. All Hanover Shareholders likewise will be bound by the terms of the Derivative Settlement, and their ability to pursue claims individually will be eliminated.

CONDITIONS TO SETTLEMENT

The Stipulation contains conditions, certain of which may be waived by Hanover, which must be satisfied for the parties to be required to complete the Derivative Settlement.

SETTLEMENT HEARING AND ABILITY TO OBJECT TO THE SETTLEMENT

Hanover Shareholders who comply with the procedures set forth below for making an appearance (personally or through counsel) may be heard to the extent allowed by the Court in regarding the fairness, reasonableness, and adequacy of the Derivative Settlement, or the application for an award of attorneys' fees and reimbursement of expenses. You are not required to retain your own counsel, but if you choose to do so it will be at your own expense. In no event shall any person be heard in opposition to the Settlement, or regarding application for an award of attorneys' fees by counsel to Derivative Plaintiffs, and in no event shall any paper or brief submitted by any such person be accepted or considered by the Court, unless by _____ [at least 14 days before the Settlement Hearing] such person (A) files with the Clerk of the Court notice of such person's intention to appear, showing proof that such person is a Hanover Shareholder, including the number of Hanover Common Stock held, and providing a statement that indicates the basis for such appearance, along with any documentation in support of any objection, and (B) simultaneously serves copies of such notice, proof, statement, and documentation, together with copies of any other papers or briefs such person files with the Court, in person or by mail upon:

Kevin T. Abikoff
HUGHES HUBBARD & REED LLP
1775 I Street, N.W.
Washington, D.C. 20006-2401

Counsel for Hanover Compressor Company

Paul T. Warner
REICH & BINSTOCK
4265 San Felipe, Suite 1000
Houston, TX 77027
Telephone: 713-622-7271
Facsimile: 713-623-8124



Richard B. Brualdi
THE BRUALDI LAW FIRM
29 Broadway, Suite 1515
New York, New York 10006
Telephone: 212-952-0602
Facsimile: 212-785-1618

Brian J. Robbins
ROBBINS UMEDA & FINK, LLP
1010 Second Avenue, Suite 2360
San Diego, CA 92101
Telephone: 619-525-3990
Facsimile: 619-525-3991

Counsel for Settling Derivative Plaintiffs


## SPECIAL NOTICE FOR HANOVER STOCKHOLDERS WHO ALSO ARE MEMBERS OF THE CLASSES IN THE SECURITIES AND ERISA LITIGATION

In addition to the Derivative Settlement, Settling Derivative Defendants and others have also agreed to settle the Consolidated Securities and ERISA Actions. By Order dated _____, the Court has scheduled a hearing to determine, among other things, whether those proposed settlements are fair, reasonable and adequate.

Hanover Shareholders receiving this Notice may also be eligible to participate in the Securities Settlement and/or the ERISA Settlement, and, if so, you will receive a notice describing your rights and obligations in connection with each proposed settlement.

## NOTICE TO BANKS, BROKERS OR OTHER NOMINEES

If you held Hanover Common Stock on May 12, 2003 as a nominee for the benefit of another, you are directed to provide a copy of this Notice to the beneficial owner of the publicly traded securities, postmarked no later than ten (10) days after receipt of this Notice or to provide within ten (10) days of receipt of this Notice the names and addresses of such persons to the Claims Administrator, in which case the beneficial owner will be sent a copy of the Notice. You may obtain reimbursement of your reasonable and actual out-of-pocket disbursements that would not have been made but for this request by submitting an itemized statement to: Hanover Derivative Litigation, c/o Gilardi & Co. LLC, P.O. Box 990, Corte Madera, CA 94976-0990, Telephone (800) 447-7657.

## FURTHER INFORMATION

Further information regarding the Action and this Notice may be obtained by contacting counsel to the Settling Derivative Plaintiffs: Paul T. Warner, Esq., Reich & Binstock, 4265 San Felipe, Suite 1000 Houston, TX 77027 Telephone: 713/622-7271; Richard B. Brualdi, Esq., The Brualdi Law Firm, 29 Broadway, Suite 1515 New York, New York 10006 Telephone: 212/952-0602; or Brian J. Robbins, Esq., Robbins Umeda & Fink, LLP, 1010 Second Avenue, Suite 2360, San Diego, CA 92101 Telephone: 619/525-3990.

All inquiries regarding this Notice should be made in writing to: Hanover Derivative Litigation, c/o Gilardi & Co. LLC, P.O. Box 990, Corte Madera, CA 94976-0990, or by telephone (800) 447-7657.

The pleadings and other records of the Action may be examined and copied at any time during regular office hours at the Office of the Clerk, United States District Court, Southern District of Texas, Houston Division, 515 Rusk Avenue, Houston, Texas 77002.

**Please Do Not Telephone The Court or The Clerk's Office Regarding This Notice.**

DATE:                          BY ORDER OF THE COURT
                               UNITED STATES DISTRICT COURT

A

Exhibit A

## HANOVER COMPRESSOR
## CORPORATE GOVERNANCE SETTLEMENT TERM SHEET

Within 30 days after the later of entry of an Order and Final Judgment approving the Securities Settlement or the Derivative Settlement, the Company's Board of Directors will adopt resolutions or amendments to the Company's By-Laws or Articles of Incorporation to ensure adherence to the following Corporate Governance Policies; provided, however, that with respect to any policy affecting the composition of the Board of Directors, the Company, at its sole election, may elect to make any required change through a vote of shareholders at the annual meeting following the next election of directors after the later of entry of an Order and Final Judgment approving the Securities Settlement or the Derivative Settlement; provided further that if any such election is not at least 45 days after the later of entry of an Order and Final Judgment approving the Securities Settlement or the Derivative Settlement, then such changes may be deferred until the next annual election of directors. The Company agrees that the governance provisions included herein will remain in effect for five years or such earlier time as there is a Change in Control of the Company (as defined in the Stipulation) provided, however, that any proposed guideline can be altered or removed if the Board, in good faith and upon the advice of counsel, and after consultation with Plaintiffs' settlement counsel, who agrees to act reasonably and in good faith, determines that such guideline conflicts with or is substantially redundant with any law, regulation or rule (including rules of the New York Stock Exchange or other exchange or quotation system on which the Company's stock is listed or traded (collectively, herein, "NYSE")), or conflicts with or is substantially redundant with any amendment to the Company's articles of incorporation approved by the Company's shareholders.

I.      Board of Directors

      **A.**      Director Independence:

- Every director standing for election shall stand for a one-year term.

- No person who has reached the age of 72 shall be eligible for election or re-election as a director of the Company.

- At least a majority of the Board, including the Chairman of the Board, shall be "independent directors," as defined below; provided, however, that within 12 months two-thirds of the Board shall be "independent directors" as defined below.

- To be deemed "independent" in any calendar year, a director would have to satisfy the following qualifications:

        (a)      has not been employed as an elected officer of the Company or its subsidiaries (direct or indirect) or affiliates (defined for purposes

of this settlement term sheet as any individual or business entity that owns at least 12.5% of the securities of the Company having ordinary voting power) within the last five calendar years;

(b) has not received, during the current calendar year or any of the three immediately preceding calendar years, remuneration, directly or indirectly, other than *de minimis* remuneration, as a result of service as, or compensation paid to an entity affiliated with the director that serves as, (i) an advisor, consultant, or legal counsel to the Company or to a member of the Company's senior management; or (ii) a significant customer or supplier of the Company; provided, however, that any director who was a member of the Board on May 13, 2003 and within the last three years has retired from an entity that would otherwise fit the definition included in (i) or (ii) of this paragraph shall not be rendered non-independent by virtue of remuneration he or she received prior to joining the Board of the Company;

(c) has no personal services contract(s) with the Company, or any member of the Company's senior management;

(d) is not affiliated with a not-for-profit entity that receives significant contributions from the Company;

(e) during the current calendar year or any of the three immediately preceding calendar years, has not had any business relationship with the Company for which the Company has been required to make disclosure under Regulation S-K of the SEC, other than for service as a director or for which relationship no more than *de minimis* remuneration was received in any one such year; provided, however, that the need to disclose any relationship that existed prior to a director joining the Board shall not in and of itself render the director non-independent;

(f) is not employed by a public company at which an executive officer of the Company serves as a director,

(g) has not had any of the relationships described in subsections (a)-(f) above, with any affiliate of the Company;

(h) is not a member of the immediate family of any person described in subsections (a)-(g) above; and

(i) a director is deemed to have received remuneration (other than remuneration as a director, including remuneration provided to a non-executive Chairman of the Board, Committee Chairman, or Lead Director), directly or indirectly, if remuneration, other than

*de minimis* remuneration, was paid by the Company, its subsidiaries (direct or indirect), or affiliates, to any entity in which the director has a beneficial ownership interest of five percent or more, or to an entity by which the director is employed or self-employed other than as a director.  Remuneration is deemed *de minimis* remuneration if such remuneration is $60,000 or less in any calendar year, or if such remuneration is paid to an entity, it (i) did not for the calendar year exceed the lesser of $5 million, or five percent (5%) of the gross revenues of the entity; and (ii) did not directly result in a material; increase in the compensation received by the director from that entity.

- The Company shall adopt share ownerships guidelines for its directors that are designed to align the interests of the Board with those of shareholders, taking into account that share ownerships requirements must ensure that Board members have a sufficient stake in the Company to share in the financial fortunes of shareholders while also considering the appropriate financial planning and needs of individual directors.  At least 50% of directors' annual fees shall be paid in stock, provided that this amount may be reduced by any restricted stock award granted to a director.

- The Board shall hold an executive session at least twice each year at which employee directors are not present.

B.  The Nominating Committee, the Compensation Committee and the Audit Committee of the Board of Directors shall each be composed entirely of independent directors.

C.  The offices of Chairman of the Board and Chief Executive Officer shall be held by separate individuals; provided, however, that if in the future the Chairman of the Board is not-independent then a Lead Director who is independent shall be chosen (as noted below) and under such circumstances the Chairman of the Board and Chief Executive Officer may be held by the same individual.

D.  The Compensation Committee shall recommend for review by the Board annual and long-term performance goals for the Chief Executive Officer and evaluate his performance against such goals and other relevant factors such as the performance of the Company's peer companies.

E.  During its consideration of the compensation of the Chief Executive Officer, the Compensation Committee shall meet in executive session, without the Chief Executive Officer.

F.  The Board's Committees shall have standing authorization, on their own decision, to retain legal and/or other advisors of their choice, which advisors shall report