

ORIGINAL

United States Courts
Southern District of Texas
FILED

JAN 3 0 2004

Michael N. Milby, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PIRELLI ARMSTRONG TIRE CORPORATION RETIREE MEDICAL BENEFITS TRUST, *et al.*, On Behalf of Themselves and All Others Similarly Situated, | § § § § § | Civil Action No. H-02-0410 **(Consolidated)** Hon. Vanessa D. Gilmore |
| Plaintiffs, | § § | CLASS ACTION |
| vs. | § § | |
| HANOVER COMPRESSOR COMPANY, *et al.*, | § § § | |
| Defendants. | § § § | |

## DECLARATION OF KEVIN T. ABIKOFF, ESQUIRE

KEVIN T. ABIKOFF, ESQUIRE states the following:

1.      I am a partner in the law firm of Hughes Hubbard & Reed LLP, and am a resident in that Firm's Washington, D.C. Office. I make this Declaration in connection with the Brief of Hanover Compressor Company In Support of Unopposed Motion For Final Approval Of Global Settlement (the "Brief"), on the basis of my own knowledge and belief, and based upon my professional judgment as an attorney. If called upon, I would testify that the following facts are true and correct. The title headings herein are for the convenience of the reader and are not part of this declaration.

2.      I have been practicing law since 1988 and am a member in good standing of the bars of the States of Texas, Pennsylvania and of the District of Columbia, as well as the bar of the Southern District of Texas. I have been outside counsel to Hanover Compressor Company ("Hanover" or the "Company") since May 2002, in connection with the

DC 531753_3

147

above-captioned litigation and related matters generally arising out of the restatements by Hanover of certain of its financial statements for fiscal years 1999, 2000, and 2001. In that capacity, I have become familiar with the circumstances surrounding the restatements, including the public statements and regulatory filings made by Hanover in connection therewith. I am also familiar with Hanover's conduct with regard to the above-captioned litigtation, including the development of legal and factual defenses to the various claims made in the litigation. I have also been primarily responsible for representing Hanover in its dealings with its directors' and officers' insurance carriers, co-counsel for other defendants, and counsel for plaintiffs. This work has included, without limitation, negotiating with plaintiffs' counsel regarding the terms of the settlement that is presently before the Court for approval, including the negotiation and drafting of the memoranda of understanding and the October 23, 2003 Stipulation and Agreement of Settlement (the "Stipulation").[1] I have also supervised for Hanover the discovery process that preceded execution of the Stipulation and supervised other attorneys who were involved in various of these matters.

Hanover and Its Growth

3. Hanover is a leading provider of full service natural gas compression and of natural gas compression services, equipment, and financing for natural gas handling applications. Founded in 1990 and a public company since 1997, Hanover has grown rapidly, most notably through acquisitions of small regional companies and large divisions of multinational companies.

---

[1] Capitalized terms used in this Declaration have the same meaning as that given to them in the Stipulation, which is attached hereto as Exhibit A. Certain definitions are spelled out for the convenient reference of the reader.

4.     Hanover's growth was pronounced in the years 2000 and 2001, when the Company tripled in size from $753 million in assets and $318 million in revenues in 1999 to $2.3 billion in assets and $1 billion in revenues in 2001.  *See* Exhibit M (Hanover Form 10-K/A for the year-ended December 31, 2001, filed November 21, 2002).

The Restatements

5.     On January 28, 2002 and February 26, 2002, Hanover issued press releases announcing the review and restatement of certain financial transactions.  Attached hereto as Exhibits B and C are true and correct copies of these press releases.

6.     On April 16, 2002, Hanover restated certain financial transactions through Form 10-Q/A filings and Form 10-K/A filings with the Securities and Exchange Commission.  True and correct copies of these filings are attached hereto as Exhibits D (Hanover Form 10-Q/A for the quarter-ended September 30, 2000, filed April 16, 2002), E (Hanover Form 10-K/A for the year-ended December 31, 2000, filed April 16, 2002), F (Hanover Form 10-Q/A for the quarter-ended March 31, 2001, filed April 16, 2002), G (Hanover Form 10-Q/A for the quarter-ended June 30, 2001, filed April 16, 2002), H (Hanover Form 10-Q/A for the quarter-ended September 30, 2001, filed April 16, 2002).

7.     Subsequent to the April 2002 S.E.C. filings, other additional information came to light suggesting a need to further study the accounting of certain transactions.  In the months that followed, Hanover (through certain of its independent directors, its newly hired General Counsel and outside legal counsel) completed an extensive review of certain transactions recorded during 1999, 2000, and 2001, including those transactions restated by the Company in April 2002.

8.     As a result of this investigation, Hanover announced the further restatement of certain transactions in press releases dated August 5 and October 23, 2002. Attached hereto as Exhibits I and J are true and correct copies of these press releases. Hanover restated these transactions in a Form 10-K/A-2 filing on November 21, 2002 and two Form 10-K/A-2 filings on December 23, 2002. True and correct copies of these filings are attached hereto as Exhibits K (Hanover Form 10-K/A-2 for the year-ended December 31, 1999, filed December 23, 2002), L (Hanover Form 10-K/A-2 for the year-ended December 31, 2000, filed December 23, 2002), and M (Hanover Form 10-K/A-2 for the year-ended December 31, 2001, filed November 21, 2002).

9.     The net effect of all the restatements for the year ended December 31, 1999 is: (i) a decrease in revenues of $5.1 million, from $323.2 million to $318.1 million; (ii) a decrease in income before taxes of $3.1 million, from $63.6 million to $60.5 million; and (iii) a decrease in net income of $1.9 million, from $40.4 million to $38.5 million. These figures are reflected in Hanover's Form 10-K/A-2 filing for the year-ended December 31, 1999, filed December 23, 2002. *See* Exhibit K (Hanover Form 10-K/A-2 for the year-ended December 31, 1999, filed December 23, 2002).

10.     The net effect of all the restatements for the year ended December 31, 2000 is: (i) a decrease in revenues of $41 million, from $603.8 million to $562.8 million; (ii) a decrease in income before taxes of $14.5 million from $93.5 million to $79.0 million; and (iii) a decrease in net income of $9.1 million, from $58.7 million to $49.6 million. These figures are reflected in a Form 10-Q/A filing, a Form 10-K/A filing, and a Form 10-K/A-2 filing dated April 16, 2002 and December 23, 2002. *See* Exhibits D (Hanover Form 10-Q/A for the quarter-ended September 30, 2000, filed April 16, 2002), E (Hanover Form 10-K/A for the

year-ended December 31, 2000, filed April 16, 2002), L (Hanover Form 10-K/A-2 for the year-ended December 31, 2000, filed December 23, 2002).

11.     The net effect of all the restatements for the year ended December 31, 2001 is: (i) a decrease in revenues of $32.6 million, from $1,103.3 million to $1,070.7 million; (ii) a decrease in income before income taxes of $0.4 million, from $123.3 million to $117.0 million; and (iii) a decrease in net income of $3.8 million, from $76.2 million to $72 million. These figures are reflected in Forms 10-Q/A and 10-K/A-2 filed April 16, 2002 and December 23, 2002.  *See* Exhibits F (Hanover Form 10-Q/A for the quarter-ended March 31, 2001, filed April 16, 2002), G (Hanover Form 10-Q/A for the quarter-ended June 30, 2001, filed April 16, 2002), H (Hanover Form 10-Q/A for the quarter-ended September 30, 2001, filed April 16, 2002), and M (Hanover Form 10-K/A-2 for the year-ended December 31, 2001, filed November 21, 2002).

The Proposed Settlement

12.     In January 2003, Hanover commenced settlement discussions relating to the securities claims with Lead Counsel, Milberg Weiss.  Over the next four months, representatives of Hanover had numerous negotiating sessions with Milberg Weiss and plaintiffs' counsel in the other Settling Actions, Hanover's insurance carriers, and others, in person and by telephone.  During this time, the parties discussed the evidence that they believed would be presented at trial, the legal theories expected to be presented and the defenses thereto, the damages, if any, that the plaintiffs might be able to prove, and their respective risks in pursuing litigation as opposed to agreeing to a settlement.  During the course of this process, the amount and type of relief changed in material respects with the resulting relief being the product of compromise by all parties.

DC 531753_3

13.     These extensive arms'-length dealings and vigorously contested negotiations resulted in an agreement in principle between Hanover, the Lead Plaintiffs and certain of the other plaintiffs to settle the Consolidated Securities Action and certain of the ERISA and Derivative Actions. On May 12, 2003, the parties to the agreement in principle documented their mutual understandings, including releases to be exchanged by them, through the execution of a memorandum of understanding. The memorandum of understanding was subsequently amended twice to add additional parties (the memorandum of understanding as finally amended being the "MOU"). Each memorandum of understanding was more than 15 pages (with multi-page attachments) and was executed by counsel representing more than 15 parties.

14.     Effective October 23, 2003, all the parties to the Settling Actions entered into the Stipulation, as contemplated by the MOU, which was filed with this Court. The specific terms of the settlement are set forth in the Stipulation.

Investigation, Research and Confirmatory Discovery

15.     Extensive research, investigation and discovery were conducted prior to the execution of the Stipulation. Counsel for Hanover carefully and thoroughly examined the facts and law underlying, and relevant to, the Actions. Settling Plaintiffs' Counsel had access to a fully searchable database comprising more than 75,000 pages, including all non-privileged documents produced by the Company to the S.E.C.

16.     Settling Plaintiffs' Counsel interviewed current and former Company directors, officers, and employees with knowledge about the matters in question, including all Company employees and officers who were questioned by the S.E.C. In addition, Hanover

engaged in extensive consultation with damages, accounting and economics experts; Hanover understands that Plaintiffs' counsel similarly consulted relevant experts.

17.    Settling Plaintiffs' Counsel interviewed the following thirteen current and former employees, officers, and directors of Hanover: Michael McGhan: Former Director, President and Chief Executive Officer (interviewed on October 9, 2003); William Goldberg: Former Director and Chief Financial Officer (interviewed on September 5, 2003); Joe Bradford: Former Senior Vice President, International Operations (interviewed on September 10, 2003); Matt Gaisor: former Vice President, Accounting (interviewed on June 3, 2003 and September 3, 2003); Greg Brasel: Vice President, International Accounting (interviewed on June 3, 2003 and August 6, 2003); Turner Darden: Manager, Accounting II (interviewed on June 3, 2003 and August 6, 2003); David Gutierrez: Director, Credit & Commercial Administration (interviewed on June 4, 2003 and August 27, 2003); Steven Russom: Vice President, Product Development & Technology (interviewed on August 22, 2003); Cal Cahill: Former Vice President, Corporate Development (interviewed on September 9, 2003); Steven Gill: Vice President, Marketing & Sales (interviewed on August 29, 2003); John Fjord: Manager, Power Generation (interviewed on August 21, 2003); Allen Stults: Division Manager (interviewed on August 5, 2003); and Karen Koncaba: Manager, Accounting II (interviewed on August 26, 2003).

18.    The Settling Plaintiffs' Counsel were provided with a detailed picture of the strengths and weaknesses of their cases and concluded, by virtue of having entered into the Stipulation, that the evidence was consistent with their understandings at the time the MOU was negotiated and executed.

Exclusion Requests And Objections

19.     The Settlement Administrator has advised that, as of January 28, 2004, no opt-outs or requests for exclusion have been tendered by Class Members or Hanover Shareholders.

The Settlement Was Freely Reached, and Was not the Product of Fraud or Collusion

20.     The memoranda of understanding ultimately gave way to the comprehensive 58-page Stipulation (with numerous multi-page exhibits) that was arrived at after dozens of negotiating sessions and after extensive discovery was conducted by Plaintiffs' counsel (that included interviews of thirteen witnesses and the production of 75,000 pages of documents by Hanover into a fully searchable electronic database) and after both sides consulted their own experts.

The Settlement Resolves what would have been Complex, Expensive and Lengthy Litigation

21.     The continued litigation of the Consolidated Securities Action, Derivative Actions and ERISA Actions would in all likelihood have been complex, expensive and lengthy.  The Settlement resolves 22 cases that allege class action securities claims, class action claims under ERISA, and derivative claims.  Each would present inherent complexities associated not only with the difficult financial and accounting issues underlying the actions but also with the complexities associated with the application of difficult legal standards and application of the facts to those standards in the three related but distinct sets of cases.

22.     Continued litigation would have been extremely expensive.  As the Stipulation indicates, the Defendants are represented by more than eight separate law firms, each of which would participate in discovery and briefing of dispositive motions, and if not dismissed from the case, would participate in any trial and post-trial proceedings that might

occur. The likely cost of such proceedings would be extremely high; perhaps even consuming the entirety of the available directors' and officers' insurance coverage which would then not be available, as it has been used in the instant Settlement, to benefit members of the settlement classes. In addition to the monetary costs, Hanover would also be forced to endure the continued distraction and inconvenience of its management in responding to discovery requests, preparation and examination at depositions and other related matters.

23. The continued prosecution of the three sets of actions would in all likelihood be extremely lengthy. It could take the better part of a year before a motion to dismiss the securities case was fully briefed and decided with the possibility of an amended complaint and additional briefing to follow – all as a prelude to the extensive factual discovery, briefing dispositive motions and an extended trial. Similar extended proceedings could be expected in the ERISA class action and the shareholder derivative actions.

I declare under penalty of perjury that the foregoing is true and correct. Executed on January 29, 2004.

Kevin T. Abikoff

Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PIRELLI ARMSTRONG TIRE CORPORATION RETIREE MEDICAL BENEFITS TRUST, et al., On Behalf of Themselves and All Others Similarly Situated, | § § § § § | Civil Action No. H-02-0410 (Consolidated) Hon. Vanessa D. Gilmore |
| Plaintiffs, | § § | CLASS ACTION |
| vs. | § § | |
| HANOVER COMPRESSOR COMPANY, et al. | § § | |
| Defendants. | § § § | |
| | § | |

### STIPULATION AND AGREEMENT OF SETTLEMENT

This Stipulation and Agreement of Settlement dated as of *October 23*, 2003 (this "Stipulation") is made and entered into by and among the Settling Parties, by and through their counsel of record in the Settling Actions. This Stipulation is intended by the Settling Parties to fully, finally and forever resolve, discharge and settle the Released Claims on and subject to the terms and conditions set forth herein. All capitalized terms shall have the meanings given to such terms in Section 1 below.

### RECITALS

WHEREAS, on or after February 4, 2002, putative securities class action lawsuits were filed by the plaintiffs named below on behalf of themselves and all others similarly situated in the United States District Court for the Southern District of Texas (the "Federal Court"), entitled

528824_1

*Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust, et al. v. Hanover Compressor Co.,*

*et al.,* Case No. H-02-0410, *McBride v. Hanover Compressor Co.,* Case No. H02-0431, *Koch v.*

*Hanover Compressor Co.,* Case No. H-02-0441, *Schneider v. Hanover Compressor Co.,* Case

No. H-02-0491, *Goldstein v. Hanover Compressor Co.,* Case No. H-02-0526, *Noyes v. Hanover*

*Compressor Co.,* No. H-02-0574, *Rocha v. Hanover Compressor Co.,* Case No. 02-0594, *Peck v.*

*Hanover Compressor Co.,* Case No. H-02-0627, *Mueller v. Hanover Compressor Co.,* Case

No. H-02-0652, *Langhoff v. Hanover Compressor Co.,* Case No. H-02-0764, *Fox v. Hanover*

*Compressor Co.,* Case No. H-02-0815, *Rosen v. Goldberg,* Case No. H-02-0959, *Detectives*

*Endowment v. Hanover Compressor Co.,* Case No. H-02-1016, *Montag v. Hanover Compressor*

*Co.,* Case No. H-02-1030 and *Anderson v. Hanover Compressor Co.,* Case No. H-02-2306

(collectively, the "Securities Actions" were filed by the "Securities Plaintiff Class");

WHEREAS, by Order dated March 28, 2002, the Federal Court consolidated the

Securities Actions under the caption *Pirelli Armstrong Tire Corp. Retiree Medical Benefits*

*Trust, et al. v. Hanover Compressor Co., et al.* (the "Consolidated Securities Action");

WHEREAS, by Order dated January 6, 2003, the Federal Court appointed Pirelli

Armstrong Tire, Retiree Medical Benefits Trust, Plumbers & Steamfitters, Local 137 Pension

Fund, O. Bryant Lewis, 720 Capital Management, LLC and Specialists DPM as lead plaintiffs

(the "Lead Plaintiffs") and appointed Milberg Weiss Bershad Hynes & Lerach LLP ("Milberg

Weiss") as lead counsel (the "Lead Counsel") in the Consolidated Securities Action;

WHEREAS, on and after April 10, 2002, the following derivative actions were filed in or

removed to the Federal Court: *Koch v. O'Connor, et al.,* Case No. H-02-1332, *Carranza v.*

*O'Connor, et al.,* Case No. H-02-1430, *Steves v. O'Connor, et al.,* Case No. H-02-1527, *Hensley*

*v. McGann, et al.,* Case No. H-02-2994, *Harbor Finance Partners v. McGhan, et al.,* Case No.

528824_1                                         2

H-02-0761, (the "Federal Derivative Actions") and on February 15, 2002, an additional derivative action was filed in the Delaware Chancery Court: *Coffelt Family, LLC v. O'Connor* (the "State Derivative Action")*, et al.*, No. CA 19410 (collectively, the "Derivative Actions" and the plaintiffs in the Derivative Actions are the "Settling Derivative Plaintiffs");

WHEREAS, on August 19, 2002 and August 26, 2002, the Federal Derivative Actions were consolidated into the *Harbor Finance Partners* action (the "Consolidated Derivative Action");

WHEREAS, on January 23, 2003, Lead Plaintiff entered into tolling agreements with each of GKH Investments, L.P., GKH Partners, L.P., Joe C. Bradford, Curtis Bedrich, Goldman, Sachs & Co., Michael A. O'Connor, William S. Goldberg, Charles D. Erwin, Ted Collins, Jr., Robert R. Furgason, Rene J. Huck, Melvyn N. Klein, Alvin V. Shoemaker and Victor Grijalva, pursuant to which the statute of limitations was tolled with respect to certain claims (the "Tolling Agreements");

WHEREAS, on or after March 26, 2003, putative class actions alleging violations of the Employee Retirement Income Security Act of 1974, as amended ("ERISA") were filed in the Federal Court by or on behalf of the plaintiffs on behalf of themselves and all others similarly situated (the "ERISA Plaintiffs"): *Kirkley v. Hanover Co., et al.*, Case No. H-03-1155, *Angleopoulos v. Hanover Compressor Co., et al.*, Case No. H-03-1064 and *Freeman v. Hanover Compressor Co., et al.*, Case No. H-3-1095 (collectively, the "ERISA Actions");

WHEREAS, certain of the Settling Parties, through their respective counsel, entered into a memorandum of understanding, dated May 12, 2003;

WHEREAS, certain Settling Parties, including the plaintiffs in the *Angleopoulos* and *Freeman* actions, who were not parties to the memorandum of understanding that was entered

into on May 12, 2003, through their counsel, entered into a first amended memorandum of understanding dated July 18, 2003;

WHEREAS, Michael O'Connor passed away on July 23, 2003 and Karen L. O'Connor has been appointed as the Independent Executrix of his Estate in Case No. 41710-2 in the County Court at Law No. 2 of Nueces County, Texas;

WHEREAS, by Order dated August 1, 2003, the Federal Court consolidated the ERISA Actions into the Consolidated Securities Action for purposes of settlement;

WHEREAS, the Settling Parties, including the plaintiff in the *Harbor Finance Partners* action (the only Settling Plaintiff who did not enter into the July 18, 2003 first amended memorandum of understanding) entered into a Second Amended and Restated Memorandum of Understanding, dated October 13, 2003 (the "MOU");

WHEREAS, on September 5, 2003, Lead Plaintiffs, on behalf of themselves and all others similarly situated, filed an Amended Complaint against PwC, Hanover, Michael McGhan, William S. Goldberg and Michael A. O'Connor (the "Consolidated Federal Securities Complaint");

WHEREAS, by Order dated October 2, 2003 the Federal Court consolidated the Consolidated Derivative Actions into the Consolidated Securities Action;

WHEREAS, on October 9, 2003 the ERISA Plaintiffs filed an Amended Consolidated Complaint for Breach of Fiduciary Duty and Violation of ERISA Disclosure Requirements in the Federal Court;

WHEREAS, Settling Plaintiffs, through their respective counsel, have conducted and completed extensive research, discovery and investigation during the prosecution of the Settling Actions, including without limitation: (1) inspection and analysis of tens of thousands of pages

528824_1                                        4

of documents produced by Settling Defendants; (2) review of Hanover's public filings, press releases and other public statements; (3) interviews of numerous Hanover officers and employees; and (4) consultation with accounting and damages consultants;

WHEREAS, Settling Parties have engaged in substantial arm's length negotiations in an effort to resolve all claims that have been or could be asserted in the Settling Actions, including conducting numerous meetings and telephone conferences where the terms of the agreements detailed herein were extensively debated and negotiated;

WHEREAS, Settling Plaintiffs, through their respective counsel, have carefully considered and evaluated, *inter alia*, the relevant legal authorities and evidence to support the claims asserted against the Settling Defendants, the likelihood of prevailing on those claims, the Settling Defendants' respective abilities to pay any judgment obtained in light of their current financial condition, and the likely appeals and subsequent proceedings necessary if the Settling Plaintiffs did prevail against the Settling Defendants, and have concluded that the Settlement set forth herein is in the best interests of the Settling Plaintiffs;

WHEREAS, the Settling Defendants have denied and continue to deny that they have liability as a result of any and all allegations contained in the Settling Actions, and are entering into the Settlement in order to eliminate the burden, distractions, expense and uncertainty of further litigation;

WHEREAS, the Settling Parties and their counsel believe that the terms and conditions contained in this Stipulation are fair, reasonable and adequate; and

WHEREAS, the Settling Parties and their counsel agree that these Recitals are an integral part of this Stipulation and constitute binding representations by the applicable Settling Parties and their counsel.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED** by and among the Settling Parties that, subject to Federal Court approval and the satisfaction of the conditions of Settlement as set forth herein, each of the Released Claims shall be finally and fully compromised, settled and released, and each of the Settling Actions shall be dismissed with prejudice, as to all Settling Parties, upon and subject to the terms and conditions of this Stipulation, as follows:

1.  DEFINITIONS

As used in the Stipulation the following terms have the meanings specified below:

1.1.  "Actions" means the Consolidated Securities Action, the Derivative Actions and the ERISA Actions.

1.2.  "Authorized Claimants" means the Authorized ERISA Claimants and the Authorized Securities Claimants.

1.3.  "Authorized ERISA Claimant" means any member of the ERISA Plaintiff Class, or such Class Member's successor in interest, who files or on whose behalf is filed a timely, valid Proof of Claim and whose claim for recovery is allowed pursuant to the terms of the ERISA Settlement.

1.4.  "Authorized Securities Claimant" means any member of the Securities Plaintiff Class who files or on whose behalf is filed a timely, valid Proof of Claim and whose claim for recovery is allowed pursuant to the terms of the Securities Settlement.

1.5.  "Change of Control" means the (i) sale, lease or exchange of all or substantially all of Hanover's assets to any Person (other than a Person wholly owned, directly or indirectly, by Hanover), (ii) consummation of a merger, consolidation, recapitalization, reorganization or other similar transaction involving Hanover, other than

one in which more than 50% of the total voting power of the surviving entity outstanding immediately after such transaction is beneficially owned by the holders of the outstanding voting securities of Hanover immediately prior to such transaction, with the voting power of each such continuing holder relative to all such continuing holders not substantially altered in the transaction, (iii) dissolution or liquidation of Hanover, or (iv) the acquisition or gain by any Person, including a "group" as contemplated by Section 13(d)(3) of the Exchange Act, of ownership or control (including, without limitation, power to vote) of more than 50% of the outstanding shares of Hanover's voting stock (based upon voting power).

1.6.    "Claims Administrator" means the firm of Gilardi & Company.

1.7.    "Class Period" means the period beginning on May 4, 1999 and ending on December 23, 2002 (inclusive).

1.8.    "Code" means the Internal Revenue Code of 1986, as amended.

1.9.    "Consolidated Derivative Action" has the meaning assigned to such term in the Recitals hereof.

1.10.    "Consolidated Federal Securities Complaint" has the meaning assigned to such term in the Recitals hereof.

1.11.    "Consolidated Securities Action" has the meaning assigned to such term in the Recitals hereof.

1.12.    "Derivative Actions" has the meaning assigned to such term in the Recitals hereof.

1.13.    "Derivative Releases" has the meaning assigned to such term in Section 3.9.

528824_1                                        7

1.14. "Derivative Settlement" means the settlement of the Derivative Actions on and subject to the terms and conditions set forth in this Stipulation.

1.15. "Derivative Settlement Fund" means the payments from the Securities Settlement Cash Fund and the Securities Settlement Stock Fund that are contemplated by Section 3.6.

1.16. "Effective Date" means, with respect to each Settling Action, the date of completion of the following: (i) entry of an Order and Final Judgment, which approves in all material respects (x) the dismissal of the claims that have been or could be asserted in such Settling Action and (y) the releases and bar orders provided for in the Stipulation with respect to such Settling Action, and (ii) either (x) expiration of the time to appeal or otherwise seek review of the Order and Final Judgment which approves, in all material respects, the settlement of such Settling Action as provided herein, without any appeal having been taken or review sought, or (y) if an appeal is taken or review sought, the expiration of five (5) days after an appeal or review shall have been dismissed or finally determined by the highest court before which appeal or review is sought and which affirms the material terms of such appealed settlement and/or an Order and Final Judgment and is not subject to further judicial review: provided, however, that any award of attorneys' fees or costs shall not be considered a material provision of the Order and Final Judgment and any appeal of any such award shall not delay the Effective Date and any modification as a result of such appeal shall not be considered a modification of a material term.

1.17. "ERISA" has the meaning assigned to such term in the Recitals hereof.

1.18. "ERISA Actions" has the meaning assigned to such term in the Recitals hereof.

1.19. "ERISA Plaintiff Class" means each and every Person who was a participant in the Plan and who, at any time during the Class Period, purchased and/or held Hanover Securities in their accounts in the Plan, and all Persons who hold or held Securities in the Plan as beneficiaries of any such participants.

1.20. "ERISA Plaintiffs" has the meaning assigned to such term in the Recitals hereof.

1.21. "ERISA Plan of Allocation" means the terms and procedures for allocating the ERISA Settlement Fund among, and distributing it to Authorized ERISA Claimants as set forth in the Notice, or as otherwise approved by the Federal Court.

1.22. "ERISA Releases" has the meaning assigned to such term in Section 4.9.

1.23. "ERISA Settlement" means the settlement of the ERISA Actions on and subject to the terms and conditions set forth in this Stipulation.

1.24. "ERISA Settlement Fund" has the meaning assigned to such term in Section 4.2.

1.25. "Escrow Agent" means Milberg Weiss, in its capacity as escrow agent with respect to the Settlement Fund.

1.26. "Escrow Fund" means the escrow funds on deposit with Milberg Weiss, as escrow agent pursuant to the Escrow Agreement dated May 29, 2003, between Milberg Weiss, as escrow agent, and Hanover.

1.27. "Exchange Act" means the Securities Exchange Act of 1934, as amended.

1.28.  "Federal Court" has the meaning assigned to such term in the Recitals hereof.

1.29.  "Federal Derivative Actions" has the meaning assigned to such term in the Recitals hereof.

1.30.  "FED. R. CIV. P. 23" means Federal Rule of Civil Procedure 23.

1.31.  "Fee and Expense Award" means the fees and expenses awarded to Lead Counsel and Settling ERISA Plaintiffs' Counsel and, to the extent approved by the Federal Court, the fee agreed to be paid to the Settling Derivative Plaintiffs' Counsel as set forth in sections 3.6 and 3.7 hereof.

1.32.  "Final" means no longer subject to further appeal or review, whether by exhaustion of any possible appeal, lapse of time or otherwise.

1.33.  "GKH" means GKH Partners, L.P., GKH Investments, L.P., GKH Private Limited, HGW Associates, L.P., DWL Lumber Corp. and JAKK Holding Corp.

1.34.  "GKH Settlement Shares" means two million five hundred thousand (2,500,000) shares of Hanover Common Stock to be paid to the Settlement Fund by GKH Partners, L.P. and GKH Investments, L.P., as provided in Sections 2.2 and 2.7.

1.35.  "Governance Term Sheet" means the Corporate Governance Settlement Term Sheet, attached hereto as Exhibit A.

1.36.  "Hanover" means Hanover Compressor Company, a Delaware corporation.

1.37.  "Hanover Common Stock" means the common stock, par value $.001 per share, of Hanover.

1.38.   "Hanover Securities" means Hanover Common Stock and any other Hanover equity or debt security or option related to the forgoing.

1.39.   "Hanover Settlement Shares" means two million five hundred thousand (2,500,000) shares of Hanover Common Stock, which may be newly issued shares, other than and in addition to the GKH Settlement Shares, to be paid by Hanover to the Settlement Fund as provided in Section 2.7.

1.40.   "Hanover Shareholders" means all record owners of Hanover Common Stock as of May 12, 2003.

1.41.   "Lead Counsel" has the meaning assigned to such term in the Recitals hereof.

1.42.   "Lead Plaintiffs" has the meaning assigned to such term in the Recitals hereof.

1.43.   "Letter Agreement" means that certain letter agreement, dated May 12, 2003, by and between Hanover and GKH and certain of its Related Persons, which sets forth certain agreements relating to the settlement of the Actions.

1.44.   "Michael A. O'Connor" means Michael A. O'Connor and his heirs, assigns, legatees, and devisees, the Estate of Michael A. O'Connor, Deceased, and Karen L. O'Connor as the Independent Executrix of the Estate of Michael A. O'Connor, Deceased.

1.45.   "Milberg Weiss" has the meaning assigned to such term in the Recitals hereof.

1.46.   "MOU" has the meaning assigned to such term in the Recitals hereof.

528824_1                                    11

1.47.   "Non-Settled Action" has the meaning assigned to such term in Section 10.3.

1.48.   "Note" means the unsecured promissory note, in substantially the form attached hereto as Exhibit B, to be contributed to the Settlement Fund by Hanover pursuant to Section 2.7.

1.49.   "Notice" means any or all of the notices concerning the Settlement Hearings, in substantially the forms of the individual notices attached hereto as Exhibits C, D, and E and the summary notices attached hereto as Exhibits F, G and H.

1.50.   "Order and Final Judgment" means an order and final judgment in substantially the forms attached hereto as Exhibits I, J, and K.

1.51.   "Person" means a natural person, individual, corporation, partnership, limited partnership, limited liability partnership, limited liability company, association, joint venture, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, any business or legal entity, and any spouse, heir, legatee, executor, administrator, predecessor, successor, representative or assign of any of the foregoing.

1.52.   "Plan" means the Hanover Companies Retirement Savings Plan.

1.53.   "Preliminary Order" has the meaning assigned to such term in Section 8.1, in substantially the forms attached hereto as Exhibits L, M and N.

1.54.   "Proof of Claim" means the Proof of Claim and Substitute Form W-9, in substantially the form attached hereto as Exhibit O, which will be mailed to the Securities Plaintiff Class together with the Notice.

1.55.   "PwC" means PricewaterhouseCoopers LLP.

1.56. "Related Persons" means, with respect to any Person, such Person's present and former parent entities, subsidiaries (direct or indirect) and affiliates, and each of their respective present and former shareholders, general partners, limited partners, affiliates, divisions, joint ventures, partnerships, officers, directors, employees, agents, representatives, attorneys, insurers, excess insurers, experts, advisors, investment advisors, underwriters, fiduciaries, trustees, auditors, accountants, representatives, spouses and immediate family members, and the predecessors, heirs, legatees, successors, assigns, agents, executors, devisees, personal representatives, attorneys, advisors and administrators of any of them, and the predecessors, successors, and assigns of each of the foregoing, and any other Person in which any such Person has or had a controlling interest or which is or was related to or affiliated with such Person, and any trust of which such Person is the settlor or which is for the benefit of such Person or member(s) of his or her family; provided, however, that PwC, its partners and employees are excluded from this definition and shall not be deemed to be a Related Person of any Settling Party.

1.57. "Released Claims" means the Released Securities Claims, the Released Derivative Claims and the Released ERISA Claims.

1.58. "Released Derivative Claims" has the meaning assigned to such term in Section 3.9.

1.59. "Released Derivative Parties" means the Settling Derivative Defendants, the Plan, GKH, and Schlumberger, and each of their respective Related Persons.

1.60. "Released ERISA Claims" has the meaning assigned to such term in Section 4.9.

1.61. "Released ERISA Parties" means the Settling ERISA Defendants, Karen L. O'Connor, as the Independent Executrix of the Estate of Michael A. O'Connor, Deceased, GKH, and Schlumberger, and each of their respective Related Persons, the Plan, and any Person who was or could be deemed a fiduciary of the Plan during the Class Period.

1.62. "Released Securities Claims" has the meaning assigned to such term in Section 2.13.

1.63. "Released Securities Parties" means the Settling Securities Defendants, the Plan, Karen L. O'Connor, as the Independent Executrix of the Estate of Michael A. O'Connor, Deceased, Schlumberger, and GKH, and each of their respective Related Persons.

1.64. "Schlumberger" means Schlumberger Technology Corporation, Schlumberger Oilfield Holdings Limited, and Schlumberger Surenco S.A.

1.65. "Securities Act" means the Securities Act of 1933, as amended.

1.66. "Securities Actions" has the meaning assigned to such term in the Recitals hereof.

1.67. "Securities Plaintiff Class" means all Persons who purchased Hanover Securities during the Class Period (including participants in the Plan who, during the Class Period, purchased Hanover Securities in their accounts in the Plan or acquired Hanover Securities through employer matching contributions) other than (a) those individuals who were officers and/or directors of Hanover during the Class Period and (i) their affiliates and (ii) members of their immediate families, (b) officers and/or directors of Hanover at the Effective Date and (i) their affiliates and (ii) members of their

immediate families, (c) the Settling Securities Defendants and (i) their affiliates and (ii) members of their immediate families, (d) Schlumberger and its subsidiaries, (e) GKH and its subsidiaries and affiliates, and (f) the Plan.

1.68.   "Securities Plan of Allocation" means the terms and procedures for allocating the Settlement Fund among, and distributing it to, Authorized Securities Claimants as set forth in the Notice, or such other Plan of Allocation as the Federal Court shall approve.

1.69.   "Securities Releases" has the meaning assigned to such term in Section 2.13.

1.70.   "Securities Settlement" means the settlement of the Consolidated Securities Action on and subject to the terms and conditions set forth in this Stipulation.

1.71.   "Securities Settlement Cash Fund" has the meaning assigned to such term in Section 2.7.

1.72.   "Securities Settlement Fund" means the Securities Settlement Cash Fund, the Securities Settlement Stock Fund, and the Securities Settlement Note Fund together with any interest and earnings thereon, after deducting the Derivative Settlement Fund and the ERISA Settlement Fund.

1.73.   "Securities Settlement Note Fund" has the meaning assigned to such term in Section 2.7.

1.74.   "Securities Settlement Stock Fund" has the meaning assigned to such term in Section 2.7.

1.75.  "Settlement" means the consummation of the events and transactions that will fully effectuate the Securities Settlement, the ERISA Settlement, and the Derivative Settlement.

1.76.  "Settlement Fund" means the cash and other property in the Securities Settlement Fund, the ERISA Settlement Fund and the Derivative Settlement Fund.

1.77.  "Settlement Hearing" means the hearing or hearings at which the Federal Court will review the adequacy, fairness, and reasonableness of the settlement.

1.78.  "Settlement Shares" means the GKH Settlement Shares and the Hanover Settlement Shares.

1.79.  "Settling Action" means each of the Consolidated Securities Action, the Derivative Actions and the ERISA Actions.

1.80.  "Settling Defendants" means the Settling Securities Defendants, the Settling Derivative Defendants and the Settling ERISA Defendants.

1.81.  "Settling Defendants' Counsel" means the Settling Derivative Defendants' Counsel, Settling ERISA Defendants' Counsel and the Settling Securities Defendants' Counsel.

1.82.  "Settling Derivative Defendants" means Michael A. O'Connor, William S. Goldberg, Melvyn N. Klein, Michael J. McGhan, Ted Collins, Jr., Robert R. Furgason, Rene J. Huck, Alvin V. Shoemaker, Victor E. Grijalva, Gordon T. Hall, I. Jon Brumley, Charles D. Erwin, and Hanover.

1.83.  "Settling Derivative Defendants' Counsel" means Katten, Muchin, Zavis & Rosenman, Dechert LLP, Beck, Redden & Secrest, Smyser, Kaplan & Veselka, LLP,

Wright & Brown, LLP, Orgain Bell & Tucker, LLP, Skadden, Arps, Slate, Meagher & Flom, LLP, and Hughes Hubbard & Reed LLP.

1.84. "Settling Derivative Parties" means the Derivative Plaintiffs and the Settling Derivative Defendants.

1.85. "Settling Derivative Plaintiffs" has the meaning assigned to such term in the Recitals hereof.

1.86. "Settling Derivative Plaintiffs' Counsel" means Scott & Scott, LLC, Reich & Binstock, Maricic & Goldstein, LLP, Robbins, Umeda & Fink, LLP, Schubert & Reed LLP, Emerson Poynter LLP, The Brualdi Law Firm, and Joseph A. McDermott, III.

1.87. "Settling ERISA Defendants" means Hanover, Michael J. McGhan, William S. Goldberg, and Michael A. O'Connor.

1.88. "Settling ERISA Defendants' Counsel" means Beck Redden & Secrest, Wright & Brown, LLP, Orgain Bell & Tucker, LLP, Katten, Muchin, Zavis, & Rosenman, and Hughes Hubbard & Reed LLP.

1.89. "Settling ERISA Parties" means the Settling ERISA Plaintiff Class and the Settling ERISA Defendants.

1.90. "Settling ERISA Plaintiff Class" means each and every member of the ERISA Plaintiff Class.

1.91. "Settling ERISA Plaintiffs' Counsel" means the Baskin Law Firm, Hoeffner & Bilek, L.L.P., Schiffrin & Barroway LLP, and Brodsky & Smith, LLC.

1.92. "Settling Parties" means the Settling Securities Parties, the Settling Derivative Parties and the Settling ERISA Parties.

1.93.  "Settling Plaintiffs" means the members of the Settling Securities Plaintiff Class, the Settling Derivative Plaintiffs and the members of the Settling ERISA Plaintiff Class.

1.94.  "Settling Plaintiffs' Counsel" means Lead Counsel, Settling Derivative Plaintiffs' Counsel and Settling ERISA Plaintiffs' Counsel.

1.95.  "Settling Securities Defendants" means Hanover, Michael J. McGhan, William S. Goldberg, Michael A. O'Connor, Charles D. Erwin and GKH.

1.96.  "Settling Securities Defendants' Counsel" means Hughes Hubbard & Reed LLP, Katten Muchin Zavis & Rosenman, Dechert LLP, Beck Redden & Secrest, Paul Weiss Rifkind, Wharton & Garrison LLP, and Wright & Brown, LLP, Orgain Bell & Tucker, LLP.

1.97.  "Settling Securities Parties" means the Settling Securities Plaintiff Class and the Settling Securities Defendants.

1.98.  "Settling Securities Plaintiff Class" or "Settling Securities Plaintiffs" means each and every member of the Securities Plaintiff Class other than those Persons who timely and validly exclude themselves from participating in the Securities Settlement.

1.99.  "State Derivative Action" has the meaning assigned to such term in the Recitals hereof.

1.100.  "Stipulation" means this Stipulation and Agreement of Settlement.

1.101.  "Supplemental Securities Agreement" means that certain confidential Supplemental Securities Agreement, provided for in Section 2.15,, by and among the

Settling Securities Parties, providing certain additional terms upon which Hanover may terminate this Stipulation.

1.102. "Taxes" has the meaning assigned to such term in Section 7.3.

1.103. "Tax Expenses" has the meaning assigned to such term in Section 7.3

1.104. "Tolling Agreement" has the meaning assigned to such term in the Recitals hereof.

1.105. "Transfer Agent" means the firm of Mellon Shareholder Services.

1.106. "Unknown Claims" means, with respect to a Settling Party, any and all claims which such Settling Party does not know or suspect to exist in his, her or its favor at the time such Settling Party releases such claims which, if known by him, her or it, might or would have affected his, her or its decision not to object to such release or not to exclude himself, herself or itself from becoming a Class Member.

2.    SETTLEMENT OF CONSOLIDATED SECURITIES ACTION

2.1.    Settling Securities Defendants' Denial of Liability.  The Settling Securities Defendants have denied, and continue to deny, that they have any liability as a result of any and all allegations that have been or could be made in the Consolidated Securities Action. The Settling Securities Defendants are entering into the Securities Settlement in order to eliminate the burden, distraction, expense and uncertainty of further litigation.

2.2.    GKH's Contribution and Settlement of Any and All Remaining Claims. GKH has entered into the Securities Settlement and GKH Partners, L.P. and GKH Investments, L.P., have agreed to pay two million five hundred  thousand (2,500,000) shares of Hanover Common Stock to settle all potential liability it might have in connection with the Consolidated Securities Action.

528824_1                                    19

2.3.   <u>Corporate Governance.</u>  Hanover will implement the corporate governance enhancements, which were the subject of substantial negotiation by and among the Settling Parties and the Settling Parties' Counsel, in the time periods and in the manner contemplated by the Governance Term Sheet.

2.4.   <u>Payment to Authorized Securities Claimants.</u>  The Securities Settlement Fund shall be distributed by or at the direction of the Claims Administrator to the Authorized Securities Claimants in the Consolidated Securities Action in accordance with the Securities Plan of Allocation.

2.5.   <u>Securities Notice.</u>  The Claims Administrator, appointed and subject to the supervision and direction of the Federal Court, shall be responsible for providing individual notice to the Securities Plaintiff Class, in substantially the form as attached hereto as Exhibit C, providing for an opt-out time period of no less than forty (40) days from the date the Notice is mailed, and as otherwise directed by the Federal Court, as well as any other required or appropriate notice to be made by publication or otherwise.

2.6.   <u>Reliance Upon Own Knowledge.</u>  Lead Plaintiffs expressly represent and warrant that, in entering into the Securities Settlement, they relied upon their own knowledge and investigation (including the knowledge of and investigation performed by Lead Counsel), and not upon any promise, representation, warranty or other statement made by or on behalf of any of the Settling Securities Defendants or their Related Persons not expressly contained in this Stipulation.

2.7.   <u>Securities Settlement Fund.</u>  The following consideration will be or has been paid to the Securities Settlement Fund in connection with the Securities Settlement:

(a)    <u>Cash.</u> Hanover has contributed twenty-nine million five hundred thousand dollars ($29,500,000) into the Escrow Fund which, with interest and earnings thereon, and such other amounts as are contributed to the Securities Settlement Cash Fund pursuant to the terms of this subsection (a) shall constitute the "Securities Settlement Cash Fund" as of the date hereof and shall be held by the Escrow Agent pursuant to the terms of this Stipulation. Hanover shall make an additional deposit of cash into the Securities Settlement Cash Fund in an amount equal to three million dollars ($3,000,000) within five (5) business days after a Change of Control, but only if either the Change of Control or the shareholder approval of such Change of Control occurs prior to the end of the twelve (12) months following the Order and Final Judgment approving the Securities Settlement.

(b)    <u>Settlement Shares.</u> Within (i) five (5) business days after the Effective Date, Hanover shall deliver to the Escrow Agent the Hanover Settlement Shares and, (ii) thirty (30) business days after the Effective Date, GKH Partners, L.P. and GKH Investments, L.P., shall deliver to the Escrow Agent the GKH Settlement Shares (collectively, the "Securities Settlement Stock Fund"). The Settlement Shares shall be registered under the Securities Act or exempt from registration under the Securities Act. All costs, including those of the Transfer Agent, incurred in issuing and distributing the Settlement Shares to the Authorized Securities Claimants pursuant hereto shall be borne by Hanover. The total number of Settlement Shares to be contributed into the Securities Settlement Stock Fund will be adjusted by Hanover's Board of Directors in its good faith

judgment to reflect any changes to Hanover Common Stock due to stock splits, stock dividends or reverse stock splits occurring after May 12, 2003 and prior to the date of delivery to the Escrow Agent.

(c) Note. Within thirty (30) business days after the Effective Date, Hanover shall deliver the Note to the Escrow Agent. Such note and all proceeds therefrom shall constitute the "Securities Settlement Note Fund."

2.8. Cost of Notice. Lead Counsel may withdraw an amount of cash up to one hundred thousand dollars ($100,000) from the Securities Settlement Cash Fund to pay actual costs incurred in connection with providing the Notice required by Section 2.5.

2.9. Procedure with Respect to the Settlement Shares.

(a) Distribution to Lead Counsel. No earlier than five (5) business days after the Effective Date, the Escrow Agent, if requested by Lead Counsel, shall take such actions as are necessary and appropriate to ensure the issuance by Hanover of share certificates representing the Hanover Settlement Shares to be delivered to plaintiffs' counsel as directed by the Fee and Expense Award entered as part of the Securities Settlement.

(b) Distribution to Authorized Securities Claimants. Upon notice from the Claims Administrator that the Claims Administrator's process has been complete, the Escrow Agent shall tender to Hanover the certificates evidencing the remaining Hanover Settlement Shares and the GKH Settlement Shares (with any necessary endorsements) and request that Hanover (or its designee) issue share certificates as directed by the Claims Administrator and consistent with this Stipulation and orders of the Federal Court.

22

(c)    Fractional Shares.  The Claims Administrator shall be directed that no fractional Settlement Shares will be distributed or allocated to or on behalf of any Person.  In addition, the Settlement Fund may liquidate Settlement Shares to pay Taxes incurred by the Settlement Fund.

2.10.    Rights With Respect to the Settlement Shares.  Ten (10) days before the date of the Settlement Hearing for the Securities Settlement, Hanover shall provide Lead Counsel with (a) the written opinion of outside counsel that the Hanover Settlement Shares, when issued in accordance with this Stipulation, will be validly issued, fully paid and non-assessable and (b) either (i) the written opinion of outside counsel or (ii) a no-action letter from the Securities and Exchange Commission, addressed to either Hughes Hubbard & Reed LLP or Hanover, substantially to the effect that (A) the Hanover Settlement Shares will be issued in compliance with the registration requirements of Section 5 of the Securities Act or will be issued in reliance upon an exemption therefrom and (B) the Hanover Settlement Shares will not be deemed to be "restricted securities" within the meaning of Rule 144(a)(3) promulgated under the Securities Act (except that affiliates of Hanover, before or after the Effective Date, may be required to sell such shares in accordance with Rule 144 promulgated under the Securities Act).

2.11.    Attorneys' Fees.  Lead Counsel may apply to the Federal Court for an award of attorneys' fees and reimbursement of all expenses incurred on behalf of the Securities Plaintiff Class.  Such fees and expenses, and interest thereon, shall be payable solely out of the Securities Settlement Fund and shall be deducted therefrom prior to the distribution thereof to the Settling Securities Plaintiff Class.  Following entry of any order

by the Federal Court approving any fees and expenses to Lead Counsel, Lead Counsel may withdraw from the Securities Settlement Fund the fees and expenses so awarded; provided, however, that (a) prior to the Effective Date, such withdrawal must be cash only from the Securities Settlement Cash Fund and, (b) in the event that the order approving the fees and expenses so awarded is reversed or modified on appeal, Lead Counsel shall, within five (5) business days of the date which the fees and expenses award is modified or reversed, refund to the Securities Settlement Fund the fees and expenses previously distributed in full or in any amount consistent with such reversal or modification, plus interest thereon at the rate earned on the Securities Settlement Cash Fund through the date of such refund.

2.12.   Conditions.  The Securities Settlement shall terminate and be of no further force or effect if any of the conditions in Section 5.1 and 5.3 or any of the conditions set forth below are not satisfied or, with respect to the conditions in Section 2.12(b), (c), and (d), waived by Hanover:

(a)     the funding of the Securities Settlement Fund as provided above;

(b)     Hanover's failure to exercise its termination rights, if any, under the Supplemental Securities Settlement Agreement;

(c)     preliminary approval by the Federal Court of the Settlement; and

(d)     the Order and Final Judgment entered by the Federal Court, approving the Securities Settlement and providing for the Securities Releases and the bar order provided for in Section 2.14, becoming Final.

2.13.   Securities Releases.  Upon the Effective Date, the Settling Securities Plaintiff Class, and each of their respective successors, predecessors, assigns, attorneys

(including Lead Counsel), heirs, representatives, administrators, executors, devisees, legatees, and estates, release and forever discharge any and all claims, rights and causes of action, direct and derivative, whether based on federal, state, local, statutory or common law or any other law, rule or regulation, including, without limitation, Unknown Claims, claims under ERISA and claims under federal and state securities laws, that have been, could have been, or in the future might be or could be asserted in any form and in any forum against any of the Released Securities Parties that exist, could have existed, or may arise in connection with or that relate to both (i) the purchase or sale or holding of any Hanover Securities and (ii) any of the transactions (including the registration of securities and any failure to deliver prospectuses) matters or occurrences, or representations or omissions involved, set forth, referred to, or which relate in any way to the facts or allegations contained in or which could have been contained in the Consolidated Securities Action (including all such claims which arise under state or federal securities laws and accrued or are based on acts or omissions occurring during or prior to the end of the Class Period) (the "Released Securities Claims").

Upon the Effective Date, the Settling Securities Defendants and each of their respective successors, predecessors, assigns, attorneys (including Settling Securities Defendants' Counsel), heirs, representatives, legatees, administrators, devisees, executors and estates release and forever discharge any and all claims, rights and causes of action, whether based on federal, state, local, statutory or common law or any other law, rule or regulation, and whether known or unknown, that have been, could have been, or in the future might be asserted in any form or forum against any member of the Settling Securities Plaintiff Class or Lead Counsel that exist, could have existed, or may arise in

528824_1                                    25

connection with or that relate to the institution, prosecution or settlement of any and all claims asserted in the Consolidated Securities Action, including, but not limited to, any action for costs or attorneys' fees.

The releases contained in this Section (the "Securities Releases") shall apply to each and every member of the Settling Securities Plaintiff Class and their counsel, including Lead Counsel, each and every Released Securities Party and each and every Settling Securities Defendants' Counsel, and the respective successors and assigns of any of the foregoing, whether directly or indirectly, representatively, derivatively or in any other capacity. The Securities Releases shall not apply to and are not intended to release any claims of the members of the Settling Securities Plaintiff Class against PwC or its partners or employees, including the claims asserted in the Consolidated Federal Securities Complaint.

The Securities Releases also apply to Unknown Claims, and the Settling Securities Parties, Settling Securities Defendants' Counsel and Lead Counsel agree to waive the benefits of §1542 of the California Civil Code (and the benefits of any other law (including principles of common law) of any state or territory or other jurisdiction of the United States or of any jurisdiction outside of the United States that is similar, comparable or equivalent to §1542 of the California Civil Code), which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

Each of the Settling Securities Parties, Lead Counsel and Settling Securities Defendants' Counsel acknowledges that the foregoing waiver was separately bargained for and is a material term of the Securities Settlement.

528824_1

26

2.14.   <u>Securities Bar Order.</u>  The Order and Final Judgment shall include a bar

order permanently and forever barring and enjoining all Persons, specifically including

but not limited to PwC, other than those Persons that timely and properly exclude

themselves from the Settling Securities Plaintiff Class, from filing, commencing,

instituting, prosecuting or maintaining, either directly, indirectly, representatively or in

any other capacity, any claim, counterclaim, cross-claim, third-party claim or other action

against any of the Released Securities Parties arising out of, based upon or relating to the

transactions and occurrences referred to in the facts and allegations contained in the

Consolidated Securities Action, including without limitation any claim or action seeking

indemnification or contribution, however denominated, and any claim or action, whether

legal or equitable in nature, known or unknown, foreseen or unforeseen, accrued or

unaccrued, matured or unmatured, or for damages or permitted costs and expenses

(including attorneys' fees).  All such claims and actions are hereby extinguished,

discharged, satisfied and unenforceable.

Such order shall include a provision that a Final verdict or judgment against PwC

shall be reduced (up to the amount of such verdict or judgment) by the greater of:  (a) an

amount that corresponds to the percentage of responsibility of the Released Securities

Parties for the liability at issue; or (b) the amount paid to settle the Consolidated

Securities Action pursuant to this Stipulation.  Such order shall also prohibit any member

of the Settling Securities Plaintiff Class from settling any claim against PwC without also

obtaining from PwC a release running in favor of every Released Securities Party that is

at least as broad as the Securities Release; provided, however that this bar order shall not

apply to any indemnification obligations owed by Hanover under its by-laws or Articles of Incorporation to the other Settling Defendants.

2.15.   <u>Supplemental Securities Agreement.</u>  Within ten (10) business days after the date hereof, Lead Counsel and Hughes Hubbard & Reed LLP shall enter into a Supplemental Securities Agreement providing for the termination of the Securities Settlement at the sole election of Hanover, in the exercise of its absolute discretion, in the event that, after the execution of the Stipulation, members of the Securities Plaintiff Class owning a specified percentage of Hanover Securities purchased during the Class Period deliver timely and otherwise valid requests for exclusion from the Securities Plaintiff Class or initiate actions regarding, or assert any of, the Released Claims against one or more of the Settling Securities Defendants.  The Supplemental Securities Agreement shall be held confidential in accordance with its terms.

2.16.   <u>Reimbursement of Lead Plaintiffs.</u>  The Lead Plaintiffs may seek Federal Court approval of such amounts as allowed by §21D of the Exchange Act.

3.    SETTLEMENT OF CONSOLIDATED DERIVATIVE ACTION

3.1.    <u>Settling Derivative Defendants' Denial of Liability.</u>  The Settling Derivative Defendants have denied, and continue to deny, that they have any liability as a result of any and all allegations that have been or could be made in the Derivative Actions.  The Settling Derivative Defendants are entering into the Derivative Settlement in order to eliminate the burden, distraction, expense and uncertainty of further litigation.

3.2.    <u>Reliance Upon Own Knowledge.</u>  The Settling Derivative Plaintiffs expressly represent and warrant that, in entering into the Derivative Settlement, they relied upon their own knowledge and investigation (including the knowledge of and

investigation performed by counsel), and not upon any promise, representation, warranty or other statement made by or on behalf of any of the Settling Derivative Defendants or their Related Persons not expressly contained in this Stipulation.

3.3.  <u>Corporate Governance.</u> Hanover will implement the corporate governance enhancements, which were the subject of substantial negotiation by and among the Settling Parties and the Settling Derivative Plaintiffs' Counsel, in the time periods and in the manner contemplated by the Governance Term Sheet.

3.4.  <u>Role of Settling Derivative Plaintiffs' Counsel.</u> Settling Derivative Plaintiffs, through Settling Derivative Plaintiffs' Counsel, were material participants in the settlement negotiations relating to the Derivative Actions and were a substantial factor in obtaining the following benefits for Hanover:

    (a)  payment of at least twenty six million six hundred fifty thousand dollars ($26,650,000) by Hanover's insurance carriers toward the Settlement;

    (b)  contribution of the GKH Settlement Shares into the Securities Settlement Stock Fund; and

    (c)  substantial corporate governance enhancements as detailed in the Governance Term Sheet.

3.5.  <u>Derivative Notice.</u> Settling Derivative Plaintiff's Counsel shall be responsible for printing and mailing appropriate court-directed individual notice to the shareholders of Hanover entitled to receive such notice, substantially in the form of Exhibit D, as well as any other required or appropriate notice to be made by publication or otherwise.

3.6. Payments. Within three (3) business days after preliminary approval of the Derivative Settlement, Hanover shall pay seventy five thousand dollars ($75,000) to counsel for the plaintiffs in the derivative action, *Koch v. O'Connor, et al.*, as payment for providing the Notice required by Section 3.5. Within three (3) business days after the entry of the Order and Final Judgment, Hanover shall contribute seven hundred thousand dollars ($700,000) to the Securities Settlement Cash Fund. Thereafter, provided that the Court has approved such a fee and expense award, seventy five thousand (75,000) shares of Hanover Common Stock from the Securities Settlement Stock Fund and seven hundred thousand dollars ($700,000) (which shall be deemed to have been contributed by Hanover's directors and officers insurance carriers) withdrawn from the Securities Settlement Cash Fund shall be paid to Settling Derivative Plaintiffs' Counsel, of which three hundred thousand dollars ($300,000) shall be allocated and paid to The Brualdi Law Firm.

3.7. Attorneys' Fees. In the event that the order approving the fee and expenses so awarded is reversed or modified on appeal, and in the event that any Settling Derivative Plaintiffs' Counsel has received payment, such counsel shall, within five (5) business days of the date which the fee and expense award is modified or reversed, refund to the Derivative Settlement Fund the fees and expenses previously received by them in full or in any amount consistent with such reversal or modification, plus interest thereon at the rate earned on the Securities Settlement Cash Fund through the date of such refund. Lead Counsel shall refund, within ten (10) business days of any modification or reversal of a fee or expense award, any fees and expenses received,